# EXHIBIT A

6/23/2025 Trial Transcript (Excerpts)

1        UNITED STATES DISTRICT COURT

2        EASTERN DISTRICT OF CALIFORNIA

3                --oOo--

4    UNITED STATES OF AMERICA,      ) Case No. 2:22-CR-00068-DJC-1
                                    )
5                                   ) Sacramento, California
                    Government,     ) June 23, 2025, 9:09 a.m.
6            v.                     )
                                    )
7    SUNEET SINGAL,                 ) Re: Excerpt Trial Day 5
                                    )
8            Defendant.             )

9

10               TRANSCRIPT OF PROCEEDINGS
        BEFORE THE HONORABLE DANIEL J. CALABRETTA
11            UNITED STATES DISTRICT JUDGE

11   APPEARANCES:
12   For the Government:      U.S. DEPARTMENT OF JUSTICE by
                             MR. NICHOLAS M. FOGG,
13                           ASSISTANT U.S. ATTORNEY
                             MS. JESSICA LOUISE DELANEY,
14                           ASSISTANT U.S. ATTORNEY
                             501 I Street, Suite 10-100
15                           Sacramento, California  95814

16   For the Defendant:      STRADLEY, RONAN, STEVENS & YOUNG by
                             MR. MICHAEL J. ENGLE
17                           2005 Market Street
                             One Commerce Square, Suite 2600
18                           Philadelphia, Pennsylvania  19103

19                           WILLIAM J. PORTANOVA, ATTORNEY AT LAW
                             MR. WILLIAM JOHN PORTANOVA
20                           400 Capitol Mall, Suite 1100
                             Sacramento, California  95814

21
                        MARYANN VALENOTI, RMR, CRR
22                       Official Court Reporter
                         501 I Street, Suite 4-200
23                       Sacramento, CA 95814
                        mvalenotiRMRCRR@gmail.com
24                        (916)930-4275

25   Proceedings reported via mechanical steno - transcript produced
     via computer-aided transcription

Closing Argument - Government

1    (In open court in the presence of the jury.)

2    (Jury Instruction transcription not requested by counsel

3    for this excerpt.)

4        CLOSING ARGUMENT ON BEHALF OF GOVERNMENT

5        MR. FOGG:  Thank you, Your Honor.  Good morning,

6    ladies and gentlemen of the jury.

7        Suneet Singal lied.  He lied to merchant lenders.  He

8    lied to get money.  He lied because he needed that money.  He

9    told those lies in the merchant contracts, in Confessions of

10    Judgments that were given to merchant lenders in April, May,

11    and June of 2017.  The lie was that he still owned First

12    Capital Retail, FCR, the Cinnabon company.  In fact, he had

13    sold FCR on February 23, 2017 to Ramesh Prasad.  That is the

14    date on the sales contract, that's the date Mr. Prasad told you

15    he became the owner, and that is the date Mr. Singal told the

16    SEC that he sold the Cinnabon company.  We'll get into all

17    those details during my closing argument, but first I want to

18    spend a minute or two talking about your job as a jury and the

19    judge's instructions.

20        First, your job is to take the law the judge gives you

21    and apply it to the facts, and the law I want to focus on this

22    morning are the elements of wire fraud and mail fraud.  Those

23    are the instructions the judge gave.  Elements are the pieces

24    of the crime, the component pieces that they're broken into.

25    The government must prove each element beyond a reasonable

Closing Argument - Government

1   doubt.  If the element -- if the government proves each element

2   of the crime beyond a reasonable doubt, then the government has

3   proven the defendant guilty of that crime beyond a reasonable

4   doubt.

5        So now I want to take a minute to walk through the

6   elements of wire fraud and mail fraud with you.  I'll note I

7   summarized the judge's instructions to make them more easier to

8   discuss.  If you think my summary conflicts at all with

9   anything the judge said, the judge's instructions, not what I

10  say, controls about the law.

11       First element of wire fraud.  A scheme that -- Mr.

12  Singal devised a scheme to defraud or obtain money by false

13  representations, pretenses, or promises.  I'll show that in

14  false statements.

15       Two, the false statements were material.  "Material"

16  means having a natural tendency to convince someone to part

17  with money.

18       Three, that Mr. Singal intended to defraud.  And

19  "intending to defraud" means to intend to deceive and to cheat.

20       Fourth, that Mr. Singal caused to be used an

21  interstate wire in furtherance of an essential element of the

22  scheme, meaning he caused an interstate wire to be used.

23       Lucky for us mail fraud has the first three elements

24  of wire fraud, the scheme to defraud, scheme to obtain money by

25  false statements, statements that have to be material, you have

Closing Argument - Government

1    to have intent to defraud.

2           The difference for wire fraud is instead of it being

3    interstate wires, it's that Mr. Singal caused the use of the

4    mails.

5           So, those are the elements of the crimes.  I want to

6    start by starting to apply the facts in this case to those

7    elements.

8           I want to start with the first element, the scheme to

9    defraud.  The scheme in this case is simple:  Mr. Singal lied

10   to get merchant advances.  I'm going to show you now, just run

11   through real quick to remind everyone what merchant advance is.

12   We'll see some documents with exhibit numbers.  If you want --

13   you're not going to get this PowerPoint presentation when you

14   are back deliberating, so if you want to write down exhibit

15   numbers to remember them, I encourage you to take notes.

16          Okay.  Exhibit 201, this is -- we're just using this

17   as an example.  This is the first merchant advance in the

18   timeline.  It's between EBF and First Capital Retail.  First

19   Capital Retail, the Cinnabon company, is listed as the seller

20   because it's selling its future receivables, its future income,

21   the money it's going to get by selling cinnamon rolls in the

22   future.  It sold $284,000 of its future income in return it

23   received $200,000 up front from the merchant lender.

24          Mr. Singal signed the contract on behalf of First

25   Capital Retail.  He also authorized all the contracts we're

Closing Argument - Government

1   going to be discussing in this case.

2          Every contract also came with a Confession of

3   Judgment.  Each Confession of Judgment has Mr. Singal saying

4   that he is an owner of First Capital Retail.

5          We've presented evidence to you as seven different

6   merchant advances.  We're not going to look at every contract

7   on every confession, but I just want to run through the seven

8   advances with you real quick just to set them all in time.

9          First we had April 4, which is EBF, April 4 was the

10  day of the merchant advance contract as Mariam Milian who came

11  to testify to you about that contract, about that advance.  201

12  was the contract.  202 was the Confession of Judgment.  203 was

13  the recorded funding call we heard of that advance.

14         Then we had World Global, which is Cyril Eskenazi came

15  in and explained to you that World Global made two merchant

16  advances, but they are on the same day.  The contracts are

17  identical except for a few differences about the amounts of the

18  merchant advance, and those contracts are dated April 18 of

19  2017.  So Exhibits FJ and FL were the contracts.  Exhibit 205

20  and 207 were the Confession of Judgments.

21         Our fourth merchant advance was Happy Rock.  Rick

22  Geller came to tell you about Happy Rock.  Their merchant

23  advance contract was dated April 19.  That was the biggest

24  merchant advance of all the ones we discussed.

25         Then we had Yellowstone, that was Mr. Steven Davis

Closing Argument - Government

1  that is now in May of 2017, and those are the first of two

2  Yellowstones.

3        Next we had Jeffrey Kahn with iKahn Capital and Global

4  Merchant Cash also in May.  That was a smallest for $50,000.

5  And then we had the final merchant advance June 9 also from

6  Yellowstone, and Steven Davis told you about that one.

7        So, we have from April through June and those

8  contracts and those Confessions of Judgment are all in the 200

9  series of exhibits that you will see in the jury room.

10        The merchant advance was going to pay a number of

11  business and personal expenses for Mr. Singal.  They paid

12  payroll through his company, First Capital Management.  They

13  paid the credit card, the Amex we were looking at.  They paid

14  personal expenses like his mortgage, or golf club membership.

15  But the key fact regarding all those statements is that Mr.

16  Singal had already sold the Cinnabon company on February 23,

17  2017.

18        So now I want on walk you through the evidence that

19  proves that he sold the company on that date.

20        It starts with the Membership Interest Purchase

21  Agreement, Exhibit 101.  That was the contract by which Mr.

22  Singal through his company First Capital Real Estate

23  Investments, that's the contract through which Mr. Singal sold

24  the Cinnabon company to Mr. Prasad.

25        I want to start by pointing out Section 1.1, still on

Closing Argument - Government

1   the first page of Exhibit 101, these are the core terms of this

2   sales contract, that the seller, Mr. Singal, through his

3   company FCREI, is selling the seller units, that's the

4   ownership of the Cinnabon company, he's selling that to Mr.

5   Prasad.  In return, Mr. Prasad is agreeing to pay $11.5

6   million.

7           The contract also talks about some paperwork that

8   needs to be filled out, like a promissory note.  Under the

9   sales contract, 101 lays out what needs to be in that

10  promissory note.  It talks about interest rates, terms of

11  maturity for interest rates, extensions, extension fees.  Those

12  particular details, you don't need to know exactly what those

13  details say.  What's important about those details is that

14  they're in the contract, and the inference to draw from the

15  fact those details are in the contract, was that completing

16  those later documents, completing the Promissory Note later was

17  not particularly important.  That was just paperwork to fill

18  out later.  The important terms are already in this contract.

19          So when was -- when did the sales contract become

20  effective; when did the sale happen?

21          The answer to that is on the first line of the first

22  page of Exhibit 101.  This Membership Interest Purchase

23  Agreement is made effective as of February 23, 2017.  It's

24  there at the top.  It means what it says.  "Effective," that's

25  the day this contract became effective.  That's the day the

MARYANN VALENOTI - U.S. DISTRICT COURT -  (916)930-4275

Closing Argument - Government

1  membership interest transferred.

2        You know this contract was signed around February 23

3  because if you look at Exhibit 101-A, the e-mail from Windy

4  Myers on February 24, the next day, you will see Exhibit 101 is

5  one of the attachments.

6        Now let's look at who owned Exhibit 101.  The first is

7  Ramesh Prasad as the buyer.  He told you in his testimony that

8  he bought the Cinnabon company, became the owner on

9  February 23, 2017.  In the agreement itself and the buyer both

10  say that the effective date was February 23, 2017, that's the

11  day the sale happened.

12        The next name on the signature blocks is the seller,

13  Mr. Singal.  Now I will play for you some clips of his

14  testimony from the SEC where he said to the SEC that he sold

15  Cinnabon company on February 23, 2017.  As you hear those

16  clips, remember, he's testifying to the SEC under oath.

17        (Media is presented.)

18        MR. FOGG:  So there you go.  He is the owner up until

19  February 23, 2017.  The SEC asked him a second time.

20        (Media is presented.)

21        MR. FOGG:  The date of the Membership Interest

22  Purchase Agreement, that's the contract we were just talking

23  about, is dated February 23, 2017, "Did you consider First

24  Capital Retail to be owned by Mr. Prasad on that date?

25        "I did," was Mr. Singal's answer.

MARYANN VALENOTI - U.S. DISTRICT COURT -  (916)930-4275

Closing Argument - Government

1        He was asked a third time by the SEC.

2        (Media is presented.)

3        MR. FOGG:  So, when Mr. Singal's telling the SEC not

4    once, not twice, not three times -- three times, that he sold

5    the Cinnabon company on February 23, 2017, the fact that it's

6    repeated tells you his statement is not a mistake.  He's not

7    confused by his lawyers.  He's not confused by the questions.

8    He understands it, and he's saying, "February 23, 2017."

9        And in case there's any doubt about how much First

10   Capital Retail, the Cinnabon company he sold, he explained that

11   to the SEC as well.

12       (Media is presented.)

13       MR. FOGG:  And it made sense that the sale would have

14   to happen on February 23, 2017, because that BDC loan we were

15   talking about, Mr. McClure told us about that Suneet Singal

16   could not own the Cinnabon company for that BDC loan to go

17   through.

18       So, I want to walk you through a little bit now of

19   what Mr. McClure told us about that BDC loan.

20       First, Mr. McClure told us the BDC loan is a kind of

21   investment fund, and Mr. Singal owned it.  We heard from other

22   testimony in the case that up until February 23, Mr. Singal

23   also owned First Capital Retail.

24       What Mr. McClure told us is that the BDC was

25   interested in loaning money to the Cinnabon company.  Problem

Closing Argument - Government

1  was that something called the affiliate rule, in law it's

2  called the 40 Act.  Securities law forbade Mr. Singal from

3  loaning money from the BDC to First Capital Retail, the

4  Cinnabon company, because he owned both of them.  He cannot

5  loan money from the investment fund he owned to the business he

6  owned.  But Mr. McClure told you about the solution to that

7  problem.

8       The solution was that if Mr. Singal sold the Cinnabon

9  company, then the affiliate rule would not apply, and the BDC

10 could loan the money to FCR.  That was the idea, that was the

11 solution.  You have to sell the Cinnabon company before you can

12 do the loan from the BDC.

13      That's the solution Mr. Singal described in the

14 February 14 e-mail you saw to Windy Myers, Exhibit 409.  Mr.

15 Singal said to Windy Myers, "We are close to working out the

16 solution.  I'll be transferring my interest to Ramesh."

17      I submit to you what that means is that "transferring

18 my interest" means selling, giving ownership of to Ramesh,

19 "Ramesh" is Ramesh Prasad.

20      "The loan will be written then."  I submit to you that

21 was referring to the BDC loan.  It's important he used the word

22 "then," because that word is telling you the sequence that

23 First Capital Retail will be sold to Ramesh, then they could do

24 the BDC loan.  That is the order of events Mr. Singal's

25 describing in this e-mail.

Closing Argument - Government

1      And when the SEC asked him about the February 14, 2017

2   e-mail, and the BDC loan, he said the same thing.  I'll play

3   that for you here.

4      (Media is presented.)

5      MR. FOGG:  That transaction was nixed.  I submit to

6   you, ladies and gentlemen, that what he is talking about is

7   that is the affiliate rule, that the BDC cannot loan money to a

8   company Singal owned.  So that was nixed, and they talk about

9   the solution to it, transferring ownership to First Capital

10  Retail to Ramesh Prasad in order -- just like the word "then,"

11  it shows sequence -- in order for the loan to be written.

12     Mr. Singal is clear he made the transfer of ownership

13  of FCR to Ramesh Prasad in particular, that's what he told the

14  SEC.

15     (Media is presented.)

16     MR. FOGG:  There you go, you have Mr. Singal explain

17  the solution, the affiliate rule problem again; sell the

18  Cinnabon company to Ramesh Prasad, and the evidence is that

19  loan from the BDC to the Cinnabon company went through in late

20  February.

21     You saw the loan contract for that loan, that was

22  dated February 24, 2017.  You heard testimony from Windy Myers

23  and saw the bank statement that the loan from the BDC arrived

24  on February 27, 2017, and that loan to comply with the

25  securities law could only have been given if Mr. Singal already

Closing Argument - Government

1    sold the Cinnabon company to Ramesh Prasad.

2           I want to stop for a second and recap the evidence of

3    how we know the Cinnabon company was sold on February 23, 2017:

4           First, the sales contract says it.

5           Second, Ramesh Prasad told you that it was sold on

6    February 23, 2017.

7           Third, Mr. Singal tells the SEC February 23, 2017.

8           We know the BDC loan required the sale -- for the BDC

9    to comply with the affiliate role, the Cinnabon company needed

10   to be sold before the loan to go through, and we know that loan

11   went through in late February, 2017.

12          So, you might ask -- you heard a lot in this case,

13   What about Section 2.2.2 of the Membership Interest Purchase

14   Agreement, the sales contract, what do you make of that,

15   because you know Ramesh Prasad didn't sign those documents on

16   February 23, 2017, he signed them well later?

17          What you should make of 2.2.2 is that it's not

18   important.  As you saw earlier in the contract, the details of

19   that Promissory Note are already in the contract.  2.2.2 is

20   just paperwork to be filled out; i's to dot, t's to cross.

21   It's not important.  It's not a contract to complete paperwork.

22   It's a contract to sell First Capital to Ramesh Prasad.

23          And you heard testimony that Mr. Singal's attorney,

24   that the document's here, the Promissory Note, the Pledge

25   agreement, the Security Agreement, the Company Guaranty.  You

Closing Argument - Government

1   heard testimony that those were ultimately prepared by Mr.

2   Singal's attorney, Tony Arostegui, and he had Ramesh Prasad's

3   son working for him straight out of law school.

4        All those documents were prepared and ultimately

5   signed and dated February 23, 2017 as well.  The Promissory

6   Note, February 23, 2017.  The Pledge and Security Agreement,

7   23rd day of February.  The Compliance Certificate, 23rd day.

8   Guaranty Agreement, February 23, 2017.  What that tells you is

9   that the people -- what you infer from that is that the

10  people -- the attorneys drafting these documents also thought

11  the sale happened on February 23, 2017.

12       Do you know who else also thought the sale happened on

13  February 23, 2017?  It was when Mr. Singal was testifying to

14  the SEC, and he told the SEC that he was willing to close that

15  sale without having these documents yet, that these documents

16  could wait until post closing.  We will play that clip for you

17  now.

18       (Media is presented.)

19       MR. FOGG:  "I believe whatever was necessary to close

20  was provided.

21       "Would you have been willing as a seller to close a

22  transaction if you didn't have the Promissory Note, Pledge and

23  Security Agreement?"

24       Mr. Singal Answered, "Yes."

25       He explains why his answer makes sense, why it makes

MARYANN VALENOTI - U.S. DISTRICT COURT -  (916)930-4275

1          THE COURT:  Go ahead and have a seat.  We'll let you

2     know when we have another note.  Thank you, all.

3          MR. ENGLE:  Your Honor, could we ask a quick question?

4     At the end of the day, if for some reason if the jury doesn't

5     reach a verdict, will you call us back in order to instruct

6     them or excuse them, or will they just be excused from the jury

7     room and we'll just be notified of that to get our stuff?

8          THE COURT:  Typically, I do the latter.  If you want

9     me to bring them in and remind them of the admonition, I can.

10    I haven't done that in the past, but if you'd like me to, I

11    can.

12         MR. ENGLE:  Whatever Your Honor prefers to do.  I was

13    curious how we were going to do it, whether we needed to come

14    back in the room for that or not.

15         THE COURT:  No, typically they tell us when they're

16    leaving, when they intend to come back, and as soon as we hear

17    that, we share that with you.

18         MR. ENGLE:  All right.  Thank you.

19         (Jury deliberations continue 3:38 p.m. through 4:50 p.m.)

20         THE CLERK:  Please remain seated and come to order.

21    Court is back in session.

22         THE COURT:  All right, folks, we have a verdict.  So I

23    will have the court clerk bring in the jury, please.

24         (In open court in the presence of the jury.)

25         THE COURT:  All right, folks.  You could go ahead and

MARYANN VALENOTI - U.S. DISTRICT COURT -  (916)930-4275

 1    have a seat.

 2              There's a microphone on the end, if we could hand that

 3    to the foreperson, please.  Juror Number 17, you are the

 4    foreperson.  I understand the jury has reached a unanimous

 5    verdict; is that correct?

 6              JUROR NUMBER 17:  Correct.

 7              THE COURT:  I'll ask you to give the Verdict Form to

 8    the court clerk, please.

 9              All right, go ahead.

10              THE CLERK:  Members of the jury, listen to your

11    verdict as it will stand recorded.

12              THE COURT:  "We the jury find the Defendant Suneet

13    Singal as follows:

14              "As to Count 1 of the indictment:  Guilty.

15              "As to Count 2 of the indictment:  Guilty.

16              "As to Count 3 of the indictment:  Guilty.

17              "As to Count 4 of the indictment:  Guilty.

18              "As to Count 6 of the indictment:  Guilty.

19              "As to Count 7 of the indictment:  Guilty.

20              "As to Count 9 of the indictment:  Guilty.

21              "As to Count 10 of the indictment:  Guilty."

22              And the Verdict Form is signed and dated by the

23    foreperson.

24              Does either counsel want the jury to be polled?

25              MR. PORTANOVA:  No.  Thank you, Your Honor.

1          MR. FOGG:  No.  Thank you, Your Honor.

2          THE COURT:  Okay.  So, members of the jury, that

3     completes your jury service, I want to thank you all very much

4     for your time and attention.

5          You know, periodically during trial I would look up to

6     kind of see what you all were doing, and every time I did you

7     were all really paying attention and I could tell were really

8     focused on the issues before the Court, and I appreciate that.

9          All of the admonitions I've given you about not

10    talking about the case to anyone, you are free from that

11    admonition, you could talk to anyone about the case that you'd

12    like to.  The one thing I will say is that the Court tries very

13    hard to keep your deliberations confidential.  So one thing you

14    may want to consider is, you know, talk about your experience

15    and what your views were.  You may want to consider keeping the

16    views of your fellow jurors confidential.  Again, that is just

17    a suggestion from me, it's certainly not a court order.  You

18    could talk about your experience as you wish.

19         I do hope as I indicated during jury selection, I said

20    that a lot of jurors enjoy the opportunity to see our system of

21    justice up close and personal, I hope that's been true for you.

22         If you have a few minutes afterwards, first, I know

23    that counsel both for the government and for the defense may

24    want to talk to you after we're done today to get your views on

25    the trial.  I know it's helpful for them to hear from jurors