# EXHIBIT E
# Gov. Ex. 106

## LOAN AGREEMENT

This Loan Agreement (as it may be amended, restated, modified or otherwise supplemented from time to time in accordance with its terms, this "*Agreement*"), dated effective as of February 24, 2017, is executed by FIRST CAPITAL RETAIL, LLC, a California limited liability company (the "*Borrower*") and FIRST CAPITAL INVESTMENT CORPORATION, a Maryland corporation (the "*Lender*").

Recitals:

A.  The Borrower wishes to obtain a loan in the principal amount of $1,500,000.00 from Lender (the "*Loan*") and to be evidenced by a promissory note dated as of even date herewith to be executed and delivered by the Borrower in favor of Lender, the form of which is set forth as Exhibit A attached hereto (as it may be amended, restated, modified or otherwise supplemented from time to time in accordance with its terms, the "*Note*").

B.  Subject to and upon the terms and conditions set forth in this Agreement and in the Note, Lender has agreed to make the Loan to Borrower.

Agreement:

NOW, THEREFORE, in consideration of the above recitals and for other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged and accepted by Borrower and Lender, Borrower hereby agrees with Lender as follows:

1. Definitions and Interpretation.  When used in this Agreement, the following terms have the following respective meanings:

"*Affiliate*" shall mean, as to any Person, any other Person that (i) directly or indirectly, owns more than forty percent (40%) of, such Person or (ii) is in Control of, is Controlled by or is under common Control with, such Person.

"*Business Day*" shall mean any day other than a Saturday, Sunday or any other day on which commercial banks in the Commonwealth of Virginia are not open for business.

"*Closing Date*" shall mean the date of the funding of the Loan in accordance with Section 2 hereof.

"*Control*" shall mean the power to direct the management and policies of an entity, directly or indirectly, whether through the ownership of voting securities or other beneficial interests, by contract or otherwise.

"*Indebtedness*" means (a) all indebtedness for borrowed money or the deferred purchase price of property or services, (b) all obligations evidenced by notes, bonds, debentures or similar instruments, and (c) all capital lease obligations.

"*Lien*" means any lien, security interest, tax lien or other encumbrance, whether arising by contract or under law.

10701170 v3



GOVERNMENT'S EXHIBIT
106
2-22-CR-00068-DJC

"**Loan Documents**" means this Agreement and the Note.

"**Material Adverse Effect**" means a material adverse effect on the business, assets (including intangible assets), liabilities, financial condition, property, results of operations or prospects of Borrower.

"**Obligations**" means any indebtedness created under and the payment or performance of the obligations, covenants, agreements and undertakings in the Loan Documents, including the reasonable costs and fees associated with enforcing same, whether absolute or contingent, due or to become due, now existing or hereafter arising, including any interest that accrues after the commencement of an insolvency proceeding.

"**Person**" shall mean an individual or entity, including a partnership, a limited liability company, a corporation, an association, a joint stock company, a trust, a joint venture, an unincorporated organization, or a governmental entity (or any department, agency, or political subdivision thereof).

2. Loan and Conditions of Closing. (a) Subject to and upon the terms and conditions set forth in this Agreement and in the Note, Lender agrees to make the Loan to Borrower.

(b) Lender's obligation to consummate the transactions contemplated hereby and to fund the Loan is subject to the following conditions:

(i)  Execution and delivery by Borrower of the Loan Agreement and Note to Lender.

(ii) Lender shall have received certificates of good standing from the jurisdiction where Borrower was organized dated as of the date of Closing.

3. Representations and Warranties of Borrower. As an inducement to Lender to make the Loan to Borrower, Borrower hereby represents and warrants to Lender, as of the date hereof, as follows:

(a) Organization, Good Standing, Entity Power and Qualification. Borrower is a limited liability company duly organized, validly existing and in good standing under the laws of the State of California and Borrower has all requisite power and authority to carry on its business as presently conducted and as proposed to be conducted. Borrower is duly qualified to transact business and is in good standing in each jurisdiction in which the failure so to qualify would reasonably be expected to have a Material Adverse Effect.

(b) Subsidiaries. Borrower does not currently own or control, directly or indirectly, any interest in any other corporation, partnership, trust, joint venture, limited liability company, association, or other business entity except the entities listed in Schedule A to this Loan Agreement.

(c) Authority; No Conflicts. Borrower has the limited liability company power and authority to execute, deliver, and perform this Agreement and the Note, and the execution, delivery, and performance of this Agreement and the Note by Borrower has been authorized by

2

10701170 v3

all necessary limited liability company action on the part of Borrower and does not and will not violate any law, rule or regulation or the articles of organization or operating agreement of Borrower and does not and will not conflict with, result in a breach of, or constitute a default under, the provisions of any indenture, mortgage, deed of trust, security agreement, or other instrument or agreement pursuant to which Borrower or any of its Subsidiaries is bound. This Agreement constitutes a valid and binding obligation, enforceable against Borrower in accordance with its terms, except to the extent that enforceability may be limited by bankruptcy and other similar laws affecting the rights and remedies of creditors generally.

(d) Litigation. There is no action, suit, proceeding, arbitration, complaint, or charge pending, or to Borrower's actual knowledge currently threatened in writing, against Borrower or any of its Subsidiaries. There is no action, suit, proceeding or investigation brought by Borrower pending or which Borrower intends to initiate.

(e) Compliance with Instruments and Laws. Borrower is not in violation or default (i) of any provisions of its operating agreement, (ii) of any instrument, judgment, order, writ or decree by which Borrower is bound, (iii) under any note, indenture or mortgage to which Borrower is a party, (iv) to the actual knowledge of Borrower, under any agreement to which Borrower is a party, or (v) to its actual knowledge, of any provision of federal or state statute, rule or regulation applicable to Borrower or any of its Subsidiaries, the violation of which would have a Material Adverse Effect.

(f) Employee Matters. Other than rights or obligations pursuant to Borrower's operating agreement, there are no agreements, understandings or proposed transactions between Borrower and any of its officers, managers or members. To Borrower's actual knowledge, none of Borrower's officers, members or managers is obligated under any contract (including licenses, covenants or commitments of any nature) or other agreement, or subject to any judgment, decree or order of any court or administrative agency, that would materially interfere with such Person's ability to promote the interest of Borrower or that would conflict with Borrower's business as now conducted or as proposed to be conducted. To Borrower's actual knowledge, no member, officer or manager of Borrower intends to terminate such Person's association with Borrower or is otherwise likely to become unavailable to continue as a member, officer or manager of Borrower, nor does Borrower have a present intention to terminate the engagement of any of such Persons.

(g) Governmental Licenses. To its knowledge, Borrower and each of its Subsidiaries has all franchises, permits, licenses and any similar authority necessary for the conduct of its businesses as currently or proposed to be conducted, the lack of which could reasonably be expected to have a Material Adverse Effect on Borrower. None of Borrower nor any of its Subsidiaries is in default in any material respect under any of such franchises, permits, licenses or other similar authority.

4. Affirmative Covenants of Borrower. So long as Borrower's Obligations are outstanding, Borrower covenants and agrees with Lender as follows:

(a) Borrower shall use the proceeds of the Loan evidenced by the Note for (a) expenses relating to the construction of new franchise locations at the New Century Mall, (b)

3

10701170 v3

expenses relating to the remodeling of existing franchise location and the addition of a new franchise and kiosk in Santa Rosa, California, (c) deposit for remodeling of existing franchise location at Arden and (d) working capital purposes.

(b) Borrower shall continue to operate its business consistent with past practices.

(c) Borrower shall comply with all statutes, laws, ordinances and government rules and regulations to which it and its Subsidiaries are subject and shall maintain in force all permits, licenses, and governmental approvals, the loss of which would reasonably be expected to have a Material Adverse Effect.

(d) Borrower and its Subsidiaries shall keep adequate books and records of account in accordance with United States Generally Accepted Accounting Principles consistently applied or in accordance with other methods acceptable to Lender in its reasonable discretion. Borrower shall deliver to Lender as soon as available, but in any event within 20 days after the end of each calendar month, unaudited financial statements of Borrower and its Subsidiaries for the prior month and prior periods in such form as Lender may reasonably request, consistent with previously delivered financial statements of Borrower and its Subsidiaries. Borrower shall also deliver to Lender as soon as available, but in any event within 60 days after the end of each calendar year, unaudited financial statements of Borrower and its Subsidiaries for the prior year in such form as Lender may reasonably request, consistent with previously delivered financial statements of Borrower and its Subsidiaries. Borrower shall make available budgets, sales projections, operating plans or other financial information generally prepared by or for Borrower in the ordinary course of business as Lender may reasonably request from time to time.

(e)    Borrower shall give prompt written notice to Lender of any litigation or governmental proceedings pending or threatened in writing against Borrower or any of its Subsidiaries.

(f)    Borrower shall in a timely manner observe, perform and fulfill each and every covenant, term and provision to be observed and performed by Borrower under this Agreement and the Note and any amendments, modifications of changes thereto.

5. Negative Covenants of Borrower. So long as the Obligations are outstanding:

(a) Borrower shall not change its name or jurisdiction of organization or relocate its chief executive office; replace its chief executive officer or any manager (unless such replacement occurs due to the death, disability or resignation of such Person and in such case, Borrower shall provide Lender with written notice of such replacement within ten (10) days after the replacement occurs); engage in any business, other than or reasonably related or incidental to the businesses currently engaged in by Borrower or change its fiscal year end unless required by applicable law.

(b) Borrower shall not merge or consolidate with or into any other business organization; acquire all or substantially all of the capital stock, equity or property of another Person, or sell or transfer all or substantially all of its assets.

(c) Borrower shall not create, incur, assume, guarantee or be or remain liable with respect to any Indebtedness, or repay any Indebtedness other than in the ordinary course of business, without the prior written consent of Lender.

(d) Borrower shall not create, incur, assume or allow any Lien with respect to any of its property, or assign or otherwise convey any right to receive income, without the prior written consent of Lender.

(e) Borrower shall not pay any dividends or make any other distribution or payment on account of or in redemption, liquidation, retirement or purchase of any of its membership or equity interests if such dividends or distributions would result in a Default (as defined in the Note).

(f) Borrower shall not enter into or permit to exist any transaction, agreement or arrangement with any member, manager, officer or Affiliate of any member, manager or officer except as shall be approved in writing by Lender in its sole and absolute discretion.

(g) Borrower shall not create or form any subsidiary, nor shall it amend, modify or waive any provisions, terms or conditions in its operating agreement, true, complete and correct copies of which Borrower has provided to Lender, without the prior written consent of Lender.

6. Right to Inspect. Lender (through any of its officers, employees, or agents) shall, at its sole expense, have the right, upon reasonable prior notice, from time to time to inspect the premises of Borrower and to inspect the books and records of Borrower, and to make copies thereof.

7. Default and Remedies. Borrower shall be deemed to be and shall be in default under this Agreement and the Note upon the occurrence and during the continuance of a Default (as defined in the Note), and Lender's remedies shall be as set forth in the Note.

8. Indemnification. Borrower agrees to indemnify, defend and hold harmless Lender and its Affiliates, and their respective shareholders, partners, members, directors, managers, officers, agents, attorneys, advisors and employees (collectively "Indemnified Parties") from and against any and all loss, liability, obligation, damage, penalty, judgment, claim, deficiency, expense, action, suit, cost and disbursement of any kind or nature whatsoever (including interest, penalties, attorneys' fees and amounts paid in settlement), imposed on, incurred by or asserted against the Indemnified Parties growing out of or resulting from any Default, the enforcement of by Lender of any of its rights under the Loan Documents or any transaction or event contemplated therein. WITHOUT LIMITATION, THE FOREGOING INDEMNITIES SHALL APPLY TO INDEMNIFIED PARTIES WITH RESPECT TO MATTERS THAT IN WHOLE OR IN PART ARE CAUSED BY OR ARISE OUT OF, OR ARE CLAIMED TO BE CAUSED BY OR ARISE OUT OF, THE ACTS OR OMISSIONS OR STRICT LIABILITY OF ANY INDEMNIFIED PARTY.

9. Limitation of Liability. Neither Lender nor any of its Affiliates, or their respective stockholders, members, beneficiaries, trustees, officers, directors, employees, attorneys, or

5

agents shall have any liability with respect to, and Borrower hereby waives, releases, and agrees not to sue any of them upon, any claim for any punitive, special, indirect, incidental, or consequential damages suffered or incurred by Borrower in connection with, arising out of, or in any way related to, this Agreement or any of the other Loan Documents, or any of the transactions contemplated by this Agreement or any of the other Loan Documents.

10. Miscellaneous.

(a) Notices. Except as otherwise provided herein, all notices, requests, demands, consents, instructions or other communications to or upon the Lender under this Agreement shall be in writing and faxed, mailed, electronically delivered or hand delivered to each party to the facsimile number, email address or physical address set forth below (or to such other facsimile number, email address or physical address as the recipient of any notice shall have notified the other in writing). All such notices and communications shall be effective: (i) when sent by FedEx or other overnight service of recognized standing, on the business day following the deposit with such service; (ii) when mailed, by registered or certified mail, first class postage prepaid and addressed as aforesaid through the United States Postal Service, upon receipt; (iii) when delivered by hand, upon delivery; and (iv) when faxed or electronically delivered, upon confirmation of receipt.

Lender:

First Capital Investment Corporation
1560 Wilson Boulevard
Suite 450
Arlington, Virginia 22209
Attn: Jeffrey McClure
jmcclure@freedomcapitalfunds.com

Borrower: *First Capital Retail LLC*
*2355 Gold Meadow Way, Ste 160, Gold River, CA 95670*
[INCLUDE CONTACT INFORMATION] *RP@FirstCapitalRetail.com*

(b) Obligations Absolute. The obligations of Borrower under this Agreement shall be absolute and unconditional and shall not be released, discharged, reduced, or in any way impaired by any circumstance whatsoever, including, without limitation, any amendment, modification, extension, or renewal of this Agreement, the Obligations, or any document or instrument evidencing, securing, or otherwise relating to the Obligations, or any release or subordination of collateral, or any waiver, consent, extension, indulgence, compromise, settlement, or other action or inaction in respect of this Agreement, the Obligations, or any document or instrument evidencing, securing, or otherwise relating to the Obligations, or any exercise or failure to exercise any right, remedy, power, or privilege in respect of the Obligations.

(c) Nonwaiver. No failure or delay on Lender's part in exercising any right hereunder shall operate as a waiver thereof or of any other right nor shall any single or partial exercise of any such right preclude any other further exercise thereof or of any other right.

6

(d) <u>Amendments and Waivers</u>. This Agreement may not be amended or modified, nor may any of its terms be waived, except by written instruments signed by Lender. Each waiver or consent under any provision hereof shall be effective only in the specific instances for the purpose for which given.

(e) <u>Assignments</u>. This Agreement shall be binding upon and inure to the benefit of Lender and its successors and assigns; <u>provided</u>, <u>however</u>, that neither Lender nor Borrower shall sell, assign or delegate rights, remedies and obligations hereunder, except that Lender may assign or delegate rights, remedies and obligations hereunder in connection with an assignment of its rights, remedies and obligations under the Note permitted under the terms of the Note.

(f) <u>Cumulative Rights, etc</u>. The rights, powers and remedies of Lender under this Agreement shall be in addition to all rights, powers and remedies given to Lender by virtue of any applicable law, rule or regulation of any governmental authority, any Loan Document, all of which rights, powers, and remedies shall be cumulative and may be exercised successively or concurrently without impairing Lender's rights hereunder.

(g) <u>Partial Invalidity</u>. If at any time any provision of this Agreement is or becomes illegal, invalid or unenforceable in any respect under the law or any jurisdiction, neither the legality, validity or enforceability of the remaining provisions of this Agreement nor the legality, validity or enforceability of such provision under the law of any other jurisdiction shall in any way be affected or impaired thereby.

(h) <u>Expenses</u>. Borrower shall pay its own expenses and the reasonable expenses of Lender in connection with the transactions contemplated by the Loan Documents; <u>provided</u>, <u>however</u>, that if any action at law or in equity is necessary to enforce or interpret the terms of the Loan Documents, the prevailing party shall be entitled to reasonable attorneys' fees, costs and necessary disbursements in addition to any other relief to which such party may be entitled.

(i) <u>Construction</u>. Each of this Agreement and the other Loan Documents is the result of negotiations among, and has been reviewed by Borrower, Lender and their respective counsel. Accordingly, this Agreement and the other Loan Documents shall be deemed to be the product of all parties hereto, and no ambiguity shall be construed in favor of or against Borrower or Lender.

(j) <u>Other Interpretive Provisions</u>. References in this Agreement and the Note to any document, instrument or agreement (i) includes all exhibits, schedules and other attachments thereto, (ii) includes all documents, instruments or agreements issued or executed in replacement thereof, and (iii) means such document, instrument or agreement, or replacement or predecessor thereto, as amended, modified and supplemented from time to time and in effect at any given time. The words "hereof," "herein" and "hereunder" and words of similar import when used in this Agreement or the Note refer to this Agreement or the Note as a whole and not to any particular provision of this Agreement or the Note. The words "include" and "including" and words of similar import when used in this Agreement or the Note shall not be construed to be limiting or exclusive. The Article and/or Section headings in this Agreement and the Note are included herein for convenience of reference only and shall not constitute a part of this

Agreement for any other purpose. In the event of any conflict between the provisions of this Agreement or the Note, the provisions of this Agreement shall control.

(k) <u>Venue</u>. Borrower irrevocably and unconditionally submits, for itself and its property, to the exclusive jurisdiction of any state or federal court sitting in Arlington, Virginia, in any action or proceeding arising out of or relating to this Agreement, the Note, or for recognition or enforcement of any judgment, and Borrower irrevocably and unconditionally agrees that all claims in respect of any such action or proceeding may be heard and determined in any such state court or, to the fullest extent permitted by law, in such federal court. A final judgment in any such action or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law.

(l) <u>Waiver of Jury Trial</u>. TO THE EXTENT PERMITTED BY LAW, BORROWER HEREBY KNOWINGLY, VOLUNTARILY, IRREVOCABLY AND INTENTIONALLY WAIVES THE RIGHT TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION BASED HEREON, ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS AGREEMENT AND THE NOTE OR ANY COURSE OF CONDUCT, COURSE OF DEALINGS, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF ANY PARTY IN CONNECTION HEREWITH.

(m) <u>Governing Law</u>. This Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Virginia without reference to conflicts of law rules.

(n) <u>Survival</u>. This Agreement and all covenants, agreements, representations and warranties made herein shall survive the making by Lender of the Loan and the execution and delivery to Lender of the Note, and shall continue in full force and effect so long as all or any of the Indebtedness with respect to the Note is outstanding and unpaid unless a longer period is expressly set forth in this Agreement or the Note. Whenever in this Agreement any of the parties hereto is referred to, such reference shall be deemed to include the legal representatives, successors and assigns of such party. All covenants, promises and agreements in this Agreement, by or on behalf of Borrower, shall inure to the benefit of the legal representatives, successors and assigns of Lender.

(o) <u>No Partnership or Joint Venture</u>. Borrower and Lender intend that the relationships created under this Agreement and the Note be solely that of borrower and lender. Nothing herein or therein is intended to create a joint venture, partnership, tenancy-in-common, or joint tenancy relationship between Borrower and Lender.

(p) <u>Counterparts</u>. This Agreement may be executed in any number of separate counterparts by one or more of the parties hereto and all of said counterparts taken together shall constitute one and the same instrument. Delivery of an executed counterpart of the signature page to this Agreement by telecopier or other electronic means (for example, by an email to which is attached a PDF copy) shall be effective as delivery of a manually executed counterpart of this Agreement.

[*Signature page follows*]

8

10701170 v3

IN WITNESS WHEREOF, Borrower and Lender have caused this Loan Agreement to be executed as of the day and year first above written.

**Borrower**:

FIRST CAPITAL RETAIL, LLC, a California limited liability company

By: _____
Name: RAMESH PRASAD
Title: PRESIDENT

**Lender:**

FIRST CAPITAL INVESTMENT CORPORATION, a Maryland corporation

By: _____
Name: Jeffrey M McChum
Title: CEO

10701170 v3

# Exhibit A

## Form of Note to Borrower

10701170 v3

Gov. Ex. 106-010

## Schedule A

## List of Subsidiaries of Borrower

537119v.8

Gov. Ex. 106-011