# EXHIBIT F

6/18/2025 Trial Transcript (Excerpts)

```
 1              UNITED STATES DISTRICT COURT

 2              EASTERN DISTRICT OF CALIFORNIA

 3                      --oOo--

 4  UNITED STATES OF AMERICA,    ) Case No. 2:22-CR-00068-DJC-1
                                 )
 5                               ) Sacramento, California
              Government,        ) June 18, 2025, 9:12 a.m.
 6          v.                   )
                                 )
 7  SUNEET SINGAL,               ) Re: Trial Day 3
                                 )
 8              Defendant.       )

 9              TRANSCRIPT OF PROCEEDINGS
        BEFORE THE HONORABLE DANIEL J. CALABRETTA
10              UNITED STATES DISTRICT JUDGE

11  APPEARANCES:
    For the Government:     U.S. DEPARTMENT OF JUSTICE by
12                          MR. NICHOLAS M. FOGG,
                            ASSISTANT U.S. ATTORNEY
13                          MS. JESSICA LOUISE DELANEY,
                            ASSISTANT U.S. ATTORNEY
14                          501 I Street, Suite 10-100
                            Sacramento, California  95814
15
    For the Defendant:      STRADLEY, RONAN, STEVENS & YOUNG by
16                          MR. MICHAEL J. ENGLE
                            2005 Market Street
17                          One Commerce Square, Suite 2600
                            Philadelphia, Pennsylvania  19103
18
                            WILLIAM J. PORTANOVA, ATTORNEY AT LAW
19                          MR. WILLIAM JOHN PORTANOVA
                            400 Capitol Mall, Suite 1100
20                          Sacramento, California  95814

21              MARYANN VALENOTI, RMR, CRR
                   Official Court Reporter
22              501 I Street, Suite 4-200
                   Sacramento, CA 95814
23              mvalenotiRMRCRR@gmail.com
                      (916)930-4275
24
    Proceedings reported via mechanical steno - transcript produced
25  via computer-aided transcription
```

Prasad - Direct (Resumed) by Fogg

1  A    Yes.

2  Q    What do you mean by you moved it to Capitol Mall; what

3  does that mean?

4  A    So, I took the -- I took control of finances, opened new

5  bank accounts.  There was a bookkeeper, and Windy moved down to

6  the office here, I did my own HR.  I forget the name of the

7  company, ADP Workforce, and then did all those internally.

8  Q    So, you mentioned having initial conversations with

9  Mr. Singal where you're told you'd true up, and then eventually

10  you decide to move the business to Capitol Mall.  What changed

11  that led you to move the Cinnabon company to First Capitol

12  Mall?

13  A    There was a lot being said that never came to fruition.

14  Q    Said by who?

15  A    By Suneet.

16  Q    What was he saying that didn't come true?

17  A    Money's coming.  It's just a matter of days.  We can

18  expand.  We can do what you want as far expanding retail.

19  Similar conversation.

20  Q    Did you come to believe that that wasn't true?

21  A    Yes.

22  Q    What happened to First Capital Retail -- strike that.  Let

23  me ask that differently.

24       Do you remember, approximately, when you moved First

25  Capital Retail to Capitol Mall?

Prasad - Direct (Resumed) by Fogg

1   A    I don't remember the date, sorry.

2   Q    What happened to the Cinnabon business after you moved it

3   to Capitol Mall?

4   A    So, we moved it to Capitol Mall, everything started, you

5   know, falling.  Then I had to seek Chapter 11 reorganization

6   because --

7   Q    Let me stop you there.  What does Chapter 11

8   reorganization mean to you?

9   A    Filing bankruptcy so it can stop the debtors from seizing

10  your property or locking you out.

11  Q    Do you remember approximately when you filed bankruptcy

12  for the Cinnabon company?

13  A    I don't remember the date.

14  Q    Did the BDC ever end up buying First Capital Retail from

15  you?

16  A    No.

17  Q    Did the merchant cash advances taken out on the Cinnabon

18  company affect your decision to declare bankruptcy?

19  A    Yes.

20  Q    What effect did they have on that decision?

21  A    All of it.  Everyday -- there was a lot of merchants.  So

22  one is enough when they take money out of your account on a

23  daily basis, but when you have several of them, it just puts

24  your account to be overdrawn.

25          MR. FOGG:  Thank you, Mr. Prasad.

Prasad - Cross by Mr. Engle

1    Your Honor, may I have a moment, please.

2    (Counsel confer.)

3    MR. FOGG:  Your Honor, I have no further questions for

4    Mr. Prasad at this time.  Thank you.

5    THE COURT:  Thank you.  Any cross?

6    MR. ENGLE:  Yes, Your Honor, thank you.

7                    CROSS-EXAMINATION

8    BY MR. ENGLE:

9    Q    Good morning, Mr. Prasad.

10   A    Good morning.

11   Q    Mr. Prasad, you were aware of the fact that the MCA loans

12   that were being taken out in the spring of 2017 was not the

13   first time that FCR had taken out MC loans, correct?

14   A    Correct.

15   Q    They had taken out such loans in 2016 and in 2015,

16   correct?

17   A    I don't remember the dates, but yes.

18   Q    Okay.  And after taking out those loans in 2015, the

19   business continued to operate, and after taking out the loans

20   in 2016, the business continued to operate, correct?

21   A    I would say yes.

22   Q    Okay.  Because it was still around in 2017, right?

23   A    Yes.

24   MR. ENGLE:  Okay.  Could we call up Government

25   Exhibit 101, please, which I believe, Your Honor, is in

Prasad - Cross by Mr. Engle

1    evidence, if it may be shown to the jury.

2         THE WITNESS:  Okay.

3    BY MR. ENGLE:

4    Q    Do you recall this from yesterday?

5    A    Yes.

6         MR. ENGLE:  Okay.  Could we go to Section 2, please,

7    on the next page.  Could you highlight 2.2 down to just above

8    Article 3.

9    BY MR. ENGLE:

10   Q    Mr. Prasad, do you see that section of the contract?

11   A    Yes.

12   Q    Now, this wasn't the first contract you had ever executed

13   in your life as an adult or as a business person, correct?

14   A    Correct.

15   Q    You had read other contracts and been familiar with how

16   contracts worked, fair to say?

17   A    Yes, yes.

18   Q    Now, the closing for this deal, it indicates that there

19   are certain obligations of the parties at the closing, right?

20   A    Correct.

21   Q    In order to close out the finalization of the deal?

22   A    Yes.

23   Q    And 2.2.1 talks about some things that the seller shall

24   deliver to you as the buyer, fair?

25   A    Yes.

Prasad - Cross by Mr. Engle

1    Q    And that would have been things that Mr. Singal needed

2    delivered to you at closing?

3    A    Yes.

4    Q    All right.  And then 2.2.2 talks about the buyer, and it

5    uses the word "shall" deliver, am I right about that?

6    A    Yes.

7    Q    It doesn't say "may" or "can" or "could" or anything like

8    that?

9    A    Correct.

10   Q    It makes it mandatory that you deliver or cause to be

11   delivered to the seller the following things that are listed

12   there; isn't that right?

13   A    You can say that.

14   Q    Well, I am saying that.  Are you saying that?

15   A    Yes.

16   Q    Okay.  So, these things were not optional.  They had to be

17   delivered at closing.  Am I correct that you had to deliver an

18   executed original of the Promissory Note; is that correct?

19   A    According to this agreement, yes, but no, in general.

20   Q    Well, I'm asking what the contract said.

21   A    Okay.

22   Q    Does the contract say you had to deliver a promissory note

23   at the closing in order to finish out the deal?

24   A    I "shall."

25   Q    You "shall," right.  So the answer is yes?

Prasad - Cross by Mr. Engle

1  A    Yes.

2  Q    Okay.  You testified yesterday that you did not provide a

3  Promissory Note on February 23 of 2017; correct?

4  A    Yes.

5  Q    And you, in fact, signed that document on some later date?

6  A    Yes.

7  Q    All right.  What about with respect to the Pledge

8  Agreement, you didn't deliver that on February 23 of 2017

9  either; did you?

10 A    Yes.

11 Q    Because you signed that on some other later date, correct?

12 A    Yes.

13      THE COURT:  Hold on.  Can I have the court reporter

14 read back, there was a double negative in the question.

15      MR. ENGLE:  Understood.

16      THE COURT:  Can I have the court reporter read back

17 two questions?

18      I think I can do it.

19      What about with respect to the Pledge Agreement, you

20 didn't deliver that on February 23 of '17 either, did you?

21      So, I want you to rephrase the question.

22      MR. ENGLE:  Sure.

23 BY MR. ENGLE:

24 Q    Would you agree with me that on February 23, 2017, you did

25 not deliver or cause to be delivered an executed original of

Prasad - Cross by Mr. Engle

1    the Promissory Note per the terms of this agreement?

2    A    Yes.

3    Q    Would you agree with me that on February 23, 2017, you did

4    not provide or cause to be provided an executed original of the

5    Pledge Agreement pursuant to this agreement?

6    A    Yes.

7    Q    Would you agree with me that on February 23, 2017, that

8    you did not deliver or cause to be delivered an executed

9    original of the Security Agreement pursuant to this agreement?

10   A    Correct.

11   Q    And would you agree with me that on February 23, 2017, you

12   did not deliver or cause to be delivered an executed original

13   of the Company Guaranty pursuant to this agreement?

14   A    Correct.

15   Q    And with respect to all of those things, the Promissory

16   Note, the Pledge Agreement, the Security Agreement and the

17   Company Guaranty, you testified yesterday that you didn't sign

18   those documents or deliver them until some date later on down

19   the line?

20   A    Yes, to my recollection, yes.

21   Q    Okay.  Now, I believe you testified yesterday when you

22   were asked about those various documents, who was involved in

23   the preparation of those documents, and you mentioned an

24   attorney and Mr. Singal; was that correct?

25   A    Yes.

Prasad - Cross by Mr. Engle

1  Q    And I don't want to butcher the poor man's name, so could

2  you say it for me?

3  A    Tony Arostegui.

4  Q    Tony Arostegui, okay.

5        Who is Ryan Lochan?

6  A    He's my son.

7  Q    Right.  Did he work for Tony?

8  A    He assisted Tony.

9  Q    So he performed work for the various First Capital

10  entities in assisting its general counsel?

11  A    I don't know what he did with First Capital entities.

12  Q    But he worked for Tony?

13  A    Yes.

14  Q    Were you aware that he worked on the preparation of these

15  various documents?

16        MR. FOGG:  Objection, Your Honor, assumes facts not in

17  evidence.

18        THE COURT:  Overruled.

19        THE WITNESS:  No.

20  BY MR. ENGLE:

21  Q    You're not aware?

22  A    No.

23  Q    Okay.  Now, you mentioned --

24        THE COURT:  Hold on.  I will just remind the jury that

25  the attorney's questions are not evidence.  The only evidence

Prasad - Cross by Mr. Engle

1  which your son was indicating that he was finishing up the

2  drafting?

3          MR. FOGG:  Objection, Your Honor, hearsay, assumes

4  facts not in evidence.

5          THE COURT:  Sustained.

6  BY MR. ENGLE:

7  Q    Do you recall a circumstance where your son was preparing

8  documents for FCR as it relates to the transaction that was

9  dated February 23, 2017?

10          MR. FOGG:  Objection, Your Honor, assumes facts not in

11  evidence.

12          THE COURT:  Overruled.

13  BY MR. ENGLE:

14  Q    Do you recall that?

15  A    No.

16          MR. ENGLE:  May I approach, Your Honor?

17          THE COURT:  Go ahead.

18  BY MR. ENGLE:

19  Q    I'll ask you to take a look at what's marked as Defense

20  Exhibit DK and read it to yourself, please.

21  A    Okay.

22  Q    Did you finish reading that?

23  A    Yes.

24  Q    Okay.  Having read that, does that refresh your

25  recollection that your son was involved in the preparing of the

MARYANN VALENOTI - U.S. DISTRICT COURT -  (916)930-4275

Prasad - Cross by Mr. Engle

1  documents for the Promissory Note and other related documents

2  we've been talking about as of June 6 of 2017?

3  A    That's what that document say.  I don't recall.

4      MR. FOGG:  Objection, Your Honor, I move to strike the

5  witness's answer as to the contents of the document.

6      THE COURT:  I'll order the jury just to disregard the

7  statement about the date of the document.

8  BY MR. ENGLE:

9  Q    Do you have any reason to dispute that June 6 of 2017, was

10  the date on which those documents that you ultimately signed

11  were being prepared?

12      MR. FOGG:  Objection, Your Honor, assumes facts not in

13  evidence.

14      THE COURT:  Sustained.

15  BY MR. ENGLE:

16  Q    Isn't it true that the documents that were being prepared

17  for signature that had been required for closing were being

18  prepared for signature in early June of 2017?

19  A    It was sometime after the Purchase Agreement.  I don't

20  recall the exact date.

21  Q    And June would have been after, right?

22  A    June is -- yeah.

23  Q    Okay.  Now, you didn't change the control over the bank

24  accounts for FCR until late August, early September of 2017,

25  correct?

MARYANN VALENOTI - U.S. DISTRICT COURT -  (916)930-4275

Prasad - Redirect by Mr. Fogg

1   A    I don't recall the date, but sounds about right.

2   Q    Okay.  And you filed with the State a document in which

3   you then named yourself as the managing member of FCR on

4   September 14 of 2017; isn't that correct?

5   A    That would have been done by my attorney at the time.

6   Q    But you're aware of that happening?

7   A    Yes.

8        MR. ENGLE:  I have no further questions, Your Honor,

9   thank you.

10       THE COURT:  Any redirect?

11       MR. FOGG:  Very briefly, Your Honor.

12                  REDIRECT EXAMINATION

13       MR. FOGG:  Ms. Kenny, can we pull up 101, please.

14  BY MR. FOGG:

15  Q    Mr. Prasad, do you see Exhibit 101 in front of you on the

16  screen?

17  A    Yes.

18       MR. FOGG:  And, Ms. Kenny, can we go to the second

19  page, please.  And can we blow up Section 2, please.

20  BY MR. FOGG:

21  Q    Mr. Prasad, do you remember going over this Section 2.2,

22  Exhibit 101, during your direct examination yesterday?

23  A    Yes.

24  Q    And your cross-examination today?

25  A    Yes.

Prasad - Recross by Mr. Engle

1    Q    And we discussed the documents that are listed in 2.2.2?

2    A    Yes.

3    Q    When you signed Exhibit 101, the Membership Interest

4    Purchase Agreement, did you believe you needed to provide those

5    2.2.2 documents to gain ownership, or do you believe that you

6    could sign those documents later after you've taken ownership

7    of FCR?

8    A    Sign the documents later.

9         MR. FOGG:  Thank you, Your Honor.  No further

10   questions.

11        THE COURT:  Any recross?

12        MR. ENGLE:  Yes.

13                    RECROSS-EXAMINATION

14        MR. ENGLE:  Yes, same section, please.  Thank you.  I

15   appreciate it.

16   BY MR. ENGLE:

17   Q    Those were obligations, correct?

18   A    Yes.

19   Q    Mandatory things?

20   A    If you read it that way, yes, but not as I understood it.

21   Q    I think anyone that reads the English language reads it

22   that way.

23        MR. FOGG:  Objection, argumentative.

24        THE COURT:  Sustained.

25        MR. ENGLE:  Nothing further.

Prasad - Recross by Mr. Engle

1          THE COURT:  Any redirect?

2          MR. FOGG:  No, Your Honor.  Thank you.

3          THE COURT:  You can step down.  Thank you very much

4     for your time.

5          (Witness is excused.)

6          THE COURT:  Does the government wish to call their

7     next witness?

8          MR. FOGG:  Your Honor, may I have just a moment --

9     yes, I want to check with Ms. Delaney to make sure I'm -- your

10    Honor, one other issue, may Mr. Prasad be excused, please?

11         THE COURT:  Any objection?

12         MR. ENGLE:  No objection, Your Honor.

13         THE COURT:  Okay.

14         MS. DELANEY:  Your Honor, at this time the United

15    States would like to enter and read into evidence Joint

16    Exhibit JX-5, and then to introduce several audio clips

17    accompanied by a transcript.

18         THE COURT:  Any objection to JX-5?

19         MR. ENGLE:  No, Your Honor.

20         THE COURT:  All right, JX-5 will be admitted.

21         (Joint Exhibit JX-5 admitted in evidence.)

22         THE COURT:  Go ahead and read it, and I'll just remind

23    the jury the government's about to read stipulations that have

24    been entered between the parties, you must accept these facts

25    as proved.

MARYANN VALENOTI - U.S. DISTRICT COURT -  (916)930-4275

Prasad - Recross by Mr. Engle

1    MS. DELANEY:  "On June 4, 2018, June 5, 2018, and

2    June 26, 2018, the defendant, Suneet Singal, gave testimony to

3    attorneys from the Securities and Exchange Commission, the SEC,

4    in Washington, D.C.

5          "At the beginning of each day of testimony Singal was

6    placed under oath and sworn to tell the truth.  A certified

7    court reporter created an audio recording of Singal's testimony

8    on each day.  Singal's testimony was later transcribed and

9    certified by the reporter.

10         "At this time the parties agree that Government's

11   Exhibits 600 and 800 are true and accurate copies of recordings

12   of Singal's testimony on June 5 and June 26, 2018.

13         "The Government has excerpted sections of Exhibits 600

14   and 800, specifically Exhibits 601 through 608 and 801 through

15   805.  Those exhibits, Exhibits 601 through 608 and 801 through

16   805, are true and correct copies of portions of Exhibits 600

17   and 800."

18         Your Honor, at this time I move into evidence

19   Exhibits 601 through 608, and Exhibits 801 through 805.

20         THE COURT:  Any objection?

21         MR. ENGLE:  No objection.

22         THE COURT:  Those exhibits will be admitted.

23      (Government Exhibit 601 through 605 admitted in evidence.)

24      (Government Exhibit 607 through 608 admitted in evidence.)

25      (Government Exhibit 801 through 805 admitted in evidence.)

Prasad - Recross by Mr. Engle

1      MS. DELANEY:  Your Honor, at this time I would like to

2  publish Exhibit 601.

3      THE COURT:  Go ahead.

4      Since -- I think the parties have agreed that the

5  transcript is accurate, correct?

6      MS. DELANEY:  Your Honor, we provided -- we retyped

7  this.  We did provide it to defense counsel well in advance of

8  today's hearing.  I don't understand if they have any

9  objections to it.

10     THE COURT:  I guess my question is should I give the

11  jury the same instruction I gave previously about the

12  transcript?

13     MS. DELANEY:  That's appropriate, Your Honor.  We're

14  not introducing the transcripts into evidence.

15     THE COURT:  Just as you heard the other audio

16  recording, the transcript is intended to aid you in listening

17  to the recording, but what you hear in the actual recording,

18  that controls, that's the evidence, not the transcript.

19     All right, go ahead.

20  (Media is presented.)

21     MS. DELANEY:  If we could please publish Exhibit 602.

22  (Media is presented.)

23     MS. DELANEY:  Publish Exhibit 603.

24  (Media is presented.)

25     MS. DELANEY:  Publish Exhibit 604.

Prasad - Recross by Mr. Engle

1      (Media is presented.)

2          MS. DELANEY:  Please publish Exhibit 605.

3      (Media is presented.)

4          MS. DELANEY:  If we could please publish Exhibit 607.

5      (Media is presented.)

6          MS. DELANEY:  If we could publish Exhibit 608.

7      (Media is presented.)

8          MS. DELANEY:  If we could please publish Exhibit 801.

9      (Media is presented.)

10         MS. DELANEY:  Please publish Exhibit 802.

11     (Media is presented.)

12         MS. DELANEY:  Please publish Exhibit 803.

13     (Media is presented.)

14         MS. DELANEY:  Please publish Exhibit 804.

15     (Media is presented.)

16         MS. DELANEY:  And, Ms. Kenny, if you could please

17 publish Exhibit 805.

18     (Media is presented.)

19         MS. DELANEY:  Your Honor, just to note one thing for

20 the record, there actually is no Exhibit 606.  Those were

21 compiled into a different exhibit in the process of preparing

22 for trial.

23         THE COURT:  All right, thank you.

24         MS. DELANEY:  We are prepared to proceed with our next

25 witness, Your Honor.

David - Direct by Delaney

1  A    The date that they signed the contract.

2  Q    And then below it lists the "Merchant Legal Name."  What

3  would go -- what would be listed next to Merchant Legal Name?

4  A    The company's legal name that would be on their EIN

5  documentation from the IRS or something showing their legal

6  name of the company.

7  Q    Would this be the company that was applying for a merchant

8  cash advance?

9  A    Yes, ma'am.

10  Q    And then right near the bottom of that pullout screen, it

11  says "Physical Address."  What would traditionally be listed

12  there?

13  A    The physical address of said merchant business.

14  Q    Thank you.

15        MS. DELANEY:  Ms. Kenny, if you could zoom back out.

16  BY MS. DELANEY:

17  Q    We'll focus now, Mr. Davis, on the lower portion of the

18  document.  In the portion I zoomed out, it says, "Purchase

19  Price, 100,000."  What does that refer to?

20  A    That refers to the amount that we are advancing the

21  business.

22  Q    So, that would be the actual merchant -- I'm sorry, we

23  spoke over each other a little bit.  What would that be again?

24  A    That would be the funding amount, the merchant cash

25  advance funding amount that the merchant is receiving.

David - Direct by Delaney

1  Q    And then next to it it says, "Specified Percentage"; what

2  would that be?

3  A    That would be the percentage of typically they would be --

4  we would be collecting of their future receivables.

5  Q    And then next to that it says "Purchased Amount"; what is

6  that discussing?

7  A    Ultimately, we're getting back 149,900 for the 100,000

8  that we're advancing him.

9  Q    And then this particular document, who signed for the

10 merchant?

11 A    The owner.

12 Q    What is the name of that individual?

13 A    Suneet Singal.

14 Q    Did that individual also sign as the owner and guarantor

15 on this document?

16 A    Yes.

17        MS. DELANEY:  Thank you, Ms. Kenny.  You can bring

18 that down.

19 BY MS. DELANEY:

20 Q    Mr. Davis, if you could turn back to the binder in front

21 of you and turn to Exhibit 2-1-3, 213.  Do you recognize this

22 document?

23 A    Yes, ma'am.

24 Q    What is this?

25 A    This is the Confession of Judgment.

MARYANN VALENOTI - U.S. DISTRICT COURT -  (916)930-4275

David - Direct by Delaney

1  Q    Was this the standard form used by Yellowstone Capital

2  West in 2017?

3  A    Yes.

4         MS. DELANEY:  Move to admit Government Exhibit 213.

5         THE COURT:  Any further objection?

6         MR. ENGLE:  No objection, Your Honor.

7         THE COURT:  213 will be admitted.

8       (Government Exhibit 213 admitted in evidence.)

9         MS. DELANEY:  Ms. Kenny, if you could please publish

10  that.

11  BY MS. DELANEY:

12  Q    At the top, Mr. Davis, I see it says "Confession of

13  Judgment."  Is this the document that we were referring to

14  earlier that could be filed in event of default?

15  A    Yes.

16         MS. DELANEY:  Ms. Kenny, if we could turn to Page 2 of

17  that exhibit.

18  BY MS. DELANEY:

19  Q    Mr. Davis, who signed on behalf of First Capital Retail

20  and First Capital Real Estate Investments on this Confession of

21  Judgment?

22  A    Suneet Singal.

23         MS. DELANEY:  We can take down that exhibit,

24  Ms. Kenny.

25

David - Direct by Delaney

1  BY MS. DELANEY:

2  Q    Mr. Davis, I'm now going to have you turn to Exhibit 217

3  in the binder.  Do you recognize what document is at

4  Government 217?

5  A    Also a Confession of Judgment.

6  Q    Is this, again, the standard form used by Yellowstone

7  Capital West in 2017?

8  A    Yes.

9         MS. DELANEY:  Move to admit Government Exhibit 217.

10         THE COURT:  Any further objection?

11         MR. ENGLE:  No, Your Honor.

12         THE COURT:  217 will be admitted.

13      (Government Exhibit 217 admitted in evidence.)

14         MS. DELANEY:  If we could please publish.

15  BY MS. DELANEY:

16  Q    If we look at the top of that Confession of Judgment, what

17  businesses are listed for this Confession of Judgment?

18  A    First Capital Retail, LLC, and First Capital Real Estate

19  Investments, LLC.

20         MS. DELANEY:  And, Ms. Kenny, if we could turn to

21  Page 2.

22         THE COURT:  Mr. Davis, if you could speak up a little

23  bit, please.

24         THE WITNESS:  Sorry.

25         MS. DELANEY:  We'll just zoom in on the bottom.

Ex. F-022

David - Direct by Delaney

1    BY MS. DELANEY:

2    Q    Mr. Davis, who signed on behalf of First Capital Retail

3    and First Capital Real Estate Investments in this Confession of

4    Judgment?

5    A    Suneet Singal.

6    Q    If you could turn now to Exhibit 216.

7    A    216?

8    Q    216, yes, I'm having you go back.

9         Do you recognize the exhibit at 216?

10   A    Yes.

11   Q    What is this document?

12   A    This is the Contract.

13   Q    And is this the contract associated with the Confession of

14   Judgment that we just reviewed?

15   A    Yes.

16        MS. DELANEY:  Move to admit Government Exhibit 216.

17        THE COURT:  Any further objection?

18        MR. ENGLE:  No further objection, Your Honor.

19        THE COURT:  216 will be admitted.

20        (Government Exhibit 216 admitted in evidence.)

21        MS. DELANEY:  And, Ms. Kenny, if we could please

22   publish Exhibit 216.

23   BY MS. DELANEY:

24   Q    On this document, Mr. Davis, I see the date June 9, 2017.

25   What would that date refer to?

MARYANN VALENOTI - U.S. DISTRICT COURT -  (916)930-4275

David - Direct by Delaney

1    A    The date that they signed the contract.

2    Q    And I see listed under "Merchant Legal Name," First

3    Capital Retail and the entities listed on annexed Exhibit A.

4    Is it fair to assume from the Confession of Judgment that the

5    other entity listed on the Confession of Judgment is what's

6    listed on annexed Exhibit A?

7    A    Yes.

8         MS. DELANEY:  Thank you, Ms. Kenny.  If you could zoom

9    out again.

10   BY MS. DELANEY:

11   Q    Mr. Davis, looking again at the Purchase Price portion of

12   the Agreement.  Again, what does "Purchase Price" refer to?

13   A    The funding amount of the merchant cash advance.

14   Q    And the purchased amount?

15   A    The purchased amount is the amount that they're ultimately

16   paying back.

17   Q    And who signed on behalf of the merchant in this sales

18   document?

19   A    The owner, Suneet Singal.

20   Q    And who signed as the owner and guarantor?

21   A    Suneet Singal.

22        MS. DELANEY:  Your Honor, if I could have just a

23   moment.

24        (Counsel confer.)

25        MS. DELANEY:  Thank you, Your Honor.  Thank you,

MARYANN VALENOTI - U.S. DISTRICT COURT -  (916)930-4275

Davis - Cross by Mr. Engle

1  Mr. Davis, those are all the questions I have.  I expect

2  defense counsel will have some questions for you as well.

3          THE COURT:  So, counsel, if you have 15 minutes or

4  less, I'll let you do it now, or after break if you have a bit

5  more than that, then we should take a break now.

6          MR. ENGLE:  I should be quick, Your Honor.

7          THE COURT:  All right, go ahead.

8                    CROSS-EXAMINATION

9  BY MR. ENGLE:

10  Q    Good morning, Mr. Davis.

11  A    Good morning.

12  Q    So, Mr. Davis, other than the documents that you were just

13  shown during your testimony, do you have any independent

14  recollection of the funding of this -- these two particular

15  loans?

16  A    I remember a little bit.

17  Q    Okay.  Do you specifically recall what was said during the

18  funding calls?

19  A    Not specifically.

20  Q    Okay.  Now, in taking a look at what you have up there in

21  front of you, Government Exhibit 212, which was the first

22  secured Merchant Agreement and Government 213, the Confession

23  of Judgment that went with that, would you agree with me that

24  for this particular loan you were loaning to two different

25  entities, correct?

Davis - Cross by Mr. Engle

1   A    Correct.

2   Q    Okay.  So one company was First Capital Retail and the

3   other company was First Capital Real Estate Investments,

4   correct?

5   A    Correct.

6   Q    Was it unusual to do a loan like this with multiple

7   entities?

8   A    No.

9   Q    So that was a common practice?

10  A    Yes.

11  Q    All right.  And based upon the documentation with the

12  contract and the Confession of Judgment, Mr. Singal was

13  indicating that he was personally guaranteeing each of these

14  two loans, correct?

15  A    Correct.

16  Q    So, that if in the event of default on either one of those

17  loans, you would have a circumstance where you could go after

18  him personally and his personal assets; is that correct?

19  A    Correct.

20  Q    And the purpose of the Confession of Judgment is to allow

21  you to skip the whole court litigation processing, file a

22  document and immediately get a judgment against these two

23  entities, their assets, as well as Mr. Singal personally and

24  his assets, correct?

25  A    That's correct.

Davis - Cross by Mr. Engle

1    Q    All right.  Now, am I correct that there's a May loan
2    agreement and Confession of Judgment and then one in early
3    June; is that right?
4    A    That's right.
5    Q    And the one in early June is just a refinancing or
6    restructuring of the one from May, correct?
7    A    That's correct.
8    Q    They're not really two separate loans, there's a
9    restructuring of the one instrument; is that correct?
10   A    That's correct.
11   Q    All right.  So not two loans, really one?
12   A    Well, it's two separate loans, but there's only one going
13   on at the same time, correct.
14   Q    That's what I was getting at.  Thank you, you said it
15   better than I could.  Appreciate it.
16            MR. ENGLE:  No further questions.
17            THE COURT:  Any redirect?
18            MS. DELANEY:  No.  Thank you, Your Honor.
19            THE COURT:  All right.  Thank you very much for your
20   time.  You can step down.
21        (Witness is excused.)
22            THE COURT:  All right.  Members of the jury, this is a
23   good time to take our morning break.  I'll ask you all to come
24   back at 2:35, and please remember the admonition, don't talk
25   about the case to each other, do any research, and we'll see

Davis - Cross by Mr. Engle

1   you at 10:35.

2        (In open court outside the presence of the jury.)

3            THE COURT:  Anything that we need to address?

4            MR. FOGG:  Your Honor, may the government excuse

5   Mr. Davis?

6            THE COURT:  Any objection?

7            MR. ENGLE:  No, Your Honor.

8            THE COURT:  Go ahead.

9            MR. FOGG:  Thank you, Your Honor.

10            THE COURT:  And then in terms of timing, how many more

11   witnesses does the government have at this point?

12            MR. FOGG:  Two, Your Honor.

13            THE COURT:  All right.  That's fine.  Then we'll

14   figure out things from there.  Anything else we need to

15   address?

16            MR. ENGLE:  No, Your Honor.

17            THE COURT:  All right.  Thank you all.

18            MR. FOGG:  Thank you, Your Honor.

19        (Recess taken 10:22 a.m. to 10:40 a.m.)

20            THE CLERK:  Please remain seated.  Court is back in

21   session.

22            THE COURT:  All right, anything we need to address?

23            MR. ENGLE:  No, Your Honor.

24            MR. FOGG:  No.

25            THE COURT:  Let's bring in the jury, please.

Davis - Cross by Mr. Engle

1          (In open court in the presence of the jury.)

2               THE COURT:  Folks, have a seat.

3               Does the government wish to call their next witness?

4               MS. DELANEY:  Your Honor, at this time we would like

5     to read into the record Joint Exhibit 3.

6               THE COURT:  Any objection?

7               MR. ENGLE:  No, Your Honor.

8               THE COURT:  Joint Exhibit 3 will be admitted.

9          (Joint Exhibit JX-3 admitted in evidence.)

10              THE COURT:  Again, members of the jury, these are

11    stipulated facts that you are to accept as proved.

12              MS. DELANEY:  "It is hereby stipulated between the

13    parties that the below wire transfers were interstate wire

14    communications:  An April 12, 2017, wire transfer of $197,370

15    from EBF Partners, LLC to JPMorgan Chase, account ending in

16    0562.

17              "An April 20, 2017 wire transfer of $112,308 from

18    World Global Financing, Incorporated to JPMorgan Chase account

19    ending in 3187.

20              "An April 20, 2017 wire transfer of $48,500 from WG

21    Prime, Inc. to JPMorgan Chase account ending in 3187.

22              "An April 21, 2017 wire transfer of $294,946 from

23    Happy Rock Merchant Solutions to JPMorgan Chase account ending

24    in 9924.

25              "A May 22, 2017 wire transfer of $43,975 from iKahn

Salinas - Direct by Fogg

1    Capital to JPMorgan Chase account ending in 0562."

2              Thank you, Your Honor.

3              THE COURT:  All right, thank you.

4              MR. FOGG:  Your Honor, the government calls Ana

5    Salinas to the stand, please.

6              ANA SALINAS, GOVERNMENT WITNESS, SWORN

7                    DIRECT EXAMINATION

8              THE CLERK:  Please be seated.  Please state your full

9    name and spell your last name.

10             THE WITNESS:  Ana Salinas, last name is S-A-L-I-N-A-S.

11             THE COURT:  Go ahead.

12             MR. FOGG:  Thank you, Your Honor.

13   BY MR. FOGG:

14   Q    Good morning, Ms. Salinas.  How are you?

15   A    Good.  How about yourself?

16   Q    Fine, thank you.  Where do you work, ma'am?

17   A    Sorry?

18   Q    Where do you work?

19   A    FBI.

20   Q    What do you do at the FBI?

21   A    I'm a forensic accountant.

22   Q    What is a forensic accountant?

23   A    Forensic accountant essentially examines financial data

24   that's discovered during an investigation.  We find financial

25   leads, subpoena records and conduct analysis on the documents

Salinas - Direct by Fogg

1   collected.  We basically follow the money and piece together

2   how individuals handle their financial activity.

3        Essentially, forensic accountants conduct a financial

4   investigation that supports and runs parallel to an overall

5   investigation.

6   Q    Ms. Salinas, how long have you been a forensic accountant

7   for the FBI?

8   A    Seven years.

9   Q    What training have you received in that role as a forensic

10  accountant?

11  A    I have gone through a five-week training course in

12  Quantico, Virginia, specifically designed for forensic

13  accountants.

14  Q    Before you joined the FBI, did you have any educational

15  background in accounting?

16  A    Yes.  I have a bachelor's in accounting and a master's in

17  accounting.

18       MR. FOGG:  Your Honor, may I have just one moment,

19  please.

20       (Pause in proceedings.)

21  BY MR. FOGG:

22  Q    Ms. Salinas, in this case, have you reviewed bank records

23  for Chase bank accounts ending in 0562, 9924, 3187 for the

24  first half of 2017?

25  A    Yes.

Campbell - Direct by Delaney

1    A    Have I ever?  I don't understand the question.

2    Q    That is fair enough.  That was a broad question.

3         Let me just ask the point that I'm getting to.  Do you

4    expect that you would recognize Mr. Singal's voice if you heard

5    it?

6    A    Yes.

7    Q    Have you had sufficient interactions with him to be able

8    to recognize that voice?

9    A    Yes.

10        MS. DELANEY:  Your Honor, at this time I would like to

11   republish Government Exhibit 203, which has been previously

12   admitted.

13        THE COURT:  Go ahead.

14        (Media is presented.)

15   BY MS. DELANEY:

16   Q    Ms. Campbell, did you recognize either of the voices on

17   that recording?

18   A    Just the male voice.

19   Q    Who do you recognize the male voice to be?

20   A    Suneet Singal.

21        MS. DELANEY:  Thank you, Your Honor.  Thank you,

22   Ms. Campbell.  Those are all the questions I have.  Defense

23   counsel may have some questions for you as well.

24        THE COURT:  Any cross?

25        MR. ENGLE:  Yes, thank you, Your Honor.

Campbell - Cross by Mr. Engle

1                           CROSS-EXAMINATION

2      BY MR. ENGLE:

3      Q     Good afternoon, Ms. Campbell.

4      A     Hi.

5      Q     I promise I won't make you walk through all those

6      Confession of Judgment documents.

7      A     Thank you.

8      Q     I think we've talked enough about those in this trial.

9            Now I have the sickness -- excuse me, it's going around.

10           You indicated that you had started working sometime 2015,

11     2016 with the First Capital, various entities in the office

12     that you described, right?

13     A     Correct.

14     Q     Okay.  During that time period you were able to see how

15     Mr. Singal interacted with other of -- the people that worked

16     there in the various entities; is that fair?

17     A     Correct.

18     Q     Okay.  One of those individuals would have been Ramesh

19     Prasad?

20     A     Yes.

21     Q     And you experienced during that time, 2015, 2016, that

22     Mr. Singal was the person in charge and Mr. Prasad, in essence,

23     reported to him?

24     A     Yes.

25     Q     And did you continue to see the nature of that

Campbell - Cross by Mr. Engle

1   relationship, Mr. Singal as the owner and the person in charge

2   and Mr. Prasad, in essence, working for him, in the early part

3   of 2017?

4   A    Yes.

5   Q    And did the nature of that relationship then continue in

6   February and March and April and May and June of 2017?

7   A    As far as I remember.  I mean, it seems like that's, yeah,

8   correct.

9   Q    Did there come a time in the summer period of 2017 where

10  you saw a change where Mr. Prasad, then, was taking control of

11  First Capital Retail by moving its bank accounts, moving its

12  physical location, things of that nature?

13  A    I wasn't involved in that part of things, but -- I

14  couldn't say for sure when anything like that happened.

15  Q    Okay.  Do you remember being interviewed by the FBI in

16  2022?

17  A    Yeah.

18  Q    Okay.  Do you remember telling them that you believe you

19  became aware of the sale later in the summer of 2017,

20  approximately when Prasad was in the process of moving FCR's

21  office to downtown Sacramento?

22  A    Yes, I do, now that you reminded me.

23  Q    Okay.  Fair enough.

24  A    Yes.

25  Q    So you noticed a change in the dynamic between the way

Campbell - Cross by Mr. Engle

1  Mr. Singal and Mr. Prasad worked with one another in the

2  summertime of 2017.

3  A    Yes.

4  Q    And you noticed that Mr. Prasad, for the first time, took

5  control of First Capital Retail by doing various things in the

6  summer of 2017?

7  A    I assumed so, yes.

8  Q    Did you see that happening?

9  A    Yeah, I mean, he moved out of the offices, and that seemed

10  to be going in that direction, yes.

11  Q    Okay.

12         MR. ENGLE:  That's all I have, thank you.

13         THE WITNESS:  Thank you.

14         THE COURT:  Any redirect?

15         MS. DELANEY:  No.  Thank you, Your Honor.

16         THE COURT:  All right.  You can step down.  Thank you

17  very much for your time.

18         THE WITNESS:  Thank you.

19     (Witness is excused.)

20         THE COURT:  All right.  Mr. Fogg.

21         MR. FOGG:  Your Honor, the United States rests.

22         THE COURT:  All right.  So, members of the jury, that

23  will conclude the government's case-in-chief.  I'm actually

24  going to let you go for the day.  I think I now feel

25  comfortable telling you that we're at least slightly ahead of

1   schedule, so the fact I'm giving you extra time isn't going to

2   then come back to bite us later.

3        So, as a reminder, we're dark tomorrow, so I'll ask

4   you to come back at 9 o'clock to Friday.

5        Since we're going to be gone for a day and a half, I

6   want to, you know, once again more fully, remind you of the

7   admonition.  You've heard part of the case, you haven't heard

8   all of it.  You haven't heard closing arguments.  You haven't

9   heard my instructions, and you haven't started talking to each

10  other yet.  It's not time to do so yet.

11       So, I want you to maintain that open mind by not

12  talking about the case with anyone else, and, you know, it's

13  also just as important that you're not being exposed to any

14  information that we don't all know about.  So, make sure you're

15  not doing any research on the Internet, you know, asking about

16  any of the concepts or terms that you heard here in court, but

17  rather not think about the case and enjoy the time off from

18  here.

19       I'm sure you have other things you'll be doing, but

20  we'll see you back on Friday at 9 a.m.  Thank you very much.

21       (In open court outside the presence of the jury.)

22       THE COURT:  Go ahead and have a seat.

23       Anything, Mr. Fogg, that we need to talk about?

24       MR. FOGG:  Not from the government.

25       THE COURT:  Anything from the defense side?

1        MR. ENGLE:  No, Your Honor.  I don't know when you

2    want us to raise the Rule 29 motion.  We don't need to do it

3    now, but I just didn't want to --

4        THE COURT:  If you're ready to do it now, why don't we

5    do it now.  If you'd rather do it Friday morning, I'm fine with

6    that, too.

7        MR. ENGLE:  Your Honor, I think we could do it now.

8        Your Honor, for the record, the defense would move

9    pursuant to Federal Rule of Criminal Procedure 29 for judgment

10   of acquittal.  The argument -- I'll keep it short.  Your

11   Honor's familiar with the arguments we presented in our motion

12   to dismiss.  The arguments here would be very similar.

13       It's our position that there was no actual contract

14   that was completed and closed until some date well beyond

15   February 23 of 2017.

16       Based upon the record that's currently in evidence and

17   Mr. Prasad's testimony, we know that all the documents that

18   were conditions precedent to the contract were not signed on

19   February 23, 2017, and by his testimony they were signed

20   sometime thereafter, we don't know when.  We don't know if they

21   were before or after when these various MCA loans were

22   obtained.

23       And as a result of that, it's our position, as a

24   matter of law, a jury could not find beyond a reasonable

25   doubt -- I'll shut my big mouth for a second -- could not find

MARYANN VALENOTI - U.S. DISTRICT COURT -  (916)930-4275

1    beyond a reasonable doubt that Mr. Singal made false statements

2    to the MCA lenders at the time he applied for those loans.

3            That's it in a nutshell, Your Honor.

4            THE COURT:  I certainly understand that. I'm going to

5    reserve ruling.  You know, we'll see what the jury does, and

6    obviously, you can renew that after the verdict.  I'm sure

7    we'll have full briefing and argument if the jury -- depending

8    on how the jury comes back.

9            Anything else that we need to do?

10           MR. ENGLE:  No, Your Honor.

11           THE COURT:  Okay.  So, we'll get you -- if you haven't

12   already, we'll get the draft jury instructions.  It's really

13   just that one instruction over good faith and the contract

14   instructions that are remotely at issue.  If you see any typos

15   or anything, please let me know.  And otherwise, is the

16   government still planning on filing something regarding the

17   contract jury instructions?

18           MR. FOGG:  Yes, Your Honor.

19           THE COURT:  When do you think you'll file that?

20           MR. FOGG:  Sometime tomorrow.  Does the Court have a

21   strong preference as to noon or 5 o'clock as the filing time?

22           THE COURT:  Why don't we say by 3:00.  The court is

23   closed, but I'll be here, so that would give me some time.  If

24   there's any other authority that you want to raise, you know,

25   feel free to file something as well.

1          MR. ENGLE:  Yes, Your Honor.  Thank you.

2          THE COURT:  Otherwise, we'll plan on meeting at

3   8 o'clock on Friday morning for a charge conference and go from

4   there.  Anything else?

5          MR. PORTANOVA:  No.

6          MR. ENGLE:  No, Your Honor.

7          MR. FOGG:  No, Your Honor, thank you.

8          THE COURT:  See you all on Friday.

9      (Proceedings adjourned at 2:11 p.m.)

10

11                   C E R T I F I C A T E

12

13     I certify that the foregoing is a true and correct

14   transcript of the proceedings in the above-entitled matter.

15

16

17   MARYANN VALENOTI, RMR, CRR              July 22, 2025
     Official Court Reporter                     DATE
18   CA CSR #11266

19

20

21

22

23

24

25