# EXHIBIT G
# Gov. Ex. 201

## PAYMENT RIGHTS PURCHASE AND SALE AGREEMENT

This Payment Rights Purchase and Sale Agreement ("Agreement") dated 04/04/2017, is made by and between ESBF California, LLC ("ESBF") and the business identified below ("Seller").

### SELLER'S INFORMATION

| LEGAL BUSINESS NAME | FIRST CAPITAL RETAIL LLC | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| D/B/A | FIRST CAPITAL RETAIL LLC | | | | | | | |
| TYPE OF BUSINESS ENTITY | Corp. | | Limited Liability Company | X | Partnership | | Limited Partnership | |
| | Limited Liability Partnership | | | | Sole Proprietorship | | Other: | |
| PHYSICAL ADDRESS | 2377 Gold Meadow way STE 290 | | | | | | | |
| City | Gold River | | | State | | CA | Zip | 95670 |
| MAILING ADDRESS | 2377 Gold Meadow way STE 290 | | | | | | | |
| City | Gold River | | | State | | CA | Zip | 95670 |
| Contact Name | Suneet Singal | | | Position | | | | |
| Business Phone | 916-526-2886 | | | Cell Phone | | | | |
| Email | | | | Website | | | | |
| Date Business Started | | | Federal Tax ID | | 47-2494283 | | | |
| Monthly Average Sales $ | $1,584,746.67 | | Annual Sales $ | | $19,016,960.00 | | | |

### OFFER TO SELL AND PURCHASE PAYMENT RIGHTS

Seller hereby sells, assigns and transfers to ESBF, without recourse (except upon an Event of Default defined in Section 3 of the SELLER AGREEMENT TERMS AND CONDITIONS), upon payment of the Purchase Price, the Specified Percentage of the proceeds of each future sale by Seller (collectively "Future Receipts") until the Purchased Amount has been delivered to ESBF by or on behalf of Seller. "Future Receipts" includes all payments made by cash, check, ACH or other electronic transfer, credit card, debit card, bank card, charge card (each such card shall be referred to herein as a "Credit Card") or other form of monetary payment in the ordinary course of Seller's business. BASED UPON SELLER'S CALCULATIONS AND EXPERIENCE IN OPERATING ITS BUSINESS, SELLER IS CONFIDENT THAT THE PURCHASE PRICE PAID BY ESBF IN EXCHANGE FOR THE PURCHASED AMOUNT OF FUTURE RECEIPTS WILL BE USED IN A MANNER THAT WILL BENEFIT SELLER'S CURRENT AND FUTURE BUSINESS OPERATIONS.

| Purchase Price $ | $200,000.00 | Purchased Amount $ | $284,000.00 | Daily Payment $ | $2,028.57 | Specified Percentage | 15 % |
|---|---|---|---|---|---|---|---|
| Daily Payment = (Monthly Average Sales X Specified Percentage) / Average Weekdays in a Calendar Month | | | | | | | |

Seller shall (1) deposit all Future Receipts into only one bank account, which must be acceptable to and pre-approved by ESBF (the "Account") and (2) instruct Seller's credit card processor, which processor must be acceptable to and pre-approved by ESBF (the "Processor") who shall serve as Seller's sole credit card processor, to deposit all Credit Card receipts of Seller into the Account. ESBF will debit the Daily Payment from the Account each Weekday (Monday – Friday). Seller authorizes ESBF to initiate electronic checks or ACH debits from the Account equal to the Daily Payment each business day and will provide ESBF with all required access codes. Seller understands that it is responsible for ensuring that the Daily Payment is available in the Account and will be responsible for any fees incurred by ESBF resulting from a rejected electronic check or ACH debit attempt. ESBF is not responsible for any overdrafts or rejected transactions that may result from ESBF's debiting any amount authorized under the terms of this Agreement. The Daily Payment amount is intended to represent the Specified Percentage of Seller's Future Receipts. Seller may request that ESBF reconcile Seller's actual receipts by either crediting or debiting the difference back to or from the Account so that the amount ESBF debited in the most recent calendar month equaled the Specified Percentage of Future Receipts that Seller collected in that calendar month. Any reconciliation request must be: (1) in writing; (2) include a copy of Seller's bank statement for the calendar month at issue; and (3) be sent to ESBF at 5 West 37th Street, 2nd Floor, New York NY 10018 within 30 days after the last day of the calendar month at issue. It is solely the Seller's responsibility to send a complete bank statement. Failure to send a written reconciliation request within 30 days after the last day of the calendar month at issue forfeits that month's reconciliation. Notwithstanding anything to the contrary in this Agreement or any other agreement between ESBF and Seller, upon the occurrence of an Event of Default, the Specified Percentage shall equal 100%. A list of all fees applicable under this Agreement is contained in Appendix A.

THE "PAYMENT RIGHTS PURCHASE AND SALE AGREEMENT TERMS AND CONDITIONS" AND THE "SECURITY AGREEMENT AND GUARANTY" ARE ALL HEREBY INCORPORATED IN AND MADE A PART OF THIS PAYMENT RIGHTS PURCHASE AND SALE AGREEMENT.

| FOR THE SELLER #1 | (PRINT NAME & TITLE BELOW) | SIGNATURE | (SIGN BELOW) | MUST SIGN AS SELLER |
|---|---|---|---|---|
| Suneet Singal | | | | |
| FOR THE SELLER #2 | (PRINT NAME & TITLE BELOW) | SIGNATURE | (SIGN BELOW) | MUST SIGN AS SELLER |
| | | | | |
| FOR THE OWNER/GUARANTOR #1 | (PRINT NAME & TITLE BELOW) | SIGNATURE | (SIGN BELOW) | MUST SIGN AS OWNER ALSO |
| Suneet Singal | | | | |
| FOR THE OWNER/GUARANTOR #2 | (PRINT NAME & TITLE BELOW) | SIGNATURE | (SIGN BELOW) | MUST SIGN AS OWNER ALSO |
| | | | | |

HC# 4822-9598-3643
ISO#2323/Deal#371234/04042017

Initial Here ___  1

SINGAL_00004108

GOVERNMENT'S EXHIBIT
**201**
2-22-CR-00068-DJC

*ESBF's payment of the Purchase Price shall be deemed ESBF's acceptance and performance of this Agreement, notwithstanding ESBF not executing this agreement.* Each of above-signed Seller(s) and Owner(s) represent that he or she is authorized to sign this Agreement and that the information provided herein and in all documents, forms and recorded interviews provided to or with ESBF is true, accurate and complete in all respects. An investigative or consumer report may be made in connection with this Agreement. Seller and each of the above-signed Owners authorizes ESBF its agents and representatives and any credit reporting agency engaged by ESBF, to (i) investigate any references given or any other statements or data obtained from or about Seller or any of its Owners for the purpose of this Agreement, and (ii) pull credit reports at any time now or for so long as Seller and/or Owners(s) continue to have any obligation owed to ESBF as a consequence of this Agreement or for ESBF's ability to determine Seller's eligibility to enter into any future agreement with ESBF.

ANY MISREPRESENTATION MADE BY SELLER OR OWNER IN CONNECTION WITH THIS AGREEMENT MAY CONSTITUTE A SEPARATE CAUSE OF ACTION FOR FRAUD, INTENTIONAL MISREPRESENTATION AND/OR UNJUST ENRICHMENT IN WHICH EVENT ESBF WILL BE ENTITLED TO THE RECOVERY OF NOT ONLY ITS LOSSES BUT ALSO ALL OF ITS COSTS AND EXPENSES AND ITS REASONABLE LEGAL FEES.

## PAYMENT RIGHTS PURCHASE AND SALE AGREEMENT TERMS AND CONDITIONS

### I. TERMS OF ENROLLMENT IN PROGRAM

**1.1 ACH Debit Authorization.** Seller shall execute an agreement (the "ACH Authorization") acceptable to ESBF to authorize the use of the Automated Clearinghouse System (ACH) to retrieve the Daily Payment from the Account. Seller shall provide ESBF and/or its authorized agent(s) with all of the information, authorizations and passwords necessary for verifying Seller's receivables, receipts, deposits and withdrawals into and from the Account. Seller hereby authorizes ESBF and/or its agent(s) to deduct from the Account the Purchased Amount and any other amounts owed by Seller to ESBF as specified herein and to pay such amounts to ESBF. These authorizations apply not only to the approved Account but also to any subsequent or alternate account used by the Seller for these deposits, whether preapproved by ESBF or not. This additional authorization is not a waiver of ESBF's right to declare Seller in default if Seller uses an account that ESBF did not first preapprove in writing. This authorization shall be irrevocable without the prior written consent of ESBF.

**1.1 (a) Bank Holidays and Other Exceptions.** ESBF will debit the Daily Payment each Weekday on which the Bank is open and able to process ACH transactions. On the Weekday immediately following any Weekday or Weekdays on which the Bank was not open to process ACH transactions, ESBF will debit the designated account for an amount equal to the sum of; (i) the Daily Payment amount due on that Weekday, plus (ii) the Daily Payment amount due on the preceding Weekday when the Bank was not open or could not process ACH transactions.

**1.2 Financial Condition.** Seller and Guarantor(s) authorize ESBF and its agents to investigate their financial responsibility and history, and will provide to ESBF any authorizations, bank or financial statements, tax returns, etc., as ESBF deems necessary in its sole discretion prior to or at any time after execution of this Agreement. A photocopy of this authorization will be deemed acceptable as an authorization for release of financial and credit information. ESBF is authorized to update such information and financial and credit profiles from time to time as it deems appropriate.

**1.3 Transactional History.** Seller authorizes all of its banks and brokers and Credit Card processors to provide ESBF with Seller's banking, brokerage and/or processing history to determine qualification or continuation in this program.

**1.4 Indemnification.** Seller and Guarantor(s) jointly and severally indemnify and hold harmless Processor, its officers, directors and shareholders against all losses, damages, claims, liabilities and expenses (including reasonable attorney's fees) incurred by Processor resulting from (a) claims asserted by ESBF for monies owed to ESBF from Seller and (b) actions taken by Processor in reliance upon any fraudulent, misleading or deceptive information or instructions provided by ESBF.

**1.5 No Liability.** In no event will ESBF be liable for any claims asserted by Seller or Guarantor(s) under any legal theory for lost profits, lost revenues, lost business opportunities, exemplary, punitive, special, incidental, indirect or consequential damages, each of which is waived by both Seller and Guarantor(s). In the event these claims are nonetheless raised, Seller and Guarantor(s) will be jointly liable for all of ESBF's legal fees and expenses resulting therefrom. Seller and each Owner and each Guarantor hereby and each waives to the maximum extent permitted by law any claim for damages against ESBF or any of its affiliates relating to any (i)investigation undertaken by or on behalf of ESBF as permitted by this Agreement or (ii) disclosure of information as permitted by this Agreement.

**1.6 Reliance on Terms.** Sections 1.1, 1.3, 1.4, 1.5, 1.6 and 1.8 of this Agreement are agreed to for the benefit of Seller, ESBF and Processor, and notwithstanding the fact that Processor is not a party of this Agreement, Processor may rely upon their terms and raise them as a defense in any action.

**1.7 Accounting Records, and Place of Business.** ESBF or its designated representatives and agents shall have the right during Seller's normal business hours and at any other reasonable time to examine the interior and exterior of any of Seller's places of business. ESBF may examine, among other things, whether Seller (a) has a place of business that is separate from any personal residence, (b) is open for business, and (c) has sufficient inventory to conduct Seller's business. When performing an examination, ESBF may photograph the interior and exterior of any of Seller's places of business, including any signage, and may photograph any Owner. ESBF or any of its agents shall have the right to inspect, audit, check, and make extracts from any copies of the books, records, journals, orders, receipts, correspondence that relate to Seller's accounts or other transactions between the parties thereto and the general financial condition of Seller and ESBF may remove any of such records temporarily for the purpose of having copies made thereof. ESBF shall have the right to hire a Certified Public Accountant, licensed in the state where the business is located to perform analysis of the accounting records for the purpose of determining if the Specified Percentage of receipts has been made available for remittance to ESBF. Seller hereby agrees to fully cooperate with such analysis upon the request of ESBF.

**1.8 Power of Attorney.** Seller irrevocably appoints ESBF as its agent and attorney-in-fact with full authority to take any action or execute any instrument or document to settle all obligations due to Seller from any bank or Processor, or in the case of an occurrence of an Event of Default under Section 3 hereof, to ESBF under this Agreement, including without limitation (i) to obtain and adjust insurance; (ii) to collect monies due or to become due under or in respect of any of the Collateral; (iii) to receive, endorse and collect any checks, notes, drafts, instruments, documents or chattel paper in connection with clause (i) or clause (ii) above; (iv) to sign Seller's name on any invoice, bill of lading, or assignment directing customers or account debtors to make payment directly to ESBF; (v) to file any claims or take any action or institute any proceeding that ESBF may deem necessary for the collection of any of the unpaid Purchased Amount from the Collateral, or otherwise to enforce its rights with respect to payment of the Purchased Amount. In connection therewith, all costs, expenses and fees, including legal fees, shall be payable by and from Seller and ESBF is authorized to use Seller's funds to pay for same; and (vi) ESBF shall have the right, without waiving any of its rights and remedies and without notice to Seller or any

Owner/Guarantor, to notify any credit card processor of the sale of future payment rights and re-direct the remittance of daily settlements to an account of ESBF's choosing in order to settle all obligations due to ESBF under this Agreement.

**1.9 Confidentiality.** Seller understands and agrees that the terms and conditions of the products and services offered by ESBF, including this Agreement and any other ESBF documentations (collectively, "Confidential Information") are proprietary and confidential information of ESBF. Accordingly unless disclosure is required by law or court order, Seller shall not disclose Confidential Information of ESBF to any person other than an attorney, accountant, financial advisor or employee of Seller who needs to know such information for the purpose of advising Seller ("Advisor"), provided such Advisor uses Confidential Information solely for the purpose of advising Seller and first agrees in writing to be bound by the terms of this section. A breach hereof entitles ESBF to not only damages and legal fees but also to both a temporary restraining order and a preliminary injunction without bond or security.

**1.10 Publicity.** Seller and each of Seller's Owners and all Guarantors hereby authorize ESBF to use its, his or her name in listings of clients and in advertising and marketing materials.

**1.11 D/B/As.** Seller hereby acknowledges and agrees that ESBF may be using "doing business as" or "d/b/a" names in connection with various matters relating to the transaction between ESBF and Seller, including the filing of UCC-1 financing statements and other notices or filings.

**1.12 Application of Payments.** Subject to applicable law, ESBF reserves the right to apply payments in any manner ESBF chooses in ESBF's sole discretion.

**II. SELLER'S REPRESENTATIONS, WARRANTIES AND COVENANTS**

Seller represents warrants and covenants that, as of this date and until ESBF has received the Purchased Amount in full:

**2.1 Good Faith, Best Efforts and Due Diligence.** Seller will conduct its business in good faith and will use its best efforts to maintain and grow its business, to ensure that ESBF obtains the Purchased Amount. Furthermore, Seller agrees, warrants and represents hereby that Seller will constantly perform all appropriate Due Diligence and credit checks of all of the customers' finances, cash flow, solvency, good faith, payment histories and business reputations (the "Due Diligence Requirements") as may be commercially reasonable to ensure any and all products and/or services provided, sold or delivered by Seller to said customers will be paid for by customers in full and on time, and will not result in the creation of an unpaid account. This is not a guaranty of payment by Seller's customers, but is an obligation of commercially reasonable Due Diligence investigation and credit check of customers before extending credit to them and continuing no less frequently than monthly so long as sums are still due.

**2.2 Sale of Payment Rights:** Seller represents and warrants that it is selling the Purchased Amount of Future Receipts to ESBF in Seller's normal course of business and the Purchase Price paid by ESBF is good and valuable consideration for the sale. Seller is selling a portion of a future revenue stream to ESBF at a discount, not borrowing money from ESBF. There is no interest rate or payment schedule and no time period during which the Purchased Amount must be collected by ESBF. If Future Receipts are remitted more slowly than ESBF may have anticipated or projected because Seller's business has slowed down, or if the full Purchased Amount is never remitted because Seller's business went bankrupt or otherwise ceased operations in the ordinary course of business, and Seller has not breached this Agreement, Seller would not owe anything to ESBF and would not be in breach of or default under this Agreement. ESBF is buying the Purchased Amount of Future Receipts knowing the risks that Seller's business may slow down or fail, and ESBF assumes these risks based on Seller's representations, warranties and covenants in this Agreement, which are designed to give ESBF a reasonable and fair opportunity to receive the benefit of its bargain. By this Agreement, Seller transfers to ESBF full and complete ownership of the Purchased Amount of Future Receipts and Seller retains no legal or equitable interest therein.

**2.3 Financial Condition and Financial Information.** Seller's and Guarantors' bank and financial statements, copies of which have been furnished to ESBF, and future statements that will be furnished hereafter at the request of ESBF, fairly represent the financial condition of Seller and Guarantor(s) at such dates, and since those dates there has been no material adverse changes, financial or otherwise, in the condition, operation or ownership of Seller. Seller and Guarantor(s) have a continuing, affirmative obligation to advise ESBF of any material adverse change in their financial condition, operation or ownership. ESBF may request statements at any time during the performance of this Agreement and the Seller and Guarantor(s) shall provide them to ESBF within 5 business days. Seller's or Guarantors' failure to do so is a material breach of this Agreement.

**2.4 Governmental Approvals.** Seller is in compliance and shall comply with all laws and has valid permits, authorizations and licenses to own, operate and lease its properties and to conduct the business in which it is presently engaged and/or will engage in hereafter.

**2.5 Authorization.** Seller and the person(s) signing this Agreement on behalf of Seller, have full power and authority to incur and perform the obligations under this Agreement, all of which have been duly authorized.

**2.6 Insurance.** Seller will maintain business-interruption insurance naming ESBF as loss payee and additional insured in amounts and against risks as are satisfactory to ESBF and shall provide ESBF proof of such insurance upon request.

**2.7 Processor and Bank Account.** Seller will not change its Credit Card processor, add terminals, change its financial institution or bank account(s) or take any similar action that could have an adverse effect upon Seller's obligations under this Agreement, without ESBF's prior written consent. Any such changes shall be a material breach of this Agreement.

**2.8 Change of Name or Location or Sale of Business.** Seller will not conduct Seller's businesses under any name other than as disclosed to Processor and ESBF, nor will Seller change any of its places of business without prior written consent by ESBF. Seller will not sell, dispose, transfer or otherwise convey its business or assets without (i) the express prior written consent of ESBF, and (ii) the written agreement of any purchaser or transferee assuming all of Seller's obligations under this Agreement pursuant to documentation satisfactory to ESBF.

**2.9 Daily Batch Out.** Seller will batch out receipts with Processor on a daily basis.

**2.10 Estoppel Certificate.** Seller will at all times, and from time to time, upon at least 1 day's prior notice from ESBF to Seller, execute, acknowledge and deliver to ESBF and/or to any other person, firm or corporation specified by ESBF, a statement certifying that this Agreement is unmodified and in full force and effect (or, if

HC# 4822-9598-3643
ISO#2323/Deal#371234/04042017

3

Initial Here _____

SINGAL_00004110
Gov. Ex. 201-003

there have been modifications, that the same is in full force and effect as modified and stating the modifications) and stating the dates which the Purchased Amount or any portion thereof has been delivered to ESBF.

**2.11 No Bankruptcy.** As of the date of this Agreement, Seller is not insolvent and does not contemplate and has not filed any petition for bankruptcy protection under Title 11 of the United States Code and there has been no involuntary petition brought or pending against Seller. Seller represents that it has not consulted with a bankruptcy attorney within 6 months prior to the date of this Agreement, and that it has no present intention of closing its business or ceasing to operate its business, either permanently or temporarily, during the 6 month period after the date of this Agreement. Seller further warrants that it does not anticipate filing any such bankruptcy petition and it does not anticipate that an involuntary petition will be filed against it.

**2.12 Sharing of Information.** Seller hereby authorizes ESBF to share information regarding Seller's performance under this Agreement with affiliates and unaffiliated third parties.

**2.13 Unencumbered Receipts.** Seller has good, complete, unencumbered and marketable title to all Future Receipts, free and clear of any and all liabilities, liens, claims, changes, restrictions, conditions, options, rights, mortgages, security interests, equities, pledges and encumbrances of any kind or nature whatsoever or any other rights or interests that may be inconsistent with the transactions contemplated with, or adverse to the interests of ESBF.

**2.14 Business Purpose.** Seller is a valid business in good standing under the laws of the jurisdictions in which it is organized and/or operates, and Seller is entering into this Agreement for business purposes and not as a consumer for personal, family or household purposes. Seller agrees to use the proceeds of the Purchase Price solely for business purposes, and not for personal, family or household purposes. Seller understands that Seller's agreement not to use the Purchase Price proceeds for personal, family or household purposes means certain important rights conferred upon consumers pursuant to federal or state law will not apply to this Agreement. Seller agrees that a breach by Seller of the provisions of this section will not affect ESBF's right to (i) enforce Seller's promise to pay for all amounts owed under this Agreement, regardless of the purpose for which the Purchase Price is in fact obtained or (ii) use any remedy legally available to ESBF, even if that remedy would not have been available had the payment of the Purchase Price been made for consumer purposes.

**2.15 Defaults under Other Contracts.** Seller's execution of, and/or performance under this Agreement, will not cause or create an event of default by Seller under any contract with another person or entity.

### III. EVENTS OF DEFAULT AND REMEDIES

**3.1 Events of Default.** The occurrence of any of the following events shall constitute an "Event of Default": (a) Seller interferes with ESBF's right to collect the Daily Payment (and payment for arrears, if any) in violation of this Agreement; (b) Seller violates any term or covenant in this Agreement; (c) Any representation or warranty by Seller in this Agreement proves to have been incorrect, false or misleading in any material respect when made; (d) the sending of notice of termination by Seller; (e) Seller transports, moves, interrupts, suspends, dissolves or terminates its business; (f) Seller transfers or sells all or substantially all of its assets; (g) Seller makes or sends notice of any intended bulk sale or transfer by Seller; (h) Seller uses multiple depository accounts without the prior written consent of ESBF (i) Seller changes its depositing account or Credit Card processor without the prior written consent of ESBF; or (j) Seller defaults under any of the terms, covenants and conditions of any other agreement with ESBF.

**3.2 Remedies.** If any Event of Default occurs, ESBF may proceed to protect and enforce its rights including, but not limited to, the following:

A. The Specified Percentage shall equal 100%. The full uncollected Purchased Amount plus all fees (including legal fees) due under this Agreement and the attached Security Agreement will become due and payable in full immediately.

B. ESBF may enforce the provisions of the Personal Guaranty of Performance against the Guarantor(s).

C. If permitted under the laws of the state in which the Seller resides; Seller hereby authorizes ESBF to execute in the name of the Seller a Confession of Judgment in favor of ESBF in the full uncollected Purchased Amount and enter that Confession of Judgment as a Judgment with the Clerk of any Court and execute thereon.

D. ESBF may enforce its security interest in the Collateral identified in the Security Agreement and Guaranty.

E. ESBF may proceed to protect and enforce its rights and remedies by lawsuit. In any such lawsuit, under which ESBF shall recover Judgment against Seller, Seller shall be liable for all of ESBF's costs of the lawsuit, including but not limited to all reasonable attorneys' fees and court costs.

F. This Agreement shall be deemed Seller's Assignment of Seller's Lease of Seller's business premises to ESBF. Upon an Event of Default, ESBF may exercise its rights under this Assignment of Lease without prior notice to Seller.

G. ESBF may debit Seller's depository accounts wherever situated by means of ACH debit or facsimile signature on a computer-generated check drawn on Seller's bank account or otherwise for all sums due to ESBF.

H. Seller shall pay to ESBF all reasonable costs associated with the Event of Default and the enforcement of ESBF's remedies set forth above, including but not limited to court costs and attorneys' fees.

All rights, powers and remedies of ESBF in connection with this Agreement may be exercised at any time by ESBF after the occurrence of an Event of Default, are cumulative and not exclusive, and shall be in addition to any other rights, powers or remedies provided by law or equity.

**3.3 Required Notifications.** Seller is required to give ESBF written notice within 24 hours of any filing under Title 11 of the United States Code. Seller is required to give ESBF 7 days' written notice prior to the closing of any sale of all or substantially all of the Seller's assets or stock.

HC# 4822-9598-3643
ISO#2323/Deal#371234/04042017

4

Initial Here _____

SINGAL_00004111
Gov. Ex. 201-004

## IV. MISCELLANEOUS

**4.1 Modifications; Agreements.** No modification, amendment, waiver or consent of any provision of this Agreement shall be effective unless the same shall be in writing and signed by ESBF.

**4.2 Assignment.** ESBF may assign, transfer or sell its rights to receive the Purchased Amount or delegate its duties hereunder, either in whole or in part, with or without prior written notice to Seller.

**4.3 Notices.** All notices, requests, consents, demands and other communications hereunder shall be delivered by certified mail, return receipt requested, to the respective parties to this Agreement at the addresses set forth in this Agreement. Notices to ESBF shall become effective only upon receipt by ESBF. Notices to Seller shall become effective three days after mailing.

**4.4 Waiver of Remedies.** No failure on the part of ESBF to exercise, and no delay in exercising, any right under this Agreement shall operate as a waiver thereof, nor shall any single or partial exercise of any right under this Agreement preclude any other or further exercise thereof or the exercise of any other right. The remedies provided hereunder are cumulative and not exclusive of any remedies provided by law or equity.

**4.5 Binding Effect; Governing Law, Venue and Jurisdiction.** This Agreement shall be binding upon and inure to the benefit of Seller, ESBF and their respective successors and assigns, except that Seller shall not have the right to assign its rights hereunder or any interest herein without the prior written consent of ESBF which consent may be withheld in ESBF's sole discretion. This Agreement shall be governed by and construed in accordance with the laws of the state of New York, without regards to any applicable principals of conflicts of law. Any suit, action or proceeding arising hereunder, or the interpretation, performance or breach of this Agreement, shall, if ESBF so elects, be instituted in any court sitting in New York, (the "Acceptable Forums"). Seller agrees that the Acceptable Forums are convenient to it, and submits to the jurisdiction of the Acceptable Forums and waives any and all objections to jurisdiction or venue. Should such proceeding be initiated in any other forum, Seller waives any right to oppose any motion or application made by ESBF to transfer such proceeding to an Acceptable Forum. ADDITIONALLY, MERCHANT AND GUARANTOR AGREES THAT ANY SUMMONS AND/OR COMPLAINT OR OTHER PROCESS TO COMMENCE ANY LITIGATION BY ESBF, WILL BE PROPERLY SERVED IF MAILED BY CERTIFIED MAIL, RETURN RECEIPT REQUESTED, TO THE MAILING ADDRESS(ES) LISTED ON PAGE 1 OF THIS AGREEMENT.

**4.6 Survival of Representation, etc.** All representations, warranties and covenants herein shall survive the execution and delivery of this Agreement and shall continue in full force until all obligations under this Agreement shall have been satisfied in full and this Agreement shall have terminated.

**4.7 Interpretation.** All Parties hereto have reviewed this Agreement with an attorney of their own choosing and have relied only on their own attorney's guidance and advice. No construction determinations shall be made against either Party hereto as drafter.

**4.8 Severability.** In case any of the provisions in this Agreement is found to be invalid, illegal or unenforceable in any respect, the validity, legality and enforceability of any other provision contained herein shall not in any way be affected or impaired.

**4.9 Entire Agreement.** Any provision hereof prohibited by law shall be ineffective only to the extent of such prohibition without invalidating the remaining provisions hereof. This Agreement and the Security Agreement and Guaranty embody the entire agreement between Seller and ESBF and supersede all prior agreements and understandings relating to the subject matter hereof.

**4.10 Facsimile Acceptance.** Facsimile signatures hereon shall be deemed acceptable for all purposes.

**4.11 Monitoring, Recording, and Solicitations.**

- A. AUTHORIZATION TO CONTACT SELLER BY PHONE. Seller and each Owner authorize ESBF, its affiliates, agents and independent contractors to contact Seller and each Owner at any telephone number Seller or any Owner provides to ESBF or from which Seller or any Owner places a call to ESBF, or any telephone number where ESBF believes it may reach Seller or any Owner, using any means of communication, including but not limited to calls or text messages to mobile, cellular, wireless or similar devices or calls or text messages using an automated telephone dialing system and/or artificial voices or prerecorded messages, even if Seller or and Owner incurs charges for receiving such communications.

- B. AUTHORIZATION TO CONTACT SELLER BY OTHER MEANS. Seller and each Owner also agree that ESBF, its affiliates, agents and independent contractors, may use any other medium not prohibited by law including, but not limited to, mail, e-mail and facsimile, to contact Seller and each Owner. Seller and each Owner expressly consent to conduct business by electronic means.

- C. RIGHTS TO OPT-OUT OR MAKE CHANGES. Seller and each Owner are not required to agree to Sections 4.11(A) or 4.11(B) in order to enter into this Agreement. If Seller or any Owner wishes to opt out of Section 4.11(A) and/or 4.11(B), or if Seller or any Owner wants to change how ESBF contacts them, including with respect to any telephone number that ESBF might use, please call ESBF at 877-634-1282 (and select Customer Service from the menu prompts).

## V. JURY TRIAL WAIVER.

THE PARTIES HERETO WAIVE TRIAL BY JURY IN ANY COURT IN ANY SUIT, ACTION OR PROCEEDING ON ANY MATTER ARISING IN CONNECTION WITH OR IN ANY WAY RELATED TO THE TRANSACTIONS OR THE ENFORCEMENT HEREOF. THE PARTIES HERETO ACKNOWLEDGE THAT EACH MAKES THIS WAIVER KNOWINGLY, WILLINGLY AND VOLUNTARILY AND WITHOUT DURESS, AND ONLY AFTER EXTENSIVE CONSIDERATION OF THE RAMIFICATIONS OF THIS WAIVER WITH THEIR ATTORNEYS.

## VI. ARBITRATION.

IF ESBF, Seller or a Guarantor requests, the other party and the Guarantor(s) agree to arbitrate all disputes and claims arising out of or relating to this Agreement. If a party or a Guarantor seeks to have a dispute settled by arbitration, that party or Guarantor must first send to the other party, by certified mail, a written Notice of Intent to Arbitrate. If the parties or the Guarantor(s) do not reach an agreement to resolve the claim within 30 days after the Notice is received, either party or the Guarantor(s) may commence an arbitration proceeding with the American Arbitration Association ("AAA"). ESBF will promptly reimburse Seller or the Guarantor any arbitration filing fee, however, in the event that both the Seller and the Guarantor must pay filing fees, ESBF will only reimburse the Seller's arbitration filing fee. Except as provided in the next sentence, ESBF will pay all administration and arbitrator fees. If the arbitrator finds that either the substance of the claim raised by Seller or the Guarantor(s) or the relief sought by Seller or the Guarantor(s) is improper or not warranted, as measured by the standards set forth in Federal Rule of Procedure 11(b), then ESBF will pay these fees only if required by the AAA Rules. If the arbitrator grants relief to the Seller or the Guarantor(s) that is equal to or

HC# 4822-9598-3643
ISO#2323/Deal#371234/04042017

5

Initial Here ⟨signature⟩

greater than the value of what the Seller or the Guarantor(s) requested in the arbitration, ESBF shall reimburse Seller or the Guarantor(s) for that person's reasonable attorneys' fees and expenses incurred for the arbitration. Seller and the Guarantor(s) agree that, by entering into this Agreement, they are waiving the right to trial by jury. EACH PARTY AND THE GUARANTOR(S) MAY BRING CLAIMS AGAINST ANY OTHER PARTY ONLY IN THEIR INDIVIDUAL CAPACITY, and not as a plaintiff or class member in any purported class or representative proceeding. Further, the parties and the Guarantor(s) agree that the arbitrator may not consolidate proceedings for more than one person's claims, and may not otherwise preside over any form of a representative or class proceeding, and that if this specific provision is found unenforceable, then the entirety of this arbitration clause shall be null and void.

SELLER AND ANY GUARANTOR MAY OPT OUT OF THIS CLAUSE. To opt out of this Arbitration Clause, Seller and/or Guarantor may send ESBF a notice that the Seller or Guarantor does not want this clause to apply to this Agreement. For any opt-out to be effective, Seller and/or Guarantor must send an opt-out notice to the following address by registered mail, within 14 days after the date of this Agreement:

Customer Service Department
Everest Business Funding
5 West 37th Street
2nd Floor
New York, NY 10018

HC# 4822-9598-3643
ISO#2323/Deal#371234/04042017

Initial Here ___

6

SINGAL_00004113
Gov. Ex. 201-006