# EXHIBIT H
# Gov. Ex. 204

# WG FINANCING™

**World Global Financing Inc.**
141 North East 3rd Avenue, Miami, FL, 33132 (866) - 881-1128
www.wgfinancing.com

## REVENUE BASED FACTORING AGREEMENT

Agreement dated APRIL 18, 2017 between **Purchaser** and the merchant listed below ("the **Merchant**").

### MERCHANT INFORMATION

Merchant's Legal Name: FIRST CAPITAL RETAIL LLC

D/B/A: FIRST CAPITAL RETAIL    State of Incorporation/Organization  CALIFORNIA

Type of entity  LIMITED LIABILY COMPANY

Physical Address 2355 GOLD MEADOW WAY SUITE 160  City: GOLD MEADOW  State: CALIFORNIA  Zip: 95670

Mailing Address 2377 GOLD MEADOW WAY SUITE 100  City: GOLD MEADOW  State: CALIFORNIA  Zip: 95670

Date business started (mm/yy): 02/2015    Federal ID#: 47-2494283

### PURCHASE AND SALE OF FUTURE RECEIVABLES

Merchant hereby sells, assigns and transfers to PURCHASER, as the lead purchaser for itself and other participants (making PURCHASER on behalf of itself and all participants, the absolute owner) in consideration of the funds provided ("Purchase Price") specified below, all of Merchant's future receipts, accounts, contract rights and other obligations arising from or relating to the payment of monies from Merchant's customers and/or other third party payors (collectively the "Receipts" defined as all payments made by cash, check, credit cards, charge cards, debit cards, prepaid cards, mobile payments, electronic transfer or any other form of monetary payment in the ordinary course of the Merchant's business), until such time as the "Receipts Purchased Amount" has been delivered by Merchant to PURCHASER. The Receipts Purchased Amount shall be paid to PURCHASER by the Merchant irrevocably authorizing one or more bank accounts acceptable to PURCHASER (the "Account") to remit the percentage specified below (the "Specified Percentage") of Merchant's Receipts, until such time as PURCHASER receives payment in full of the Receipts Purchased Amount. In consideration of servicing the account, the Merchant hereby authorizes PURCHASER to ACH Debit the "Specific Daily Amount" from Merchant's bank account as the base payment credited against the Specified Percentage due. It is the Merchant's responsibility to provide bank statements for any and all bank accounts held by the Merchant to reconcile the daily payments made against the Specified Percentage permitting PURCHASER to debit or credit the difference to the merchant so that payment equals the Specified Percentage. Failure to provide all of their bank statements in a timely manner or missing a month shall forfeit all rights to future reconciliations. PURCHASER may, upon Merchant's request, adjust the amount of any payment due under this Agreement at PURCHASER's sole discretion and as it deems appropriate in servicing this Agreement. Merchant understands that it is responsible for ensuring that funds adequate to cover amount to be debited by PURCHASER remain in the account. Merchant will be held responsible for any fees incurred by PURCHASER resulting from a rejected ACH attempt or an Event of Default or other breach of this Agreement (See Appendix A). PURCHASER is not responsible for any overdrafts or rejected transactions in the Merchant's account which may result from PURCHASER's scheduled ACH debit under the terms of this agreement. Notwithstanding anything to the contrary in this Agreement or any other agreement between PURCHASER and Merchant, upon the violation of any provision of the MERCHANT AGREEMENT TERMS AND CONDITIONS or the occurrence of an Event of Default under the MERCHANT AGREEMENT TERMS AND CONDITIONS, the Specified Percentage shall immediately equal 100%. A list of all fees applicable under this agreement is contained in Appendix A.

*** Obtaining other financing, secured or unsecured, during the performance of this agreement shall constitute an Event of Default. ***

Purchase Price  $ 150,000.00   Specified Percentage  25 %   Set Up Fee  $ 1,500.00   Receipts Purchased Amount  $ 210,000.00   Specific Daily Amount  $ 1,334.00

THE TERMS, DEFINITIONS, CONDITIONS AND INFORMATION SET FORTH IN THE "MERCHANT CASH ADVANCE AGREEMENT TERMS AND CONDITIONS", THE "MERCHANT SECURITY AGREEMENT AND GUARANTY" AND THE "ADMINISTRATIVE FORM" EACH OF WHICH IS ATTACHED HERETO, ARE HEREBY INCORPORATED IN AND MADE A PART OF THIS AGREEMENT.

**FOR THE MERCHANT (#1)**
By  SUNEET SINGAL
(Print Name and Title)                                          (Signature)    [SIGN HERE]

**FOR THE MERCHANT (#2)**
By _____
(Print Name and Title)                                          (Signature)

**GUARANTOR #1**
By  SUNEET SINGAL
(Print Name)                                                    (Signature)    [SIGN HERE]

**GUARANTOR #2**
By _____
(Print Name)                                                    (Signature)

ACH Agreement       Rev. 03/24/2017       Merchant Initials  SS  [INITIAL HERE]       Page 1 of 8

SINGAL_00021274

**GOVERNMENT'S EXHIBIT 204**
2-22-CR-00068-DJC

**GUARANTOR #3**

By _____
               (Print Name)

_____
               (Signature)

**GUARANTOR #4**

By _____
               (Print Name)

_____
               (Signature)

**FOR THE PURCHASER.**

☐  **WORLD GLOBAL FINANCING INC.**

☐  **WG PRIME, INC.**

By Cyril Eskenazi
               (Company Officer Print Name)

_____
               (Signature)

To the extent set forth herein, each of the parties is obligated upon his, her or its execution of the Agreement to all terms of the Agreement, including the Additional Terms set forth below. Each of above-signed Merchant and Guarantor(s) represents that he, she, or it is authorized to sign this Agreement for Merchant, legally binding Merchant to repay this obligation and that the information provided herein and in all of PURCHASER documents, forms and recorded interviews is true, accurate and complete in all respects. If any such information is false or misleading, Merchant shall be deemed in material breach of all agreements between Merchant and PURCHASER and PURCHASER shall be entitled to all remedies available under law. Merchant and each of the above-signed Guarantor(s) authorizes PURCHASER, its agents and representatives and any credit reporting agency engaged by PURCHASER, to (i) investigate any references given or any other statements or data obtained from or about Merchant or any of its Guarantor(s) for the purpose of this Agreement, and (ii) obtain credit reports at any time now or for so long as Merchant and/or Guarantor(s) continue to have any obligation owed to PURCHASER.

**ANY MISREPRESENTATION MADE BY MERCHANT OR GUARANTOR(S) IN CONNECTION WITH THIS AGREEMENT MAY CONSTITUTE A SEPARATE CAUSE OF ACTION FOR FRAUD OR INTENTIONAL FRAUDULENT INDUCEMENT TO OBTAIN FINANCING..**

**THE REST OF THIS PAGE IS INTENTIONALLY BLANK – SEE FOLLOWING PAGES FOR IMPORTANT TERMS AND CONDITIONS**

## REVENUE BASED FACTORING AGREEMENT TERMS AND CONDITIONS

**I. GENERAL TERMS**

1.1 **Merchant Deposit Agreement.** Merchant shall execute an agreement (the "Merchant Deposit Agreement") acceptable to PURCHASER, with one or more bank(s) ("Bank") acceptable to PURCHASER, to obtain electronic fund transfer services. Merchant shall provide PURCHASER and/or its authorized agent with all of the information and authorizations necessary for verifying Merchant's receivables, receipts and deposits into the Account(s). Merchant shall authorize PURCHASER and/or its agent to deduct the amounts owed to PURCHASER for the Receipts as specified herein from settlement amounts which would otherwise be due to Merchant by permitting PURCHASER to withdraw the Specific Daily Amount credited against the Specified Percentage by ACH or other electronic debit of the Account. This authorization shall be irrevocable without the written consent of PURCHASER.

1.2 **Term of Agreement.** This Agreement shall have an indefinite term that shall last until all of Merchant's obligations to PURCHASER are fully satisfied. This shall include but not be limited to any renewals, outstanding fees or costs.

1.3 **Right of Rescission.** PURCHASER reserves the right to rescind any offer to make any purchase payments hereunder, in its sole discretion.

1.4 **Financial Condition.** Merchant and each Guarantor shall provide to PURCHASER upon request copies of financial statements representing the financial condition of Merchant and/or such Guarantor. Merchant and Guarantor(s) authorize PURCHASER and its agents, and any credit reporting agency engaged by PURCHASER, to investigate their financial responsibility and history, and will provide to PURCHASER any bank or financial statements, tax returns, or other financial information as PURCHASER deems necessary prior to or at any time after execution of this Agreement. A photocopy of this authorization will be deemed as acceptable for release of financial information. PURCHASER is authorized to update such information and financial profiles from time to time as it deems appropriate.

1.5 **Transactional History.** Merchant and each Guarantor authorizes Bank to provide PURCHASER with Merchant's and each Guarantor's banking history.

1.6 **Indemnification.** Merchant and Guarantor(s) jointly and severally indemnify and hold harmless Bank, its officers, directors and shareholders against all losses, damages, claims, liabilities and expenses (including reasonable attorney's fees) incurred by Bank resulting from (a) claims asserted by PURCHASER for monies owed to PURCHASER from Merchant and (b) actions taken by Bank in reliance upon information or instructions provided by PURCHASER.

1.7 **No Liability.** In no event will PURCHASER (or any of the Participants) be liable for any claims asserted by Merchant under any legal theory for lost profits, lost revenues, lost business opportunities, exemplary, punitive, special, incidental, indirect or consequential damages, each of which is waived by Merchant and Guarantor(s).

1.8 **Reliance on Terms.** All terms of this Agreement that reference the Bank are agreed to for the benefit of Merchant, PURCHASER and Bank, and notwithstanding the fact that Bank is not a party to this Agreement, Bank may rely upon their terms and raise them as a defense in any action.

1.9 **Sale of Receipts.** Merchant and PURCHASER agree that the Purchase Price under this Agreement is in exchange for the Receipts Purchased Amount and that such Purchase Price is not intended to be, nor shall it be construed as a loan from PURCHASER to Merchant. Merchant agrees that the Purchase Price is in exchange for the sale of Receipts pursuant to this Agreement equals the fair market value of such Receipts. PURCHASER has purchased and shall own all the Receipts described in this Agreement up to the full Receipts Purchased Amount as the Receipts are created. Payments made to PURCHASER in respect to the full amount of the Receipts shall be conditioned upon Merchant's sale of products and services and the payment therefore by Merchant's customers in the manner provided in this Agreement. In no event shall the aggregate of all amounts be deemed as interest hereunder and charged or collected hereunder exceed the highest rate permissible at law. In the event that a court determines that PURCHASER has charged or received interest hereunder in excess of the highest applicable rate, the rate in effect hereunder shall automatically be reduced to the maximum rate permitted by applicable law and PURCHASER shall promptly refund to Merchant any interest received by PURCHASER in excess of the maximum lawful rate, it being intended that Merchant not pay or contract to pay, and that PURCHASER not receive or contract to receive, directly or indirectly in any manner whatsoever, interest in excess of that which may be paid by Merchant under applicable law. If, notwithstanding such intent, such transfer is not deemed to constitute a sale, Merchant hereby grants to PURCHASER a security interest in all right, title and interest of Merchant in and to the Receipts, which security interest shall secure the payment of the Purchased Amount and all other obligations of Merchant under this Agreement. Merchant hereby authorizes PURCHASER to file any financing statements deemed necessary by PURCHASER to perfect or maintain PURCHASER's interest in the Receipts.

1.11 **Protection of Information.** Merchant and Guarantor, and each person signing this Agreement on their behalf, in respect of himself or herself personally, authorizes PURCHASER to disclose information concerning Merchant's and each Guarantor's credit standing (including credit bureau reports that PURCHASER obtains) and business conduct only to agents, affiliates, subsidiaries, and credit reporting bureaus. Merchant and Guarantor(s) hereby waives to the maximum extent permitted by law any claim for damages against PURCHASER or any of its affiliates and Participants relating to any (i) investigation undertaken by or on behalf of PURCHASER as permitted by this Agreement or (ii) disclosure of information as permitted by this Agreement.

1.12 **Confidentiality.** Merchant understands and agrees that the terms and conditions of the products and services offered by PURCHASER, including this Agreement and any other PURCHASER documentations (collectively, "Confidential Information") are proprietary and confidential information of PURCHASER. Accordingly unless disclosure is required by law or court order, Merchant shall not disclose Confidential Information of PURCHASER to any person other than an attorney, accountant, financial advisor or employee of Merchant who needs to know such information for the purpose of advising Merchant ("Advisor"), provided such Advisor uses such information solely for the purpose of advising Merchant and first agrees in writing to be bound by the terms of this paragraph.

1.13 **Publicity.** Merchant and each Guarantor authorizes PURCHASER to use its, his or her name in a listing of clients and in advertising and marketing materials.

1.14 **D/B/A's.** Merchant hereby acknowledges and agrees that PURCHASER may be using "doing business as" or "d/b/a" names in connection with various matters relating to the transaction between PURCHASER and Merchant, including the filing of UCC-1 financing statements and other notices or filings.

1.15 **Non-Refundable Set-Up Fee.** Merchant shall pay an additional nonrefundable Setup Fee as specified by this Agreement, which PURCHASER may either deduct directly from the Purchase Price or debit from Merchant's bank account at any time.

**II. REPRESENTATIONS, WARRANTIES AND COVENANTS**

Merchant and each Guarantor represents, warrants and covenants that as of this date and during the term of this Agreement:

2.1 **Financial Condition and Financial Information.** All information provided by Merchant to PURCHASER in this Agreement, application or otherwise and all of Merchant's financial statements and other financial documents provided to PURCHASER is true and correct and accurately reflect Merchant's financial condition and results of operations. Merchant's bank and financial statements, copies of which have been furnished to PURCHASER, and future statements which will be furnished hereafter at the discretion of PURCHASER, fairly represent the financial condition of Merchant at such dates, and since those dates there have been no material changes, financial or otherwise, in such condition, operation or ownership of Merchant. Merchant has a continuing, affirmative obligation to advise PURCHASER of any material change in its financial condition, operation or ownership. PURCHASER may request statements at any time during the performance of this Agreement and the Merchant shall provide them to PURCHASER within 5 business days. Merchant's failure to do so is a material breach of this Agreement.

2.2 **Governmental Approvals.** Merchant is and shall remain in compliance with all laws and has valid permits, authorizations and licenses to own, operate and lease its properties and to conduct the business in which it is presently engaged.

2.3 **Authorization.** Merchant, and the person(s) signing this Agreement on behalf of Merchant, have full power and authority to incur and perform the obligations under this Agreement, all of which have been duly authorized.

2.4 **Insurance.** Merchant has and will maintain business-interruption insurance naming PURCHASER as loss payee and additional insured in amounts and against risks as are satisfactory to PURCHASER and shall provide PURCHASER proof of such insurance upon request.

2.5 **Change of Name or Location.** Merchant will not conduct Merchant's businesses under any name other than as disclosed to Bank and PURCHASER or change any of its places of business, than as disclosed to Bank and PURCHASER or change any of its places of business.

2.6 **Daily Batch Out.** Merchant will batch out receipts with any credit or charge card processor it uses to ensure that any funds received are deposited into the Account on a daily basis.

2.7 **Estoppel Certificate.** Merchant will at any time, and from time to time, upon at least one (1) day's prior notice from PURCHASER to Merchant, execute, acknowledge and deliver to PURCHASER and/or to any other person, person firm or corporation specified by PURCHASER, a statement certifying that this Agreement is unmodified and in full force and effect (or, if there have been modifications, that the same is in full force and effect as modified and stating the modifications) and stating the dates which the Receipts Purchased Amount or any portion thereof has been repaid.

2.8 **No Bankruptcy.** As of the date of this Agreement, Neither Merchant nor any Guarantor has filed any petition for bankruptcy protection under Title 11 of the United States Code, no involuntary petition for bankruptcy has been brought or is pending against Merchant or any Guarantor, neither Merchant nor any Guarantor has admitted in writing its inability to pay its debts or made a general assignment for the benefit of creditors, and no other proceeding has been instituted by or against Merchant or any Guarantor seeking to adjudicate it insolvent or seeking reorganization, arrangement, adjustment or composition of it or its debts. Merchant nor Guarantor does not anticipate filing any such bankruptcy petition and is not aware and has no reason to believe that any such bankruptcy petition or other proceeding will be filed or brought against Merchant or any Guarantor. In the event that the Merchant files for bankruptcy protection or is placed under an involuntary filing all remedies in this Agreement are immediately invoked.

2.9 **Additional or Other Financing.** Merchant shall not enter into any arrangement, agreement or commitment for any additional or other financing, whether in the form of a purchase of receivables or a loan to Merchant with any party other than PURCHASER without the written permission of PURCHASER.

2.10 **Unencumbered Receipts.** Merchant has good, complete and marketable title to all Receipts, free and clear of any and all liabilities, liens, claims, changes, restrictions, conditions, options, rights, mortgages, security interests, equities, pledges and encumbrances of any kind or nature whatsoever or any other rights or interests that may be inconsistent with the transactions contemplated with, or adverse to the interests of PURCHASER.

2.11 **Business Purpose.** Merchant is a valid business in good standing under the laws of the jurisdictions in which it is organized and/or operates, and Merchant is entering into this Agreement for business purposes and not as a consumer for personal, family or household purposes.

2.12 **Default Under Other Contracts.** Merchant's execution of and/or performance under this Agreement will not cause or create a breach by Merchant under any contract with another person or entity.

### III. EVENTS OF DEFAULT AND REMEDIES

3.1 **Events of Default.** The occurrence of any of the following events shall constitute an "Event of Default" hereunder: General: (a) Merchant or any Guarantor violates any term, representation, warranty, condition, or covenant in this Agreement, the Merchant Security Agreement and Guaranty or any other agreement with PURCHASER; (b) any representation or warranty by Merchant or any Guarantor in this Agreement, the Merchant Security Agreement and Guaranty or any other agreement with PURCHASER shall prove to have been incorrect, incomplete, false or misleading in any material respect when made; (c) Merchant or any Guarantor admits in writing its inability to pay its debts, or makes a general assignment for the benefit of creditors; or any proceeding shall be instituted by or against Merchant or any Guarantor seeking to adjudicate it bankrupt or insolvent, or seeking reorganization, arrangement, adjustment, or composition of it or its debts; (d) any Guarantor sends a notice of termination of the Merchant Security Agreement and Guaranty, or any other of its obligations as Guarantor; (e) Merchant transports, moves, interrupts, suspends, dissolves, closes, temporarily closes for renovations, or terminates its business; (f) Merchant sells or otherwise transfers all or substantially all of its assets; (g) Merchant makes or sends notice of any intended bulk sale or transfer by Merchant; (h) Merchant performs any act that encumbers the cash flow of the business placing undue stress on the viability of the operations or reduces the value of the Collateral or the security interest granted in the Collateral under the Merchant Security Agreement and Guaranty; (i) Merchant or Guarantor performs any act that reduces the value of any Collateral granted under this Agreement, or reduces the value of the Additional Collateral (as defined in the Merchant Security Agreement and Guaranty) or the security interest granted in the Additional Collateral under the Merchant Security Agreement and Guaranty; (j) Merchant or any Guarantor files any petition for bankruptcy under the United States Code or an involuntary petition for bankruptcy has been brought or is pending against Merchant or any Guarantor; (k) Merchant or any Guarantor defaults under, or breaches, any of the terms, covenants and conditions of any other agreement with PURCHASER including those with affiliated or associated businesses; (l) Merchant obtains other financing, secured or unsecured, including but not limited to, loans, credit of any type, or sells any of its receivables or future receivables during the performance of this agreement; (m) Merchant interrupts the operation of this business (other than natural disasters or acts of God), transfers, moves, sells, disposes, or otherwise conveys its business or assets without (i) the express prior written consent of PURCHASER, and (ii) the written agreement of any purchaser or transferee to the assumption of all of Merchant's obligations under this Agreement pursuant to documentation satisfactory to PURCHASER; (n) Merchant breaches any contract to pay a financial obligation to a third party, including but not limited to, any to lease for real estate or other property; Related to Bank or Account: (o) Merchant uses any bank account or bank not approved by PURCHASER, without the prior written consent of PURCHASER; (p) Merchant changes its Account without the prior written consent of PURCHASER; (q) Merchant changes its arrangements with Bank in any way that is adverse to PURCHASER; (r) Merchant changes the Account through which the Receipts are settled, or permits any event to occur that could cause diversion of any of Merchant's transactions to another account; (s) Merchant takes any action, fails to take any action, or offers any incentive—economic or otherwise—the result of which will be to induce any customer or customers to pay for Merchant's goods or services with any means that will not be deposited into the Account.

3.2 **Remedies.** In case any Event of Default or other breach of this Agreement occurs and is not waived pursuant to this Agreement, PURCHASER on its own and on behalf of its Participants may proceed to protect and enforce its rights or remedies by suit in equity or by action at law, or both, whether for the specific performance of any covenant, agreement or other provision contained herein, or to enforce the discharge of Merchant's obligations hereunder (including the Merchant Security Agreement and Guaranty and Personal Guarantee) or any other legal or equitable right or remedy. All rights, powers and remedies of PURCHASER in connection with this Agreement may be exercised at any time by PURCHASER after the occurrence of an Event of Default, are cumulative and not exclusive, and shall be in addition to any other rights, powers or remedies provided by law or equity or otherwise pursuant to this Agreement. In addition, any or all of the following may be invoked by PURCHASER, immediately and without notice to Merchant, if any Event of Default or other breach of this Agreement occurs: (1) The full uncollected Receipts Purchased Amount plus all fees due under this Agreement and the attached Security Agreement become due and payable in full immediately and may be debited from any of Merchant's depository accounts without notice; (2) PURCHASER may enforce the provisions of the Personal Guarantee of Performance against all Guarantor(s); (3) PURCHASER may enforce its security interest in the Collateral identified in this Agreement; (4) The entire Receipts Purchased Amount shall become immediately refundable to PURCHASER from Merchant. (5) PURCHASER may proceed to protect and enforce its rights and remedies by lawsuit. In any such lawsuit in which PURCHASER shall recover judgment against Merchant, Merchant shall be liable for all of PURCHASER's costs of lawsuit, including but not limited to all reasonable attorneys' fees, including in- house counsel and outside counsel, and court costs; and (6) PURCHASER may debit Merchant's depository accounts wherever situated by any means, including but not limited to utilizing an ACH debit or facsimile signature on a computer-generated check drawn on Merchant's bank account or otherwise.

3.3 **Costs and Attorney Fees.** Merchant shall pay to PURCHASER all reasonable costs associated with (a) any Event of Default or other breach by Merchant of the Covenants in this Agreement and the enforcement thereof, and (b) the enforcement of PURCHASER's remedies set forth in this Agreement, including but not limited to court costs and attorneys' fees, including in-house counsel and outside counsel.

3.4 **Required Notifications.** Merchant is required to give PURCHASER written notice within 24 hours of any filing under Title 11 of the United States Code. Merchant is required to give PURCHASER seven days' written notice prior to the closing of any sale of all or substantially all of the Merchant's assets or stock.

3.5 **Confession of Judgment.** Merchant and Guarantor(s) shall, upon execution of this Agreement, deliver to PURCHASER an executed confession of judgment in favor of PURCHASER in the amount of the Receipts Purchased Amount stated in the Agreement. If any Event of Default or other breach of this Agreement occurs, Merchant and Guarantor(s) hereby consent to the entry of a Judgment against the Merchant and Guarantor(s) in favor of PURCHASER. Merchant agrees to grant a Judgment in favor of PURCHASER for the sum of money equal to the Receipts Purchased Amount less all monies collected by PURCHASER to date, plus any and all costs and attorney fees, all as set forth in an Affidavit of PURCHASER. This signed Agreement may be filed, without Notice or Presentment to Merchant, with the court and a Final Judgment shall be entered against the Merchant and Guarantor(s) in favor of PURCHASER.

### IV. MISCELLANEOUS

4.1 **Modifications; Agreements.** No modification, amendment, or waiver of any provision of, or consent to any action under, this Agreement or the Merchant Security Agreement and Guaranty shall be effective unless the same is in writing and signed by PURCHASER.

4.2 **Assignment.** Merchant acknowledges and understands that PURCHASER is acting on its own behalf and in addition, may be the administrator and lead for a group of independent participants (the "Participants"), a list of which can be provided to Merchant after funding and upon written notice to PURCHASER. PURCHASER may assign its rights and/or obligations under this Agreement and/or the Merchant Security Agreement and Guaranty in whole or in part without prior notice to Merchant or any Guarantor, including, without limitation, its right to receive all or any portion of the Receipts Purchased Amount, any fees under this Agreement, or its obligations to fund all or any portion of the Purchase Price. Merchant acknowledges that, if any such assignment is against Merchant pursuant to this Agreement, Merchant shall not have, and no Guarantor shall have, the right to assign its rights and/or obligations under this Agreement and/or the Merchant Security Agreement and Guaranty or any interest herein or therein without the prior written consent of PUCRHASER, which consent may be withheld in PURCHSER's sole discretion.

4.3 **Notices and Communications** All notices, requests, consent, demands and other communications hereunder and under the Merchant Security Agreement and Guaranty shall be delivered by ordinary mail, effective upon mailing or by facsimile or electronic mail at such facsimile and email addresses communicated by the parties hereto in writing .

4.4 **Waiver Remedies.** No failure on the part of PURCHASER to exercise, and no delay in exercising, any right under this Agreement or the Merchant Security Agreement and Guaranty shall operate as a waiver thereof, nor shall any single or partial exercise of any right under this Agreement or the Merchant Security Agreement and Guaranty preclude any other or further exercise thereof or the exercise of any other right. The remedies provided hereunder and under the Merchant Security Agreement and Guaranty are cumulative and not exclusive of any remedies provided by law or equity.

4.5 **Binding Effect; Governing Law, Venue and Jurisdiction.** This Agreement shall be binding upon and inure to the benefit of Merchant, PURCHASER (and it's Participants) and their respective successors and assigns. PURCHASER's Participants shall be third party beneficiaries of all such agreements, except that Merchant shall not have the right to assign its rights hereunder or any interest herein without the prior written consent of PURCHASER which consent may be withheld in PURCHASER's sole discretion. PURCHASER reserves the right to assign this Agreement with or without prior written notice to Merchant. Except as specified below, this Agreement shall be governed by and construed in accordance with the laws of the State of Florida, without regard to any applicable principals of conflicts of law, and any suit, action or proceeding arising hereunder, or the interpretation, performance or breach hereof, shall, if PURCHASER so elects, be instituted in any court sitting in Miami Dade County, Florida or the United States District Court for the Southern District of Florida, Miami Division. Notwithstanding this, the parties agree that any proceedings related to any confession of judgment (the "COJ proceedings") shall be governed by and construed in accordance with the laws of the State of New York, without regard to any applicable principles of conflicts of law, and any such COJ proceedings shall, if PURCHASER so elects, be instituted in any court sitting in New York, New York. Nothing in this paragraph shall in any way limit PURCHASER from domesticating, executing, or otherwise enforcing any confession of judgment, judgment or other order in any jurisdiction outside of the forums specified in this paragraph. Merchant and Guarantor agree that the forums specified in this paragraph are convenient to it, and submits to the jurisdiction of these forums and waives any and all objections to jurisdiction or venue. Should any legal proceeding be initiated in any other forum, Merchant and Guarantor waive any right to oppose any motion or application made by PURCHASER to transfer such proceeding to a forum specified in this paragraph.

4.6 **Survival of Representation.** All representations, warranties and covenants herein and in the Merchant Security Agreement and Guaranty shall survive the execution and delivery of this Agreement and the Merchant Security Agreement and Guaranty and shall continue in full force until all obligations under this Agreement and the Merchant Security Agreement and Guaranty shall have been satisfied in full and this Agreement and the Merchant Security Agreement and Guaranty shall have terminated.

4.7 **Severability.** In case any of the provisions in this Agreement or the Merchant Security Agreement and Guaranty is found to be invalid, illegal or unenforceable in any respect, the validity, legality and enforceability of any other provision contained herein or therein shall not in any way be affected or impaired.

4.8 **Counterparts; Facsimile and PDF Acceptance.** Electronic and facsimile signatures transmitted in any electronic form shall be deemed acceptable for all purposes. This Agreement and the Merchant Security Agreement and Guaranty may be executed in counterparts, each of which shall constitute an original, but all of which together shall constitute one instrument. Signatures on this Agreement and the Merchant Security Agreement and Guaranty, or any amendment or addendum, sent by facsimile or PDF will be treated as original signatures for all

purposes.

**4.9 JURY TRIAL WAIVER.** THE PARTIES HERETO WAIVE TRIAL BY JURY IN ANY COURT IN ANY SUIT, ACTION OR PROCEEDING ON ANY MATTER ARISING IN CONNECTION WITH OR IN ANY WAY RELATED TO THE TRANSACTIONS OF WHICH THIS AGREEMENT IS A PART OR THE ENFORCEMENT HEREOF. THE PARTIES HERETO ACKNOWLEDGE THAT EACH MAKES THIS WAIVER KNOWINGLY, WILLINGLY AND VOLUNTARILY AND WITHOUT DURESS, AND ONLY AFTER EXTENSIVE CONSIDERATION OF THE RAMIFICATIONS OF THIS WAIVER WITH THEIR ATTORNEYS.

4.10 CLASS ACTION WAIVER. THE PARTIES HERETO WAIVE ANY RIGHT TO ASSERT ANY CLAIMS AGAINST THE OTHER PARTY AS A REPRESENTATIVE OR MEMBER IN ANY CLASS OR REPRESENTATIVE ACTION, EXCEPT WHERE SUCH WAIVER IS PROHIBITED BY LAW AGAINST PUBLIC POLICY. TO THE EXTENT EITHER PARTY IS PERMITTED BY LAW OR COURT OF LAW TO PROCEED WITH A CLASS OR REPRESENTATIVE ACTION AGAINST THE OTHER, THE PARTIES HEREBY AGREE THAT: (1) THE PREVAILING PARTY SHALL NOT BE ENTITLED TO RECOVER ATTORNEYS' FEES OR COSTS ASSOCIATED WITH PURSUING THE CLASS OR REPRESENTATIVE ACTION (NOT WITHSTANDING ANY OTHER PROVISION IN THIS AGREEMENT); AND (2) THE PARTY WHO INITIATES OR PARTICIPATES AS A MEMBER OF THE CLASS WILL NOT SUBMIT A CLAIM OR OTHERWISE PARTICIPATE IN ANY RECOVERY SECURED THROUGH THE CLASS OR REPRESENTATIVE ACTION.

**4.11 Solicitations.** Merchant and each Guarantor authorize PURCHASER and its affiliates to communicate with, solicit and/or market to Merchant and each Guarantor via regular mail, telephone, email and facsimile in connection with the provision of goods or services by PURCHASER, its affiliates or any third party that PURCHASER shares, transfers, exchanges, discloses or provides information with and will hold PURCHASER, its affiliates and such third parties harmless against any and all claims pursuant to the federal CAN-SPAM ACT of 2003 (Controlling the Assault of Non-Solicited Pornography and Marketing Act of 2003), the Telephone Consumer Protection Act (TCPA), and any and all other state or federal laws relating to transmissions or solicitations by and any of the methods described above.

**4.12 Entire Agreement.** Any provision hereof or of the Merchant Security Agreement and Guaranty prohibited by law shall be ineffective only to the extent of such prohibition without invalidating the remaining provisions hereof or thereof. This Agreement and the Merchant Security Agreement and Guaranty embody the entire agreement between Merchant, each Guarantor and PURCHASER and supersede all prior agreements and understandings relating to the subject matter hereof