# EXHIBIT J
# Gov. Ex. 208



**Merchant Sales Agreement**
**ACH Agreement**
**April 19, 2017**



Dror 2017 217

### Sellers' Information

| | |
|---|---|
| Legal Name 1: First Capital Real Estate Investments, LLC | D.B.A: First Capital Real Estate Investments |
| State of Incorporation: CA | Type of Entity: LLC |
| Federal Tax ID #: | Bank Name: Chase |
| Mailing Address: 2377 Gold Meadow Way, Ste 100 | |
| City: Rancho Cordova   State: CA   Zip Code: 95670 | |
| Legal Name 2: First Capital Retail LLC | D.B.A.: First Capital Retail |
| State of Incorporation: NV | Type of Entity: LLC |
| Federal Tax ID #: | |
| Mailing Address: 2377 Gold Meadow Way | |
| Gold River CA 95670 | |

### Guarantors' Information

| | |
|---|---|
| Name of Owner 1: Suneet Singal | D.O.B.: |
| Residential Address: 512 Alta Vista Ct, El Dorado Hills, CA 95762 | |

**1. Purchase and Sale of Future Receivables.**

Pursuant to the terms and conditions stated in this Merchant Sales Agreement, Happy Rock Merchant Solutions, LLC, a licensed California Finance Lender, having an address at 555 California Street, Suite 4925, San Francisco, California 94104 (the "**Buyer**") hereby agrees to purchase from First Capital Real Estate Investments LLC d/b/a First Capital Real Estate Investments and First Capital Retail LLC d/b/a First Capital Retail, (collectively, the "**Seller**") and Seller agrees to sell to Buyer $512,000.00 ("**Purchased Amount**") of Seller's future Receivables which shall include but shall not be limited to any/and all Receivables earned by Seller in the ordinary course of Seller's business from any source whatsoever (hereinafter referred to as "**Seller's Receivables**"). Seller agrees to sell to Buyer the Purchased Amount for the cash price of $400,000.00 ("**Purchase Price**"). The Purchased Amount shall be retrieved at a percentage of Seller's average monthly bank deposits ("**Purchased Percentage**"), as specified in Section 1.2, which shall be approximated, converted, and retrieved at the rate of $2,709.00 per day ("**Daily Retrieval Rate**"). Buyer and Seller agree that $2,709.00 is a best estimate of the Purchased Percentage of Seller's deposits from the previous calendar month. The Daily Retrieval Rate shall be collected via an ACH/ADF transaction from the bank account designated by Seller to Buyer ("**Designated Account**") until Buyer has irrevocably received the aggregate Purchased Amount of $512,000.00 from Seller. Seller hereby assigns, sells and transfers to Buyer all of its right, title and interest in the Purchased Amount to Buyer. Seller further agrees that Buyer will charge an administrative fee of $5,000.00 to cover Buyer's costs in connection with the purchase of the Purchased Amount. Buyer may deduct such amount from the Purchase Price. Seller further agrees to provide Buyer with access to the Designated Account in accordance with Section 1.2 herein, in order to reconcile the Daily Retrieval Rate on a monthly basis.

| | |
|---|---|
| **Purchased Percentage:** | 7% |
| **Purchased Amount:** | $512,000.00 |
| **Daily Retrieval Rate:** | $2,709.00 |

*The **$400,000.00** shall be disbursed as follows: **$105,054.00** of the Purchase Price will be used to satisfy the balance of the Purchased Amount remaining on the Merchant Sales Agreement dated August 26, 2016 between the parties hereto, and **$294,946.00** shall be disbursed to the Seller upon the execution of this Merchant Sales Agreement.

**1.2 Bank Access and Monthly Reconciliation.** In order for Buyer to receive the Purchased Percentage of Seller's Credit Card Receivables, Seller shall provide Buyer with (i) all online login information necessary to access Seller's Designated Account from its bank portal website, or (ii) if no online account exists, monthly bank statements for the Designated Account, or (iii) monthly merchant statements for the Processor. This bank access is necessary in order for Buyer to reconcile the Purchased Percentage so that the Daily Retrieval Rate set forth herein is in accord with the Purchased Percentage of Seller's Credit Card Receivables, to effectuate the true intent of the Agreement. Once the reconciliation is complete, Seller and Buyer agree that the Daily Retrieval Rate may be adjusted for the succeeding month up to and until the next monthly reconciliation is performed. In the event that Seller changes the login information without notice to Buyer, and/or Buyer is unable to access the account, or Seller fails to provide monthly statements, Seller agrees to and shall be charged a fee of $35.00 for each day Buyer is without access.

**2. Agreement to Establish ACH/ADF Authorization.**

*2.1* The **Designated Account** shall be:   Seller's Initials

**Purchase Price:**   $400,000.00*

SINGAL_00022852
GOVERNMENT'S EXHIBIT
208
2-22-CR-00068-DJC

Bank Name:
Routing Number:
Account Number:

*2.1.1 ACH/ADF.* Seller agrees to and shall execute an Authorization Agreement for Direct Deposit and Automatic Draft Funding (ACH/ADF Credit) and Direct Payments (ACH/ADF Debits) which Authorization is attached hereto and shall be incorporated by reference in this Merchant Sales Agreement **(See Exhibit "A" attached hereto and referred to hereinafter as "ACH/ADF Authorization").** This ACH/ADF Authorization shall authorize Buyer to collect the Purchased Amount from the Seller's Designated Account.

*2.1.2 Insufficient Funds or Returned ADF.* In the event any ACH, or ADF transaction is returned for insufficient funds (NSF) or for any reason whatsoever, on a date when such ACH or ADF transaction was scheduled under this Agreement, Seller shall pay a fee of fifty ($50.00) dollars for each NSF and such fee shall be due and added to the next scheduled ACH and/or ADF debit.

*2.2 Trial Period.* Upon the execution of this Agreement by Seller and Buyer, but before Buyer's payment of the Purchase Price, Seller agrees to allow Buyer to conduct a processing trial for two (2) business days to ensure that Buyer can properly withdraw funds from the Designated Account (the "Trial Period"). Buyer agrees to make a determination to purchase, or not, the Purchased Amount promptly after the end of the Trial Period. If Buyer decides to purchase the Purchased Amount, then all of the monies received by Buyer in connection with the Trial Period shall be applied toward the Purchased Amount. Nothing herein shall create an obligation of Buyer to purchase the Purchased Amount until the payment by Buyer of the Purchase Price, and Buyer expressly reserves the right not to purchase the Purchased Amount and not to pay the Purchase Price. If Buyer decides not to purchase the Purchased Amount, then Buyer is not obligated to pay the Purchase Price, and this Agreement shall be immediately terminated and be of no further force or effect. In such event, all monies received from Seller during the Trial Period will be returned to the Seller.

*2.2.1 Power of Attorney.* In the event that Seller changes or permits the change of the Designated Account, Buyer shall have the right, without waiving any of its rights and remedies without notice to Seller or any Guarantor, to notify the new bank or, financial institution or additional credit card processor to make payments to the Buyer of all or any portion of the amounts received by such bank, financial institution or additional credit card processor. Seller hereby grants the Buyer an irrevocable power of attorney, which power of attorney shall be coupled with an interest, and hereby appoints the Buyer or any of the Buyer's representatives as Seller's attorney in fact, to take any and all action necessary to direct such new or additional bank, financial institution or additional credit card processor to make payments to the Buyer as contemplated by this agreement. (See Power of Attorney annexed hereto as Exhibit 'B' and made part hereof.)

### 3. Seller's Representations, Warranties and Conduct.

*3.1 Seller's Representations and Warranties* As a further condition of this Merchant Sales Agreement, Seller represents and warrants that (i) all information provided by or on behalf of Seller to Buyer in connection with this Agreement, and Seller's Application ("Application") during the application process, are true, correct and complete; (ii) Seller has been operating Seller's business at Seller's present location for at least the last 12 consecutive months prior to the Effective Date; (iii) Seller will not change Seller's name or the location of Seller's business during the Term of this Agreement; (iv) the Purchased Amount is solely owned by Seller and shall not be assigned, conveyed or encumbered except for the sale to Buyer as provided for herein; (v) none of Seller's Receivables, nor any portion of the Purchased Amount, are subject to any liens or encumbrances, and are valid, true and correct and enforceable obligations of the parties thereto including the customer and the bank that issued the related credit and /or debit card; (vi) Seller and Owner are not aware of any claims, actions, proceedings, or circumstances that would cause any of the Purchased Amount to not be fully collectible; (vii) Seller is not the subject of any litigation or claims asserted or threatened by any third party except for claims arising in the ordinary course of business that are covered by adequate insurance or which claims alleged do not exceed $15,000; (viii) **Seller does not have any outstanding cash advances and will not take another cash advance from any company or sell any of Seller's Receivables or any other receivables regardless of their source, or otherwise encumber any future payment and or Receivable of Seller's Business;** (ix) Seller will not sell, dispose, convey or otherwise transfer its business or substantially all of its assets to another person or business entity without Buyer's express prior written consent and without the assumption by that entity or person of all of Seller's obligations under this Agreement pursuant to documentation reasonably satisfactory to Buyer, and Seller has no plans or intentions to close, shutdown or temporarily discontinue doing business for any reason whatsoever until this Agreement has been fully satisfied; (x) Seller and Owner know of no fact or circumstance that would cause the Purchased Amount to decrease in amount, quality or collectability other than due to general economic conditions; (xi) Seller warrants that the Purchased Price shall be used for business purposes only and not for personal, family or household purposes.

*3.2 Seller's Conduct.* Seller will: (i) conduct its business consistent with past practice; (ii) not use the Designated Account for deposit of all Seller's Receivables for payment for Seller's products and/or services; (iii) not change its arrangements with the Designated Account in any way that is adverse to the Buyer, (iv) not change the Designated Account nor open any additional business bank accounts without providing Buyer with written notice of such change or additional accounts and Seller shall provide all bank account information to Buyer; (v) not incur any material debt on the business without Buyer's prior written consent; (vi) not commit fraud; and (vii) not be insolvent or become insolvent; (viii) not sell or assign the business or any assets of the business to any third parties without Buyer first receiving the Purchased Amount in full.

*3.2.1 Business Information.* Seller shall furnish Buyer with such information as the Buyer may request from time to time.

*3.2.2 Reliance on Information.* Seller acknowledges that the information (financial and other) provided by or on behalf of Seller has been relied upon by Buyer in connection with Buyer's decision to purchase the future Receivables of Seller.

*3.2.3 Governmental Approvals.* Seller possesses and is in compliance with all permits, licenses, approvals, consents and other authorizations necessary to conduct the business, in which it is presently engaged, and to own, operate and lease its properties.

*3.2.4 Compliance with Law.* Seller is in compliance with any and all applicable federal, state and local laws and regulations in connection with the operation of the business in which it is presently engaged.

*3.2.5 Authorization.* Seller, and the persons signing this Agreement on behalf of Seller, has full power and authority to enter into and perform the obligations under this Agreement all of which have been duly authorized by all necessary and proper action.

*Happy Rock Merchant Solutions, LLC*   Page 2 of 16
*CA_K_ACH*

Seller's Initials

SINGAL_00022853
Gov. Ex. 208-002

*3.2.6 Insurance.* Seller shall maintain insurance in such amounts and against such risks as are consistent with past practice and shall show proof of such insurance upon Buyer's reasonable request.

*3.2.7 Name Change or Location.* Seller will not conduct its business under any name other than as disclosed to the Buyer or change any of its places of business.

*3.2.8 Suspend Business.* Seller will not suspend or terminate its business for repairs and renovations during the pendency of this Agreement.

*3.2.9 Sale of Business.* Seller shall notify the Buyer immediately of any intent to sell or assign the business or substantially all of the assets of the business. Seller shall furnish Buyer all documents concerning the transaction, including but not limited to the Contract of Sale. Seller warrants and covenants that Buyer will receive the Purchased Amount in full prior to or at the closing of sale. In the event that the Purchased Amount is not paid in full prior to or at the Closing of Sale of the business, **the undersigned principal(s) of Seller and Guarantor(s) agree to be personally responsible for the remaining outstanding balance of the Purchased Amount, and Seller waives all defenses, claims, counterclaims, actions, and/or causes of action of any nature whatsoever which have arisen or which may arise as a result of any breach of this Agreement, and/or of Seller's sale or assignment of the business.**

*3.2.10 Seller Not Indebted to Buyer.* Seller is not a debtor of Buyer as of the date of execution of this Agreement.

*3.2.11 Credit Inquiry.* Seller and Owner acknowledge and agree that an investigative report, including a credit check with recognized credit reporting agency(s), may be conducted in connection with this Agreement and/or the Application. Seller and each Owner authorize Buyer and its agents and representatives to (i) initiate such reports, investigations and/or credit checks, (ii) investigate any statements made or data received from or about Seller and/or its Owners, and (iii) contact any references given by Seller or its Owners. Seller and each Owner also agree to execute any consent forms reasonably necessary for Buyer to complete such credit checks and inquiries. In addition, Seller agrees that Seller's credit card processor may provide Buyer with Seller's historical credit card processing statements and information without the prior consent of Seller.

**3.3 DEFAULT. A violation of any of the terms and/or conditions of this Section 3 constitutes a Default by Seller of the terms and conditions of this Agreement.**

*3.3.1* It shall further be considered a breach of the terms and/or conditions of this Agreement and a Default by Seller upon the occurrence of any of the following events (each, an "**Event of Default**"): (i) Seller ceases to do business, or otherwise terminates or begins to wind down its business operations; (ii) Seller fails to deposit all of its Receivables into the Designated Account; (iii) Seller fails to promptly secure or renew any license, registration, permit, authorization or approval for the conduct of its business or if any such license, registration, permit, authorization or approval is revoked or suspended and the foregoing has an adverse effect on Seller's ability to perform its obligations hereunder; (iv) Seller defaults or becomes delinquent in any of its facility leases, or otherwise defaults under any other loan, extension of credit, line of credit, credit facility or other agreement with a vendor, supplier or otherwise; (v) any creditor of Seller forecloses or initiates a foreclosure or other proceeding, by repossession or otherwise, against any of Seller's assets; (vi) any event occurs which has or reasonably could have an adverse effect on Seller or its business that could reasonably impair its ability to conduct its business, process credit cards or otherwise satisfy its obligations under this Agreement, including but not limited to the credit card processor's suspension, interruption or termination of processing services for Seller; (vii) Seller becomes insolvent or seeks protection under any bankruptcy, receivership, trust deed, creditors arrangement, composition or comparable proceeding, or if any such proceeding is instituted against the other; (viii) Seller uses an alternative business entity to conduct similar business to that which is being conducted by Seller which results in a delay or the circumvention of Buyer's receipt of the Purchased Amount.

**4. Unconditional Personal Guaranty.** In consideration of the Buyer entering into this Merchant Sales Agreement and to induce Buyer to enter into this Merchant Sales Agreement the undersigned principal(s) of Seller (the "Guarantor(s)") hereby unconditionally and irrevocably personally guarantee(s) full payment of the Purchased Amount due to Buyer and the performance of the Merchant Sales Agreement. This Personal Guaranty shall be continuing and irrevocable and the Guarantor(s) waives demand of payment, notice of presentment and agrees that Buyer may proceed directly against Guarantor(s) without first proceeding against Seller. Guarantor further guarantees the payment of all costs and expenses (including attorneys' fees) which may be incurred as a result of Seller's Breach of this Merchant Sales Agreement.

**5. Remedies of Buyer.**

*5.1 Accelerated Damages Clause.* In the event of Seller's Default under any provision of this Agreement, Buyer may immediately declare the remaining portion of the Purchased Amount to be immediately due and payable, together with all out of pocket expenses accruing due to the breach of this Agreement; upon the occurrence of a Default, such amounts shall immediately and automatically become due and payable without any further action by Buyer. Upon such declaration or such automatic acceleration, the balance then outstanding of the Purchased Amount shall become immediately due and payable, without presentment, demand, protest or other formalities of any kind, all of which are hereby expressly waived by Seller and Buyer may thereupon exercise any remedies available to it at law and pursuant to the Agreement. Failure by Buyer to immediately require performance of this provision shall not affect Buyer's right to require performance of this provision at any time thereafter.

*5.2 Right of Access.* In order to ensure that Seller is complying with the terms of this Agreement, Buyer shall have the right to (i) enter and stay on the premises of the Seller's business, (ii) Seller shall provide access to its employees, records and all other items as requested by Buyer and (iii) have Seller provide information about it business operations, banking relationships, vendors, landlord and other information to allow Buyer to interview any relevant parties. Pursuant to this provision, Seller hereby grants Buyer express access to the property of Seller, and hereby agrees that in the event Buyer enters onto the property of Seller pursuant to this Agreement; such access shall not constitute trespass for criminal or civil purposes.

*5.3 Damages.* In the event of a breach of any of the provisions of this Agreement, Seller agrees that Buyer will be entitled to, among other things, damages equal to the amount by which the cash attributable to the Purchased Amount of future Receivables exceed the amount of cash received from the Receivables that have previously been delivered by Seller to Buyer under this Agreement. Seller agrees to (i) change its primary deposit account to a bank or financial institution of Buyer's discretion to enable Buyer to continue to collect the Purchased Amount as set forth herein, or (ii) authorize Buyer to debit, on a daily basis via an ACH transaction, all or part of the Purchased Amount deposited in its bank account until the Seller's obligations under this Agreement are complete. Buyer will deduct

automatically all such monies within a time frame left to the full and singular discretion of Buyer, regardless of the status of the Seller's bank account. Buyer shall be entitled to receive from Seller all reasonable costs associated with a breach by Seller of any of the representations and warranties or covenants provided for under this Agreement.

**5.4 *Inadequate Remedies.*** If a party breaches Section 2 or Section 3 of this Agreement, the non-breaching party will suffer irreparable harm and the total amount of monetary damages for any injury to such party will be impossible to calculate and therefore an inadequate remedy. Accordingly, the non-breaching party may (i) seek temporary and permanent injunctive relief against the breaching party or (ii) exercise any other rights and seek any other remedies to which the non-breaching party may be entitled to at law, in equity and under this Agreement for any violation of Section 2 of this Agreement. Provisions of this Section 5.4 shall survive the expiration or termination of this Agreement.

**5.6 *Fees Dues Upon The Occurrence of the Following Events.***

**5.6.1 *Default.*** In the event that Seller violates any of Seller's Representations, Warranties, and Conduct as set forth in Section 3 herein, or any of the other provisions of this Agreement, including but not limited to changing or permitting the change of the Designated Bank Account, or changing the name or location of the business, and Buyer is forced to place a hold on a freeze on any processing account or bank account consistent with its Perfected Security Interest, or take any other remedial action, Seller shall be charged and agrees to pay the fees specified in the **Additional Fees Schedule annexed hereto as Exhibit "C"**.

**5.6.2 *Modifying Terms of Merchant Sales Agreement.*** In the event that Seller requests a change in the terms of this Agreement prior to Buyer receiving the Purchased Amount from Seller in full, Seller shall be charged an Agreement Modification fee of $750.00 for each such modification and such fee shall be added to the Purchased Amount or set forth herein.

**5.6.3 *Insufficient Funds or Returned ADF.*** In the event any ACH, or ADF transaction is returned for insufficient funds (NSF) or for any reason whatsoever, on a date when such ACH or ADF transaction was scheduled under this Agreement, Seller shall pay a fee of fifty ($50.00) dollars for each NSF and such fee shall be due and added to the next scheduled ACH and/or ADF debit.

**6. Additional Terms.**

**6.1 *Sale of Future Receivables Not A Loan.*** Seller and Buyer acknowledge and agree that the transaction memorialized in this Agreement is a purchase of the Purchased Amount of Seller's future Receivables, and is not intended to be, nor shall it be construed as a loan from Buyer to Seller. Each future Receivable purchased by Buyer hereunder represents a bona fide sale by Seller. Seller acknowledges that no law applicable to lending transactions is intended by Buyer or Seller to apply to the purchase of future Receivables covered by this Agreement, and each future Receivable purchased by Buyer which becomes an actual receivable hereunder shall be owned by Seller free and clear of all encumbrances.

**6.2 *No Right to Repurchase.*** Seller acknowledges that it has no right to repurchase the Purchased Amount of future Receivables from Buyer.

**6.3 *Security Interest.*** In order to secure the performance of Seller under this Agreement, Seller and Guarantor each hereby assign and grant to Buyer a security interest in the following described property ("Collateral"): (i) All of the following, whether now owned or hereafter acquired by Seller: accounts, contract rights, chattel paper, instruments, deposit accounts, and general intangibles; (ii) All inventory now owned or hereafter acquired by Seller; (iii) All machinery, furniture, fixtures and other equipment of every type now owned or hereafter acquired by Seller; (iv) All negotiable and nonnegotiable documents of title now owned or hereafter acquired by Seller covering any of the above-described property; (v) All rights under contracts of insurance now owned or hereafter acquired by Seller covering any of the above-described property; (vi) All books and records now owned or hereafter acquired by Seller pertaining to any of the above- described property, including but not limited to any computer-readable memory and any computer hardware or software necessary to process such memory; (vii) All proceeds, product, rents and profits now owned or hereafter acquired by Seller of any of the above-described property. Buyer has the right under this Agreement to file a Financing Statement consistent with the Uniform Commercial Code to give notice that the Buyer has a security interest in the Collateral. Seller and Guarantor each acknowledge and agree that in the event of any default of the terms and conditions of this Merchant Sales Agreement, Buyer may notify any account debtor or other person obligated to Seller to make payment directly to Buyer pursuant to UCC § 9-406(a).

**6.3.1 *Negative Pledge.*** Seller and Guarantor each agree that any UCC Financing Statement may contain notification that Seller and Guarantor have granted a negative pledge to Buyer with respect to the collateral (i.e. Sellers Receivables), and the Cross-Collateral, and that any subsequent lienor may be tortiously interfering with Buyer's rights. Seller and Guarantor shall be liable for and Buyer may charge and collect all costs and expenses, including but not limited to attorney's fees, which may be incurred by Buyer in protecting, preserving and enforcing Buyer's security interest and rights.

**6.3.2 *Cross-Collateralization of Sellers' Businesses.*** Seller and Guarantor each acknowledge and agree that any security interest granted to Buyer under any other agreement between Seller or Guarantor and Buyer (the "Cross Collateral") will secure the obligations under this Merchant Sales Agreement. Sellers and Guarantors each acknowledge and agree that all Businesses of Seller and Guarantors are jointly and severally liable to Buyer for the total aggregate Purchased Amount set forth in any and all Merchant Sales Agreements between the parties, now or hereafter executed, and each such Seller and Guarantor shall be jointly and severally liable to Buyer should there be a basis to enforce the Guaranty.

**6.4 *Terms of Merchant Sales Agreement.*** This Agreement shall be in full force and effect until the Purchased Amount of future Credit Card Receivables have been delivered by Seller to Buyer.

**7. Miscellaneous Section**

**7.1 *Modifications; Amendments.*** No modification, amendment, or waiver of any provision of this Agreement shall be effective unless the same shall be in writing and signed by both parties and subject to the fees as set forth above.

**7.2 *Notices.*** All notices, requests, demands and other communications relevant to this Agreement shall be in writing and shall be delivered by mail, overnight delivery or hand delivery to the respective parties to this Agreement at the addresses set forth on the face of this Agreement.

**7.3 *Waiver; Remedies.*** No failure on the part of Buyer to exercise, and no delay in exercising, any right under this Agreement shall operate as a waiver of such right nor shall any single or partial exercise of any right under this Agreement preclude any other or

*Happy Rock Merchant Solutions, LLC*    Page 4 of 16
*CA_K_ACH*

Seller's Initials

Case 2:22-cr-00068-DJC    Document 129-10    Filed 11/04/25    Page 6 of 8
FILED: WESTCHESTER COUNTY CLERK 09/15/2017 11:44 AM
NYSCEF DOC. NO. 3
INDEX NO. 64375/2017
RECEIVED NYSCEF: 09/19/2017
Ex. J - 005

further exercise of any other right The remedies provided under this Agreement are cumulative and not exclusive of any remedies provided by law or equity. Buyer may exercise any and all rights provided for in this Agreement without giving prior notice to Seller.

**7.4 *Binding Effect on Buyer.*** This Agreement shall not be binding upon Buyer until Buyer remits to Seller the Purchase Price as set forth herein, and Buyer reserves the right to and may cancel this Agreement at any time prior to Buyer remitting the Purchase Price to Seller. In the event that Buyer cancels this Agreement at any time, Seller shall have no recourse against Buyer, and Seller agrees that it will have suffered no compensable damages and have no claim against Buyer should Buyer elect to cancel this Agreement at any time prior to actual remittance of the Purchase Price to Seller.

**7.4.1 *Binding Effect on Buyer and Seller.*** This Agreement shall be binding upon Buyer and Seller and inure to the benefit of Seller and Buyer and their respective successors and assigns, except that Seller shall not have the right to assign its rights under this Agreement or any interest therein without the express prior written consent of Buyer and without the assumption of all of Seller's obligations under this Agreement pursuant to documentation reasonably satisfactory to Buyer. Buyer reserves the right to assign this Agreement with or without prior notice to Seller.

**7.5 *California Choice of Law.*** The interpretation, servicing and enforcement of this Merchant Sales Agreement any and all matters in dispute between Seller and Buyer, whether (a) arising out of or relating to this Merchant Sales Agreement, (b) arising from alleged extra-contractual facts prior to, during, or subsequent to this Merchant Sales Agreement, including, without limitation, fraud, misrepresentation, negligence or any other alleged tort or violation of the contract, or (c) otherwise arising out of or relating to the relationship of Seller and Buyer, shall be governed by, construed, and enforced in accordance with the internal laws of the of the state of California, excluding the choice of law provisions thereof, regardless of the legal theory upon which such matter is asserted or the location of the Seller. Seller understands and agrees that (d) Buyer is located in and conducts its business in California, (e) Buyer makes all credit decisions from Buyer's office in California, (f) the advance is made in California and no binding contract will be formed until Buyer receives and accepts this Merchant Sales Agreement in California, (g) Seller's payments are not accepted until received by Buyer in California and (h) the purchase is made under and pursuant to Buyer's license as a Finance Lender under the California Finance Buyers Law (license no. 603J749), which law provides among other things that Buyer is exempt from the limits on interest of the California usury law. Seller understands that Seller's agreeing to the applicability of California law is a material factor in Buyer's willingness to enter into this Merchant Sales Agreement.

**7.6 *Costs to Enforce the Agreement Payable by Seller.*** Buyer shall be entitled to receive from Seller, and Seller shall pay to Buyer, all costs incurred by Buyer in connection with a breach by Seller of the representations and warranties or covenants set forth in this Agreement and/or Buyer's enforcement of the remedies provided in this Agreement for any such breach, including but not limited to court costs and attorney's fees and disbursements.

**7.7 *Survival of Representations, etc.*** All representations and warranties and covenants in this Agreement shall survive its execution and delivery, and shall continue in full force and effect until all obligations under this Agreement shall have been fully satisfied and this Agreement shall have terminated.

**7.8 *Severability.*** If any one or more of the provisions in this Agreement should be invalid, illegal or unenforceable in any respect, the validity, legality and enforceability of the remaining provisions in this Agreement shall not in any way be affected or impaired.

**7.9 *Entire Agreement.*** This Agreement contains the entire agreement and understanding between Seller and Buyer and supersedes all prior agreements and understandings relating to the subject matter hereof unless otherwise specifically reaffirmed or restated herein.

**7.10 *JURY TRIAL WAIVER.* The parties to this Agreement waive trial by jury in any court in any suit, action or proceeding on any claim arising out of or in connection with or in any way related to the transactions which are the subject of this Agreement, except where such waiver is prohibited by law or deemed by a court of law to be against public policy. The parties hereto acknowledge that each makes this waiver knowingly, willingly and voluntarily and without duress, and only after extensive consideration of the ramifications of this waiver with their attorneys.**

**7.11 *Termination.*** Buyer shall not be bound by this agreement until it is fully executed and Buyer may cancel this transaction without liability at any time prior to actual funding.

**7.12 *Uniform Commercial Code, Site Visit and Monitoring Fees.*** Seller acknowledges and agrees that Buyer will incur certain expenses in connection with Buyer's filing of certain documents in accordance with each state's Uniform Commercial Code. Seller and Buyer agree that $100.00 for each filing and related searches shall be a reasonable estimate of the expenses that Buyer shall incur in connection with each such filing. Seller agrees that $250.00 shall be a reasonable estimate of the expense for site visit, monitoring, and other underwriting costs. Seller further acknowledges that if the Purchase Price reflected herein is $50,000.00 or greater, Buyer will incur additional underwriting expenses, including third-party verification of all financial statements and tax returns provided by Seller. Seller agrees that $300.00 shall be a reasonable estimate of these additional underwriting expenses. Seller shall be responsible for paying such costs set forth herein and shall make such payment by directing Buyer to deduct said costs from the Purchase Price, which direction is given by signing this contract.

*Happy Rock Merchant Solutions, LLC*
*CA K ACH*
Page 5 of 16

Seller's Initials ⧸⧸

Case 2:22-cr-00068-DJC   Document 129-10   Filed 11/04/25   Page 7 of 8
FILED: WESTCHESTER COUNTY CLERK 09/15/2017 11:44 AM
INDEX NO. 64375/2017
NYSCEF DOC. NO. 3
RECEIVED NYSCEF: 09/19/2017
Ex. J - 006

**7.13 *Confession of Judgment*.** In the event Seller violates any of the Seller's Representations, Warranties and Conduct as set forth in Section 3 herein, or any of the provisions of this Agreement, Seller and Guarantor/Owner hereby consent to the entry of a Judgment against the Seller in favor of the Buyer in the County Designated in the Confession and/or the Court in the County and State where the Seller maintains its principal place of business. The Seller consents, and agrees to and grants a Judgment in favor of Buyer for the sum of money equal to the Purchased Proceeds less monies collected by Buyer to date, plus any and all costs and expenses. This Agreement may be filed without Notice or Presentment to the Clerk of the Court and a Judgment shall be entered against the Seller and Owner and in favor of Buyer.

I have read and agree to the Terms and Conditions set forth above:

**Buyer**
Happy Rock Merchant Solutions, LLC:

By_____
Name: _____
Title: _____
Date: _____

**Seller**
First Capital Real Estate Investments LLC
D/B/A: First Capital Real Estate Investments

By: ➡ _____
Name: Suneet Singal
Title: Owner
Date: 4/19/17

First Capital Retail LLC
D/B/A: First Capital Retail

By: ➡ _____
Name: First Capital Real Estate Investments, LLC, Managing Member
By: Suneet Singal
Date: 4/19/17

*Happy Rock Merchant Solutions, LLC*
*CA K ACH*

Page 6 of 16

Seller's Initials

SINGAL_00022857
Gov. Ex. 208-006

**Unconditional Personal Guaranty**

The undersigned Owner(s) (collectively, "Guarantor"), who are the owners of the Seller(s), hereby jointly and severally unconditionally and irrevocably personally guarantee(s) full payment of the Purchased Amount due to Buyer and the performance of all terms and conditions of the Merchant Sales Agreement including Section 3 of this Merchant Sales Agreement, which is entitled **Seller's Representations, Warranties and Conduct.** (The obligations of Seller contained in Section 3 and the payment of the Purchased Amount are collectively referred to herein as the "**Guaranteed Obligations**") Guarantor(s) hereby jointly and severally unconditionally and irrevocably guarantee the immediate payment of all monies owed to Buyer by Seller under the Agreement, whether or not the Guaranteed Obligations are found to be invalid, illegal or unenforceable, this being a guaranty of payment and not a guaranty of collection. This Guaranty shall remain in full force and effect notwithstanding the fact that, at any particular time, no **Guaranteed Obligations** may be outstanding. All of the terms of Section 3 of the Merchant Sales Agreement, including Owner's agreement to submit to the jurisdiction of California for all disputes arising out of this Guaranty, are hereby incorporated herein by reference except that reference to "Agreement" in such Sections shall mean this Guaranty. GUARANTOR WAIVES ANY AND ALL SURETYSHIP DEFENSES, WHETHER ARISING BY CONTRACT, STATUTE OR BY OPERATION OF LAW. Guarantor agrees to pay all costs and expenses, including reasonable attorneys' fees incurred by Buyer, to enforce the provisions of this Guaranty, as determined by the court. In addition, each Guarantor agrees to pay on demand all damages incurred by Buyer arising out of a breach of any of the **Sellers Representations, Warranties and Conduct** that are listed above, including, without limitation, the full amount of all monetary obligations owed by Seller to Buyer under the Agreement. Guarantor waives all protection afforded it under California law or other applicable law and any related rights to revoke this Guaranty as to future **Guaranteed Obligations**. The Guarantor(s) to this Agreement are hereby notified that a negative credit report reflecting on his/her credit record may be submitted to a credit reporting agency if the terms of this Agreement are breached. Each Guarantor acknowledges receiving a copy of this Agreement and having read the terms of this Agreement, including without limitation, the guarantee set forth in this paragraph, and each Guarantor's signature below shall serve *as* confirmation that each such Guarantor understands all terms and conditions of this Agreement.

Guaranteed By:
Suneet Singal

➡ _____
Date: _____7/19/17_____

➡ _____
Date: _____

*Happy Rock Merchant Solutions, LLC*
*CA_K_ACH*

Page 7 of 16

Seller's Initials

SINGAL_00022858
*Gov. Ex. 208-007*