# EXHIBIT L

# Gov. Ex. 216

# YELLOWSTONE CAPITAL WEST LLC

CFL License Number: 603-K236

30 Broad Street, Suite 14108 New York, New York 10004

## SECURED MERCHANT AGREEMENT

This Agreement, dated   Jun 9, 2017   , is between YELLOWSTONE CAPITAL WEST, LLC ("YCW") and the merchant listed below ("the Merchant"):

Merchant Legal Name: FIRST CAPITAL RETAIL LLC and the entities listed on annexed "Exhibit A"
D/B/A: FIRST CAPITAL RETAIL
Check One:   Corporation ☐   LLC ☒   LP ☐   LLP ☐   Sole Prop ☐      EIN#: 47-2494283
Physical Address: 2355 GOLD MEADOW WAY, SUITE 160 GOLD RIVER CA 95670
Mailing Address: 2377 GOLD MEADOW WAY STE 100 GOLD RIVER CA 95670

## PURCHASE AND SALE OF FUTURE RECEIVABLES

Merchant hereby sells, assigns and transfers to YCW (making YCW the absolute owner) in consideration of the funds provided ("Purchase Price") specified below, the Specified Percentage (defined below) of Merchant's future accounts, contract rights and other obligations arising from or relating to the payment of monies from Merchant's customers' and/or other third party payors (the "Receipts") defined as all payments made by cash, check, credit or debit card, electronic transfer or other form of monetary payment in the ordinary course of the merchant's business, for the payment of Merchant's sale of goods or services until the amount specified below (the "Purchased Amount") has been delivered by Merchant to YCW.

The Purchased Amount shall be paid to YCW by Merchant's irrevocably authorizing only ONE depositing account acceptable to YCW (the "Account") to remit the percentage specified below (the "Specified Percentage") of the Merchant's settlement amounts due from each transaction, until such time as YCW receives payment in full of the Purchased Amount. Merchant hereby authorizes YCW to ACH Debit the specified remittances from the merchant's bank account on a daily basis and will provide YCW with all required access codes, and monthly bank statements. Merchant understands that it is responsible for ensuring that the specified percentage to be debited by YCW remains in the account and will be held responsible for any fees incurred by YCW resulting from a rejected ACH attempt or an event of default. (See Appendix A). YCW is not responsible for any overdrafts or rejected transactions that may result from YCW's ACH debiting the specified amounts under the terms of this agreement. YCW may, upon Merchant's request, adjust the amount of any payment due under this Agreement at YCW's sole discretion and as it deems appropriate. Notwithstanding anything to the contrary in this Agreement or any other agreement between YCW and Merchant, upon the violation of any provision contained the MERCHANT AGREEMENT TERMS AND CONDITIONS or the occurrence of an Event of Default under the MERCHANT AGREEMENT TERMS AND CONDITIONS, the Specified Percentage shall equal 100%. A list of all fees applicable under this agreement is annexed hereto in Appendix A.

**PURCHASE PRICE:** $250,000.00    **SPECIFIED PERCENTAGE:** 15 %    **PURCHASED AMOUNT:** $ 374,750.00

THE TERMS, DEFINITIONS, CONDITIONS AND INFORMATION SET FORTH IN THE "MERCHANT SECURITY AGREEMENT" AND "ADMINISTRATIVE FORM" HEREOF ARE HEREBY INCORPORATED HEREIN AND MADE A PART OF THIS MERCHANT AGREEMENT.

FOR THE MERCHANT
By: [signature]
Name: SUNEET SINGAL
Title: OWNER
SSN: 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

OWNER/GUARANTOR #1
By: [signature]
Name: SUNEET SINGAL
SSN: 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

FOR THE MERCHANT #2
By:
Name:
Title:
SSN:

OWNER/GUARANTOR #2
By:
Name:
SSN:

YSWAdvance – 5.15.17

Page 1

SINGAL_00002777

GOVERNMENT'S EXHIBIT
**216**
2-22-CR-00068-DJC

To the extent set forth herein, each of the parties is obligated upon his, her or its execution of the Agreement to all terms of the Agreement, including the Additional Terms set forth below. Each of above-signed Merchant and Owner(s) represents that he or she is authorized to sign this Agreement for Merchant, legally binding said Merchant to pay this obligation and that the information provided herein and in all of YCW documents, forms a and recorded interviews is true, accurate and complete in all respects. If any such information is false or misleading,

Merchant shall be deemed in material breach of all agreements between Merchant and YCW and YCW shall be entitled to all remedies available under law. YCW may produce a monthly statement reflecting the delivery of the Specified Percentage of Receivables from Merchant via Processor and/or Operator to YCW. An investigative report may be made in connection with the Agreement. Merchant and each of the above-signed Owners authorizes YCW, its agents and representatives and any credit-reporting agency engaged by YCW, to (i) investigate any references given or any other statements or data obtained from or about Merchant or any of its Owners for the purpose of this Agreement, and (ii) pull credit report at any time now or for so long as Merchant and/or Owners(s) continue to have any obligation owed to YCW as a consequence of this Agreement or for YCW's ability to determine Merchant's eligibility to enter into any future agreement with Company.

**ANY MISREPRESENTATION MADE BY MERCHANT OR OWNER IN CONNECTION WITH THIS AGREEMENT MAY CONSTITUTE A SEPARATE CAUSE OF ACTION FOR FRAUD OR INTENTIONAL MISREPRESENTATION.**

## MERCHANT AGREEMENT TERMS AND CONDITIONS

### I. TERMS OF ENROLLMENT IN PROGRAM

**1.1 Merchant Deposit Agreement.** Merchant shall execute an agreement (the "Merchant Deposit Agreement") acceptable to YCW, and appoint a Bank acceptable to YCW, to obtain electronic fund transfer services and/or "ACH" payments. Merchant shall provide YCW and/or its authorized agent with all of the information, authorizations and passwords necessary to verify Merchant's receivables, receipts and deposits into the account. Merchant shall authorize YCW and/or its agent to deduct the amounts owed to YCW for the Receipts as specified herein from settlement amounts which would otherwise be due to Merchant from electronic check transactions and to pay such amounts to YCW by permitting YCW to withdraw the specified percentages by ACH debiting of the account. The authorization shall be irrevocable absent YCW's written consent.

**1.2 Future Purchases.** YCW reserves the right to rescind the offer to make any purchase payments hereunder, in its sole discretion.

**1.3 Financial Condition.** Merchant and Guarantor(s) authorize YCW and its agents to investigate their financial responsibility and history, and will provide to YCW any bank or financial statements, tax returns, etc., as YCW deems necessary prior to or at any time after execution of this Agreement. A photocopy of this authorization will be deemed as acceptable for release of financial information. YCW is authorized to update such information and financial profiles from time to time as it deems appropriate.

**1.4 Transactional History.** Merchant authorizes their bank to provide YCW with Merchant's banking and/or credit-card processing history to determine qualification or continuation in this program.

**1.5 Indemnification.** Merchant and Guarantor(s) jointly and severally indemnify and hold harmless Processor, its officers, directors and shareholders against all losses, damages, claims, liabilities and expenses (including reasonable attorney's fees) incurred by Processor resulting from (a) claims asserted by YCW for monies owed to YCW from Merchant and (b) actions taken by Processor in reliance upon information or instructions provided by YCW.

**1.6 No Liability.** In no event will YCW be liable for any claims asserted by Merchant under any legal theory for lost profits, lost revenues, lost business opportunities, exemplary, punitive, special, incidental, indirect or consequential damages, each of which is waived by Merchant and Guarantor(s).

**1.7 Reliance on Terms.** Section 1.1, 1.7, 1.8 and 2.5 of this Agreement are agreed to for the benefit of Merchant, YCW and Processor, and notwithstanding the fact that Processor is not a party of this Agreement, Processor may rely upon their terms and raise them as a defense in any action.

**1.8 Sale of Receipts.** Merchant and YCW agree that the Purchase Price under this Agreement is in exchange for the Purchased Amount and that such Purchase Price is not intended to be, nor shall it be construed as a loan from YCW to Merchant. Merchant agrees that the Purchase Price is in exchange for the Receipts pursuant to this Agreement equals the fair market value of such Receipts. YCW has purchased and shall own all the Receipts described in this Agreement up to the full Purchased Amount as the Receipts are created. Payments made to YCW in respect to the full amount of the Receipts shall be conditioned upon Merchant's sale of products and services and the payment therefore by Merchant's customers in the manner provided in Section 1.1. In no event shall the aggregate of all amounts be deemed as interest hereunder and charged or collected hereunder exceed the highest rate permissible at law. In the event that a court determines that YCW has charged or received interest hereunder in excess of the highest rate allowed by law, then the rate in effect hereunder shall automatically be reduced to the maximum rate permitted by applicable law and YCW shall promptly refund to Merchant any interest received by YCW in excess of the maximum lawful rate, it being intended that Merchant not pay or contract to pay, and that YCW not receive or contract to receive, directly or indirectly in any manner whatsoever, interest in excess of that which may be paid by Merchant under applicable law.

**1.9 Power of Attorney.** Merchant irrevocably appoints YCW as its agent and attorney-in-fact with full authority to take any action or execute any instrument or document to settle all obligations due to YCW from Processor, or in the case of a violation by Merchant of Section 1.12 or the occurrence of an Event of Default under Section 3 hereof, from Merchant, under this Agreement, including without limitation (i) to obtain and adjust insurance; (ii) to collect monies due or to become due under or in respect of any of the Collateral; (iii) to receive, endorse and collect any checks, notes, drafts, instruments, documents or chattel paper in connection with clause (i) or clause (ii) above; (iv) to sign Merchant's name on any invoice, bill of lading, or assignment directing customers or account debtors to make payment directly to YCW; and (v) to file any claims or take any action or institute any proceeding which YCW may deem necessary for the collection of any of the unpaid Purchased Amount from the Collateral, or otherwise to enforce its rights with respect to payment of the Purchased Amount.

**1.10 Protections against Default.** The following Protections 1 through 8 may be invoked by YCW, immediately and without notice to Merchant in the event: (a) Merchant takes any action to discourage the use of electronic check processing that are settled through Processor, or permits any event to occur that could have an adverse effect on the use, acceptance, or authorization of checks for the purchase of Merchant's services and products including but not limited to direct deposit of any checks into a bank account without scanning into the YCW electronic check processor; (b) Merchant changes its arrangements with Processor in any way that is adverse to YCW; (c) Merchant changes the electronic check processor through which the Receipts are settled from Process or to another electronic check processor, or permits any event to occur that could cause diversion of any of Merchant's check transactions to another processor; (d) Merchant interrupts the operation of this business (other than adverse weather, natural disasters or acts of God) transfers, moves, sells, disposes, transfers or otherwise conveys its business or assets without (i) the express prior written consent of YCW, and (ii) the written agreement of any purchaser or transferee to the assumption of all of Merchant's obligations under this Agreement pursuant to documentation satisfactory to YCW; or (e) Merchant takes any action, fails to take any action, or offers any incentive—economic or otherwise—the result of which will be to induce any customer or customers to pay for Merchant's services with any means other than checks that are settled through Processor. These protections are in addition to any other remedies available to YCW at law, in equity or otherwise pursuant to this Agreement. **Protection 1:** The full uncollected Purchase Amount plus all fees due under this Agreement and the attached Security Agreement become due and payable in full immediately. **Protection 2.** YCW may enforce the provisions of the Personal Guarantee of Performance against the Guarantor(s). **Protection 3.** Merchant shall, upon execution of this Agreement, deliver to YCW an executed confession of judgment in favor of YCW in the amount of the Purchase Amount stated in the Agreement. Upon breach of any provision in this paragraph 1.10 or 3.1, YCW may enter that confession of judgment as a judgment with the Clerk of the Court and execute thereon. **Protection 4.** YCW may enforce its security interest in the Collateral identified in the Security Agreement herein. **Protection 5.** YCW may proceed to protect and enforce its rights and remedies by lawsuit. In any such lawsuit, in which YCW shall recover judgment against Merchant, Merchant shall be liable for all of YCW's costs of lawsuit, including but not limited to all reasonable attorneys' fees and court costs. **Protection 6.** Merchant shall, upon execution of this Agreement, deliver to YCW an executed assignment of lease of Merchant's premises in favor of YCW. Upon breach of any provision in this paragraph 1.12, YCW may exercise its rights under such

Owner 1 Initials: _____

Owner 2 Initials: _____

assignment of lease. Protection 7. YCW may debit Merchant's depository accounts wherever situated by means of ACH debit or facsimile signature on a computer-generated check drawn on Merchant's bank account or otherwise, in an amount consistent with the Specified Percentage. Protection 8. YCW shall have the right, without waiving any of its rights and remedies and without notice to Merchant and/or Guarantor(s), to notify Merchant's credit card processor of the sale of Receipts hereunder and to direct such credit card processor to make payment to YCW of all or any portion of the amounts received by such credit card processor on behalf of Merchant. Merchant hereby grants to YCW an irrevocable power-of-attorney, which power-of-attorney shall be coupled with an interest, and hereby appoints YCW or any of YCW's representatives as Merchant's attorney-in-fact, to take any and all action necessary to direct such new or additional credit card processor to make payment to YCW as contemplated by this Section.

**1.11 Protection of Information.** Merchant and each person signing this Agreement on behalf of Merchant and/or as Owner, in respect of himself or herself personally, authorizes YCW to disclose information concerning Merchant's and each Owner's and/or Guarantor(s)'s credit standing and business conduct only, to agents, affiliates, subsidiaries, and credit reporting bureaus. Merchant, Guarantor(s) and Owner(s) hereby waives to the maximum extent permitted by law any claim for damages against YCW or any of its affiliates relating to any (i) investigation undertaken by or on behalf of YCW as permitted by this Agreement or (ii) disclosure of information as permitted by this Agreement.

**1.12 Confidentiality.** Merchant understands and agrees that the terms and conditions of the products and services offered by YCW, including this Agreement and any other YCW documentations (collectively, "Confidential Information") are proprietary and confidential information of YCW. Accordingly unless disclosure is required by law or court order, Merchant shall not disclose Confidential Information of YCW to any person other than an attorney, accountant, financial advisor or employee of Merchant who needs to know such information for the purpose of advising Merchant ("Advisor"), provided such Advisor uses such information solely for the purpose of advising Merchant and first agrees in writing to be bound by the terms of this Section 1.12.

**1.13 D/B/As.** Merchant hereby acknowledges and agrees that YCW may be using "doing business as" or "d/b/a" names in connection with various matters relating to the transaction between YCW and Merchant, including the filing of UCC-1 financing statements and other notices or filings.

## II. REPRESENTATIONS, WARRANTIES AND COVENANTS

Merchant represents warrants and covenants that as of this date and during the term of this Agreement:

**2.1 Financial Condition and Financial Information.** Its bank and financial statements, copies of which have been furnished to YCW, and future statements which will be furnished hereafter at the discretion of YCW, fairly represent the financial condition of Merchant at such dates, and since those dates there has been no material adverse changes, financial or otherwise, in such condition, operation or ownership of Merchant. Merchant has a continuing, affirmative obligation to advise YCW of any material adverse change in its financial condition, operation or ownership. YCW may request statements or online banking access at any time during the performance of this Agreement and the Merchant shall provide them to YCW within 5 business days. Merchant's failure to do so is a material breach of this Agreement.

**2.2 Governmental Approvals.** Merchant is in compliance and shall comply with all laws and has valid permits, authorizations and licenses to own, operate and lease its properties and to conduct the business in which it is presently engaged.

**2.3 Authorization.** Merchant, and the person(s) signing this Agreement on behalf of Merchant, have full power and authority to incur and perform the obligations under this Agreement, all of which have been duly authorized.

**2.4 Insurance.** Merchant will maintain business-interruption insurance naming YCW as loss payee and additional insured in amounts and against risks as are satisfactory to YCW and shall provide YCW proof of such insurance upon request.

**2.5 Electronic Check Processing Agreement.** Merchant will not change its credit-card processor, add terminals, change its financial institution or bank account(s) or take any other action that could have any adverse effect upon Merchant's obligations under this Agreement, without YCW's prior written consent. Any such change shall be a material breach of this Agreement.

**2.6 Change of Name or Location.** Merchant will not conduct Merchant's businesses under any name other than as disclosed to the Processor and YCW or change any of its places of business, without notice YCW's written consent.

**2.7 Estoppel Certificate.** Merchant will at any time, and from time to time, upon at least one (1) day's prior notice from YCW to Merchant, execute, acknowledge and deliver to YCW and/or to any other person, person firm or corporation specified by YCW, a statement certifying that this Agreement is unmodified and in full force and effect (or, if there have been modifications, that the same is in full force and effect as modified and stating the modifications) and stating the dates which the Purchased Amount or any portion thereof has been paid.

**2.8 Working Capital Funding.** Merchant shall not further encumber the Receipts without (i) the written consent of YCW, and (ii) the written agreement of any purchaser or transferee to the assumption of all of Merchant's obligations under this Agreement pursuant to documentation satisfactory to YCW; Merchant shall not take any action, fail to take any action, or offer any incentive— economic or otherwise—the result of which will be to induce any customer or customers to pay for Merchant's services with any means other than in a manner contemplated by this Agreement.

**2.9 Unencumbered Receipts.** Merchant has good, complete and marketable title to all Receipts, free and clear of any and all liabilities, liens, claims, changes, restrictions, conditions, options, rights, mortgages, security interests, equities, pledges and encumbrances of any kind or nature whatsoever or any other rights or interests that may be inconsistent with the transactions contemplated with, or adverse to the interests of YCW.

**2.12 Business Purpose.** Merchant is a valid business in good standing under the laws of the jurisdictions in which it is organized and/or operates, and Merchant is entering into this Agreement for business purposes and **NOT** as a consumer for personal, family or household purposes.

**2.13 Defaults under Other Contracts.** Merchant's execution of and/or performance under this Agreement, will not cause or create an event of default by Merchant under any contract with another person or entity.

## III. EVENTS OF DEFAULT AND REMEDIES

**3.1 Events of Default.** The occurrence of any of the following events shall constitute an "Event of Default" hereunder: (a) Merchant shall violate any term or covenant in this Agreement; (b) Any representation or warranty by Merchant in this Agreement shall prove to have been incorrect, false or misleading in any material respect when made; (c) the sending of notice of termination by Guarantor(s) prior to the Purchased Amount being paid to YCW; (d) Merchant shall transport, move, interrupt, suspend, dissolve or terminate its business in violation of this Agreement; (e) Merchant shall transfer or sell all or substantially all of its assets without YCW's written consent; (f) Merchant shall make or send notice of any intended bulk sale or transfer by Merchant; (g) Merchant shall use multiple depository accounts without the prior written consent of YCW; (h) Merchant shall change its depositing account without the prior written consent of YCW; (i) Merchant shall perform any act that reduces the value of any Collateral granted under this Agreement; (j) Merchant shall default under any of the terms, covenants and conditions of any other agreement with YCW; (k) Merchant shall fail to deposit its Receipts into the Account; or (l) Merchant shall change online access to the Account, and/or fail to provide YCW with said access.

**3.2 Remedies.** In case any Event of Default occurs and is not waived pursuant to Section 4.4 hereof, YCW may proceed to protect and enforce its rights or remedies by suit in equity or by action at law, or both, whether for the specific performance of any covenant, agreement or other provision contained herein, or to enforce the discharge of Merchant's obligations hereunder (including the Personal Guarantee) or any other legal or equitable right or remedy. All rights, powers and remedies of YCW in connection with this Agreement may be exercised at any time by YCW after the occurrence of an Event of Default, are cumulative and not exclusive, and shall be in addition to any other rights, powers or remedies provided by law or equity.

**3.3 Costs.** Merchant shall pay to YCW all reasonable costs associated with (a) a breach by Merchant of the Covenants in this Agreement and the enforcement thereof, and (b) the enforcement of YCW's remedies set forth herein, including but not limited to court costs and attorneys' fees.

**3.4 Required Notifications.** In addition to all the specific terms herein requiring notice to YCW, Merchant is required to give YCW written notice within 24 hours of any filing under Title 11 of the United States Code. Merchant is required to give YCW seven (7) days' written notice prior to the closing of any sale of all or substantially all of the Merchant's assets or stock.

Owner 1 Initials: ____

Owner 2 Initials: ____

## IV. MISCELLANEOUS

4.1 **Modifications; Agreements.** No modification, amendment, waiver or consent of any provision of this Agreement shall be effective unless the same shall be in writing and signed by both parties.

4.2 **Assignment.** YCW may assign, transfer or sell its rights to receive the Purchased Amount or delegate its duties hereunder, either in whole or in part without prior notice to the Merchant.

4.3 **Notices.** All notices, requests, consent, demands and other communications hereunder shall be delivered by certified mail, return receipt requested, to the respective parties to this Agreement at the addresses set forth in this Agreement and shall become effective only upon receipt.

4.4 **Waiver Remedies.** No failure on the part of YCW to exercise, and no delay in exercising, any right under this Agreement, shall operate as a waiver thereof, nor shall any single or partial exercise of any right under this Agreement preclude any other or further exercise thereof or the exercise of any other right. The remedies provided hereunder are cumulative and not exclusive of any remedies provided by law or equity.

4.5 **Binding Effect.** This Agreement shall be binding upon and inure to the benefit of the parties and their respective successors and assigns, except that Merchant shall not have the right to assign its rights hereunder or any interest herein without the prior written consent of YCW which consent may be withheld in YCW's sole discretion.

4.6 **GOVERNING LAW, VENUE AND JURISDICTION.** THIS AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED EXCLUSIVELY IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK, WITHOUT REGARDS TO ANY APPLICABLE PRINCIPLES OF CONFLICTS OF LAW. IF THERE IS ANY SUIT, ACTION OR PROCEEDING ARISING HEREUNDER, OR THE INTERPRETATION, PERFORMANCE OR BREACH HEREOF, THEN SUCH LITIGATION SHALL ONLY BE INSTITUTED IN ANY COURT SITTING IN NEW YORK STATE (THE "ACCEPTABLE FORUMS"). THE PARTIES AGREE THAT THE ACCEPTABLE FORUMS ARE CONVENIENT, AND SUBMIT TO THE JURISDICTION OF THE ACCEPTABLE FORUMS AND WAIVE ANY AND ALL OBJECTIONS TO JURISDICTION OR VENUE. SHOULD A PROCEEDING BE INITIATED IN ANY OTHER FORUM, THE PARTIES WAIVE ANY RIGHT TO OPPOSE ANY MOTION OR APPLICATION MADE BY EITHER PARTY TO TRANSFER SUCH PROCEEDING TO AN ACCEPTABLE FORUM.

4.7 **Survival of Representation, etc.** All representations, warranties and covenants herein shall survive the execution and delivery of this Agreement and shall continue in full force until all obligations under this Agreement shall have been satisfied in full and this Agreement shall have terminated.

4.8 **Severability.** In case any of the provisions in this Agreement is found to be invalid, illegal or unenforceable in any respect, the validity, legality and enforceability of any other provision contained herein shall not in any way be affected or impaired.

4.9 **Entire Agreement.** Any provision hereof prohibited by law shall be ineffective only to the extent of such prohibition without invalidating the remaining provisions hereof. This Agreement and Security Agreement hereto embody the entire agreement between Merchant and YCW and supersede all prior agreements and understandings relating to the subject matter hereof.

4.10 **JURY TRIAL WAIVER.** THE PARTIES HERETO WAIVE TRIAL BY JURY IN ANY COURT IN ANY SUIT, ACTION OR PROCEEDING ON ANY MATTER ARISING IN CONNECTION WITH OR IN ANY WAY RELATED TO THE TRANSACTIONS OF WHICH THIS AGREEMENT IS A PART OR THE ENFORCEMENT HEREOF. THE PARTIES HERETO ACKNOWLEDGE THAT EACH MAKES THIS WAIVER KNOWINGLY, WILLINGLY AND VOLUNTARILY AND WITHOUT DURESS, AND ONLY AFTER EXTENSIVE CONSIDERATION OF THE RAMIFICATIONS OF THIS WAIVER WITH THEIR ATTORNEYS.

4.11 **CLASS ACTION WAIVER.** THE PARTIES HERETO WAIVE ANY RIGHT TO ASSERT ANY CLAIMS AGAINST THE OTHER PARTY, AS A REPRESENTATIVE OR MEMBER IN ANY CLASS OR REPRESENTATIVE ACTION, EXCEPT WHERE SUCH WAIVER IS PROHIBITED BY LAW AGAINST PUBLIC POLICY. TO THE EXTENT EITHER PARTY IS PERMITTED BY LAW OR COURT OF LAW TO PROCEED WITH A CLASS OR REPRESENTATIVE ACTION AGAINST THE OTHER, THE PARTIES HEREBY AGREE THAT: (1) THE PREVAILING PARTY SHALL NOT BE ENTITLED TO RECOVER ATTORNEYS' FEES OR COSTS ASSOCIATED WITH PURSUING THE CLASS OR REPRESENTATIVE ACTION (NOT WITHSTANDING ANY OTHER PROVISION IN THIS AGREEMENT); AND (2) THE PARTY WHO INITIATES OR PARTICIPATES AS A MEMBER OF THE CLASS WILL NOT SUBMIT A CLAIM OR OTHERWISE PARTICIPATE IN ANY RECOVERY SECURED THROUGH THE CLASS OR REPRESENTATIVE ACTION. 4.12 **SERVICE OF PROCESS.** IN ADDITION TO THE METHODS OF SERVICE ALLOWED BY THE NEW YORK STATE CIVIL PRACTICE LAW & RULES ("CPLR"), MERCHANT HEREBY CONSENTS TO SERVICE OF PROCESS UPON IT BY REGISTERED OR CERTIFIED MAIL, RETURN RECEIPT REQUESTED. SERVICE HEREUNDER SHALL BE COMPLETE UPON MERCHANT'S ACTUAL RECEIPT OF PROCESS OR UPON YCW'S RECEIPT OF THE RETURN THEREOF BY THE UNITED STATES POSTAL SERVICE AS REFUSED OR UNDELIVERABLE. MERCHANT MUST PROMPTLY NOTIFY YCW, IN WRITING, OF EACH AND EVERY CHANGE OF ADDRESS TO WHICH SERVICE OF PROCESS CAN BE MADE. SERVICE BY YCW TO THE LAST KNOWN ADDRESS SHALL BE SUFFICIENT. MERCHANT WILL HAVE THIRTY (30) CALENDAR DAYS AFTER SERVICE HEREUNDER IS COMPLETE IN WHICH TO RESPOND. FURTHERMORE, MERCHANT EXPRESSLY CONSENTS THAT ANY AND ALL NOTICE(S), DEMAND(S), REQUEST(S) OR OTHER COMMUNICATION(S) UNDER AND PURSUANT TO THIS MERCHANT AGREEMENT SHALL BE DELIVERED IN ACCORDANCE WITH THE PROVISIONS OF THIS MERCHANT AGREEMENT.

4.13 **Facsimile Acceptance.** Facsimile signatures and/or via Portable Digital Format (PDF) shall be deemed acceptable for all purposes.

4.14 **Arbitration.** If Purchaser, Merchant or any Guarantor requests, the other parties agree to arbitrate all disputes and claims arising out of or relating to the Agreement. If Purchaser, Merchant or any Guarantor seeks to have a dispute settled by arbitration, that party must first send to the other party, by certified mail, a written Notice of Intent to Arbitrate. If Purchaser, Merchant or any Guarantor do not reach an agreement to resolve the claim within 30 days after the Notice is received, Purchaser, Merchant or any Guarantor may commence an arbitration proceeding with the American Arbitration Association ("AAA"), located in New York City. Purchaser will promptly reimburse Merchant or the Guarantor any arbitration filing fee; however, in the event that both Merchant and the Guarantor must pay filing fees, Purchaser will only reimburse Merchant's arbitration filing fee and, except as provided in the next sentence, Purchaser will pay all administration and arbitrator fees. If the arbitrator finds that either the substance of the claim raised by Merchant or the Guarantor or the relief sought by Merchant or the Guarantor is improper or not warranted, as measured by the standards set forth in Federal Rule of Civil Procedure 11(b), then Purchaser will pay these fees only if required by the AAA Rules. If the arbitrator grants relief to Merchant or the Guarantor that is equal to or greater than the value of what Merchant or the Guarantor has requested in the arbitration, Purchaser shall reimburse Merchant or the Guarantor for that person's reasonable attorneys' fees and expenses incurred for the arbitration. Merchant and the Guarantor agree that, by entering into this Agreement, they are waiving the right to trial by jury. PURCHASER, MERCHANT AND ANY GUARANTOR MAY BRING CLAIMS AGAINST ANY OTHER PARTY ONLY IN THEIR INDIVIDUAL CAPACITY, and not as a plaintiff or class member in any purported class or representative proceeding. Further, Purchaser, Merchant and any Guarantor agree that the arbitrator may not consolidate proceedings for more than one person's claims, and may not otherwise preside over any form of a representative or class proceeding, and that if this specific provision is found unenforceable, then the entirety of this arbitration clause shall be null and void.
MERCHANT AND ANY GUARANTOR MAY OPT OUT OF THIS CLAUSE. To opt out of this Arbitration Clause, Merchant and/or Guarantor may send Purchaser a notice that the Merchant or Guarantor does not want this clause to apply to this Agreement. For any opt out to be effective, Merchant and/or Guarantor must send an opt out notice to the following address by registered mail, within 14 days after the date of this Agreement: 30 Broad Street, 14th Floor, Suite 14108 New York, New York 10004.

Owner 1 Initials: _____

Owner 2 Initials: _____

YSWAdvance – 5.15.17

Page 4

SINGAL_00002780
Gov. Ex. 216-004